**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-25022-KMM

GHADA OUEISS,

    Plaintiff,

v.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

    Defendants.

_____/

## ORDER

THIS CAUSE came before the Court upon Plaintiff's *Ex Parte* Motion ("Initial Motion") and Supplemental Motion ("Supplemental Motion") for an Order Authorizing Alternative Service of Process on the Foreign Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3). ("Initial Mot.") (ECF No. 5); ("Suppl. Mot") (ECF No. 19).

**I.   BACKGROUND**

On December 9, 2020, Plaintiff filed a Complaint against numerous foreign and domestic defendants alleging claims of (1) hacking Plaintiff's mobile device in violation of the Alien Tort Statute, 28 U.S.C. § 1350; (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C); (3) violation of the Stored Communication Act, 18 U.S.C. §§ 2701–12; (4) intentional infliction of emotional distress under Florida law; (5) intrusion under Florida law; (6) public disclosure of private facts under Florida law; (7) libel under Florida law; and (8) civil conspiracy under Florida law. ("Compl.") (ECF No. 1).

Plaintiff is an international journalist for *Al Jazeera Media Network* and a frequent contributor to U.S. news outlets, such as *The Washington Post*. Compl. ¶ 1. Plaintiff alleges that "Saudi government officials and agents of the crown princes of Saudi Arabia utilized their

positions in U.S.-based entities . . . to recruit American citizens to join a campaign to promote pro-Saudi and pro-[United Arab Emirates ("UAE")] disinformation and attack any critics of the regimes, including Plaintiff." *Id.* ¶ 3. Plaintiff alleges that "Defendants hacked [Plaintiff's] personal mobile device on several occasions" and "disseminated stolen personal images of [Plaintiff] . . . in an attempt to defame, disparage[,] and intimidate [Plaintiff] from continuing to report on the regimes' human rights abuses." *Id.*

Now, Plaintiff moves for substituted service on Defendants Mohammed Bin Salman Bin Abdulaziz Al Saud ("MBS"), Mohammed Bin Zayed Al Nahyan ("MBZ"), DarkMatter, Faisal al Bannai ("al Bannai"), Prince Mohammed Bin Salman Abdulaziz Foundation d/b/a MiSK Foundation ("MiSK"), Saud Al Qahtani ("Al Qahtani"), Bader Al-Asaker ("Al-Asaker"), Tarek Abou Zeinab ("Zeinab"), Turki Al-Owerde ("Al-Owerde"), Faisal Al Menaia ("Al Menaia"), and Awwad Al Otaibi ("Al Otaibi") (collectively, "Foreign Defendants"). Initial Mot.; Fed. R. Civ. P. 4(f)(3). Plaintiff further moves for substituted service on Defendants Al Arabiya, Saudi 24 TV, and Saudi Arabian Cultural Mission ("SACM") (collectively, "Supplemental Defendants"). Suppl. Mot.; Fed. R. Civ. P. 4(f)(3).

"Rule 4(f) governs service of process outside the U.S. by authorizing service pursuant to international agreements or, under subsection (3), 'by other means not prohibited by international agreement, as the court orders.'" *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012) (quoting Fed. R. Civ. P. 4(f)(3)). "The only limitations in Rule 4(f)(3) are that: (1) service must be directed by the court, (2) it must not be prohibited by international agreement, and (3) due process requires that it must be 'reasonably calculated' to give notice to a defendant." *Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-24733-CIV, 2018 WL 8264634, at *1 (S.D. Fla. Mar. 29, 2018) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Rule 4(f)(3) contains no limits that allow for its availability only after attempting

2

service of process by other means." *Id.* "Indeed, Rule 4(f)(3) was 'adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries.'" *Id.* (quoting *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 644755, at *2 (S.D. Fla. Feb. 19, 2014)). "[T]he decision to issue an order allowing service by alternate means lies *solely within the discretion of the district court*." *Chanel, Inc. v. Lin*, No. 08-23490-CIV, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009) (citations omitted).

## II.   DISCUSSION

Plaintiff argues that she "cannot serve the Foreign Defendants using a recognized means of service because the Foreign Defendants do not reside in a country that is a signatory to any international agreement or treaty for service of process." Initial Mot. at 2. Plaintiff argues that "all the Foreign Defendants reside in foreign nations that have not executed a treaty or international agreement for service of process," namely, Saudi Arabia,[1] the UAE,[2] and Lebanon.[3] *Id.* at 2, 4. Plaintiff argues that the only manner of service available to her to serve the Foreign Defendants is via Letters Rogatory, which "is a time-consuming and expensive process." *Id.* at 5.

Additionally, Plaintiff argues that "[s]everal of the Foreign Defendants—whom [Plaintiff] has been unable to locate the address for—have already acknowledged the initiation of [Plaintiff's] lawsuit on Twitter." *Id.* "Unable to locate precise addresses for several of the Foreign Defendants, some of whom are boldly posting her Complaint on social media," Plaintiff argues that she "is

---

[1] Defendants MBS, Al Qahtani, Al-Asaker, MiSK, Al Menaia, Al-Owerde, and Al Otaibi. Initial Mot. at 2.

[2] Defendants MBZ, DarkMatter, and al Bannai. *Id.*

[3] Defendant Zeinab. *Id.*

compelled to seek other means of serving the Foreign Defendants." *Id.* at 2. Specifically, Plaintiff asks that the Court grant alternate means of service as described below. *See generally id.*

### A.     Methods of Service Proposed

i.     Defendant MBS[4]

*Service via FedEx or International First-Class Mail.* The Complaint and Summons would be sent to the following locations in the Kingdom of Saudi Arabia: (1) the Al Auja Palace, which Plaintiff argues has been "used more recently by 'the king and his courtiers' to host guests such as MBZ"; (2) the Al Yamamah Palace, which Plaintiff argues "'serves as the headquarters of the royal court,' of which MBS and his family members routinely attend"; (3) the Ministry of Defense, of which Plaintiff argues that MBS is currently listed "as the 'First Officer'"; and (4) the Mohammed Bin Salman Abdulaziz Foundation d/b/a MiSK Foundation, of which Plaintiff argues "MBS is listed as the 'Chairman of the Board' . . . and the 'Founder'" *Id.* at 10. In her Supplemental Motion, Plaintiff argues that service at three of the above locations was unsuccessfully attempted via FedEx on December 22, 2020, and the "tracking report issued by FedEx strongly suggests that service of process was likely refused by the intended recipients." Suppl. Mot. at 3–4. Service at the fourth location remains in transit according to the USPS tracking history. *Id.* at 4. "[D]ue to the difficulty in serving MBS at these locations, [Plaintiff] reiterates her request from the [Initial] Motion to serve MBS via hand-delivery on his current U.S.-based counsel, as well as via MBS's WhatsApp account" as set forth below. *Id.*

*Service via Hand-Delivery on MBS's current U.S.-based counsel in Washington, D.C.* Plaintiff argues that "MBS is currently involved in a lawsuit in the District of Columbia, in which he filed a notice of appearance, and a motion to dismiss as recently as December 7, 2020." Initial

---

[4] These proposed methods of service are in addition to Plaintiff's intent to instruct a process server to deliver copies of the Summons and Complaint for MBS to SACM, Al Arabiya, and Saudi 24 TV, which Plaintiff alleges MBS "dominates and controls." *Id.* at 9.

Mot. at 10–11. Accordingly, Plaintiff argues that "MBS's current U.S.-based counsel is clearly in communication with MBS." *Id.* at 11.

*Service via WhatsApp.*   Plaintiff argues that she "has confirmed, through reasonable investigation, that MBS's WhatsApp number is active and that MBS regularly uses and checks his WhatsApp messages." *Id.*

ii.      Defendant MBZ

*Service via FedEx or International First-Class Mail.*   The Complaint and Summons would be sent to the Crown Prince Court in the UAE. *Id.*   Plaintiff argues that "MBZ's Private Office is in the same building as the Crown Prince Court." *Id.* at 12.   In her Supplemental Motion, Plaintiff argues that service at the above location was unsuccessfully attempted via FedEx, and "[t]he FedEx tracking history states that delivery of the Summons and Complaint was 'refused by recipient' on December 31, 2020." Suppl. Mot. at 4.   "[D]ue to MBZ's attempt to evade service, [Plaintiff] reiterates her request to serve Defendant MBZ at his verified Twitter account" as set forth below. *Id.* at 4–5.

*Service via Twitter.*   Plaintiff argues that "MBZ's Twitter account contains a link to the Crown Prince Court's website in its bio" and that "MBZ's Twitter account has been verified by Twitter, and thus, Twitter has confirmed that MBZ (or a close confidant to MBZ) operates [the] specific account [cited in the Motion]." Initial Mot. at 12.

iii.      Defendant al Bannai

*Service via FedEx or International First-Class Mail.*   The Complaint and Summons would be sent to the EDGE Group and DarkMatter in the UAE. *Id.*   Plaintiff argues that "Defendant al Bannai is one of the original founders of DarkMatter, with an ownership interest in the company during the time period in which [Plaintiff's] mobile device was hacked [and] is also the current CEO of EDGE Group, a UAE-based (and state owned) defense conglomerate." *Id.* at 13.   In her

5

Supplemental Motion, Plaintiff argues that service was effected at the DarkMatter location on December 29, 2020, and the package sent to the EDGE Group location is still in transit. Suppl. Mot. at 5. Plaintiff "reiterates her request in the [Initial] Motion for a finding that service on DarkMatter via FedEx constitutes effective service on al Bannai." *Id.*

    iv.        Defendant Al Qahtani[5]

*Service via FedEx or International First-Class Mail.* The Complaint and Summons would be sent to the Royal Court of the Kingdom of Saudi Arabia Building in the Kingdom of Saudi Arabia which Plaintiff argues is "Al Qahtani's last known work address." Initial Mot. 13. Plaintiff argues that despite Al Qahtani having "been formally stripped of his government title and position in the Saudi regime, it is widely reported that he continues to 'play an important role in the kingdom as an informal advisor to [Defendant MBS].'" *Id.* at 14. In her Supplemental Motion, Plaintiff argues that service was unsuccessfully attempted via FedEx at the above location and that the "FedEx status report and tracking history states that the address for the Royal Court of the Kingdom of Saudi Arabia was 'incorrect,'" despite this address being "publicly available." Suppl. Mot. at 5–6. Plaintiff "reiterates her request in the [Initial] Motion to serve [Al Qahtani] via hand-delivery on [his] current U.S.-based counsel," as set forth below. *Id.* at 6.

*Service via Hand-Delivery on Al Qahtani's current U.S.-based counsel in Washington, D.C. and Virginia.* Plaintiff argues that "Al Qahtani is currently a named defendant in [a] case pending in the District of Columbia, where he has entered an appearance and filed a motion to dismiss." Initial Mot. at 14. Accordingly, Plaintiff argues that "Al Qahtani is currently in contact with one (or both) of these . . . law firms." *Id.*

---

[5] These proposed methods of service are in addition to Plaintiff's intent to instruct a process server to deliver copies of the Summons and Complaint for Al Qahtani to Defendants SACM, Al Arabiya, and Saudi 24 TV, which Plaintiff alleges that MBS "dominates and controls" and of which Al Qahtani, as the agent of MBS, is the "alter ego of." *Id.* at 13.

          v.         Defendant Al-Asaker[6]

*Service via FedEx or International First-Class Mail.* The Complaint and Summons would be sent to the Prince Mohammed Bin Salman Abdulaziz Foundation d/b/a MiSK Foundation in the Kingdom of Saudi Arabia. *Id.* at 15. Plaintiff argues that "[a]s recently as May 20, 2020, Defendant Al-Asaker was reported to be the Secretary General of MiSK" and that his "verified Twitter account states that he is the 'Chairman of the Mi[SK] initiative center.'" *Id.* In her Supplemental Motion, Plaintiff argues that service via USPS to the above location is still in transit and "reiterates her request in the [Initial] Motion to serve Al-Asaker via hand-delivery on his current U.S.-based counsel and via Twitter" as set forth below. Suppl. Mot. at 6.

*Service via Hand-Delivery on Al-Asaker's U.S.-based counsel in Washington, D.C.* Plaintiff argues that "Al-Asaker has entered a notice of appearance, and filed a motion to dismiss on December 7, 2020," in a "case currently pending in the District of Columbia." Initial Mot. at 15.

*Service via Twitter.* Plaintiff argues that "Al-Asaker operates a verified Twitter account" which "has been verified by Twitter, confirming Al-Asaker operates [the] specific account [cited in the Motion]." *Id.* at 16.

          vi.        Defendant DarkMatter

*Service via FedEx or International First-Class Mail.* The Complaint and Summons would be sent to the address listed on DarkMatter's website in the UAE. *Id.* In her Supplemental Motion, Plaintiff argues that "[d]espite mailing a copy of the Summons and Complaint to DarkMatter, the FedEx tracking report indicates that the intended recipient refused service on December 30, 2020

---

[6] These proposed methods of service are in addition to Plaintiff's intent to instruct a process server to deliver copies of the Summons and Complaint for Al-Asaker to Defendants SACM, Al Arabiya, and Saudi 24 TV, which Plaintiff alleges that MBS "dominates and controls" and of which Al-Asaker, as the agent of MBS, is the "alter ego of." *Id.* at 14–15.

7

and refused service a second time on January 3, 202[1]," even though "DarkMatter had previously accepted service of al Bannai's copy of the Summons and Complaint on December 29, 2020." Suppl Mot. at 7. Plaintiff further argues that "DarkMatter's conduct constitutes grounds for permitting service via the alternative means proposed in the [Initial] Motion or, alternatively, a finding that DarkMatter has already been effectively served." *Id.*

*Service via Twitter.* Plaintiff argues that "DarkMatter also provides a direct link to its verified Twitter account . . . on its website." Initial Mot. at 16.

### vii.     Defendant MiSK

*Service via FedEx or International First-Class Mail.* The Complaint and Summons would be sent to the address listed on its website in the Kingdom of Saudi Arabia. *Id.* at 17. In her Supplemental Motion, Plaintiff argues that service via USPS to the above location is still in transit and "reiterates her request in the [Initial] Motion to serve MiSK via hand-delivery on its current U.S.-based counsel" as set forth below. Suppl. Mot. at 7.

*Service via Hand-Delivery on MiSK's current U.S.-based counsel in Washington, D.C.* Plaintiff argues that "MiSK is currently a named defendant in [a] case pending in the District of Columbia, where it has filed a notice of appearance, and also filed a motion to dismiss on December 7, 2020." Initial Mot. at 17. Accordingly, Plaintiff argues that "representatives of Defendant MiSK are currently in contact with its Washington, D.C.-based counsel." *Id.*

### viii.     Defendant Zeinab

*Service via Hand-Delivery on Defendant Saudi 24 TV.* Plaintiff argues that Defendant Zeinab is currently employed by Defendant Saudi 24 TV. *Id.* at 18.

*Service via Twitter.* Plaintiff argues that "Defendant Zeinab's Twitter account has been verified by Twitter, confirming that Defendant Zeinab operates this specific account." *Id.* Additionally, Plaintiff argues that "[o]n December 10, 2020—just one day after [Plaintiff] filed

8

her Complaint with the Court—Defendant Zeinab tweeted a photograph of [Plaintiff's] Complaint, and stated the following":

> A lawsuit was filed by [Plaintiff] against Saudi, Emirati, Arab and American officials, and against me personally, Tarek Abou Zeinab, in the United States of America. I categorically reject any of these false allegations, about which I do not know, and deny any wrongdoing against anyone.

*Id.* at 5–6; (ECF No. 5-1) Ex. C.

### ix. Defendant Al-Owerde[7]

*Service via e-mail.* Plaintiff argues that she "has discovered that Al-Owerde is the 'Editor-in-Chief' of *The Herald Report*—a UAE-based news agency. In his Twitter bio, Al-Owerde states that he is the Editor-in-Chief of *The Herald Report* and provides an e-mail address to contact him." Initial Mot. at 18.

*Service via Twitter. Id.* Plaintiff argues that "Al-Owerde's Twitter bio matches the e-mail address provided on *The Herald Report's* official website." *Id.* Additionally, Plaintiff argues that "[o]n December 10, 2020, Defendant Al-Owerde replied to and retweeted other Twitter users discussing [Plaintiff's] Complaint." *Id.* at 6–7. For example, in response to one user's tweet discussing Plaintiff's Complaint, "Defendant Al-Owerde posted two tweets, which read as follows":

> My solemn blows. Even the hospital crazies repetitively works.
>
> I am the one that can't see the whole thing that they're all surrounded together with the name Tariq the dirty and stupid Shay. Here's the suspicion, the Jacuzzi girl is not finished yet.

*Id.* at 7; (ECF No. 5-1) Ex. F.

---

[7] Plaintiff has not located a physical address (either work or home) for Defendant Al-Owerde. *Id.* at 18.

    x.  Defendant Al Otaibi[8]

*Service via Twitter. Id.* at 19.  Plaintiff argues that "through a cross-reference of Al Otaibi's other social media accounts, [Plaintiff] has been able to verify—to a reasonable degree of certainty—that Al Otaibi operates the Twitter account [cited in the Motion.]" *Id.*  Plaintiff provides statements in support of the cross-references of various social media accounts. *Id.*  Additionally, Plaintiff argues that "on December 10, 2020, Defendant Al Otaibi tweeted a photograph of [Plaintiff's] Complaint, and stated the following":

> Al Jazeera's bitch filed a claim and put my name with them thinking that this will prevent or scare us from going to America, but don't you know that this is an honour for me to defend my country. I am proud of it.

*Id.* at 6; (ECF No. 5-1) Ex. D.

    xi.  Defendant Al Menaia[9]

*Service via Twitter.*  Plaintiff argues that "through a cross-reference of Al Menaia's other social media accounts, [Plaintiff] has been able to verify—to a reasonable degree of certainty—that Al Menaia operates the Twitter account [cited in the Motion.]" *Id.* at 19.  Plaintiff provides statements in support of the cross-references of various social media accounts. *Id.* at 20. Additionally, Plaintiff argues that "[o]n December 10, 2020, Defendant Al Menaia 'quote tweeted' Defendant Al Otaibi's tweet regarding [Plaintiff's lawsuit] [and] [i]n response to Defendant Al Otaibi's tweet, Defendant Al Menaia stated the following: 'I swear it's a lie, it's all lies. But it is an honour, the greatest honour.'" *Id.* at 6; (ECF No. 5-1) Ex. E.

---

[8] Plaintiff has not located a physical address (either work or home) for Defendant Al Otaibi. *Id.* at 19.

[9] Plaintiff has not located a physical address (either work or home) for Defendant Al Menaia. *Id.*

       xii.   Defendant Al Arabiya (Supplemental Defendant)

*Service via international mail and email.* In her Supplemental Motion, Plaintiff argues that a process server attempted to serve Al Arabiya at two of its last known addresses in the United States, both in Washington, D.C. Suppl. Mot. at 8–9. Both attempts were unsuccessful, with one office being vacant and another being occupied by an unrelated company. *Id.* Accordingly, Plaintiff now moves to effect service on Al Arabiya via international mail and email at the mailing and email addresses listed on Al Arabiya's website. *Id.* at 11.

       xiii.   Defendant Saudi 24 TV (Supplemental Defendant)

*Service via email.* In her Supplemental Motion, Plaintiff argues that a process server attempted to serve Saudi 24 TV at its last known address in the United States, in Washington, D.C. *Id.* at 9. That attempt was unsuccessful, with the process server being "informed that Saudi 24 TV no longer occupied the premises." *Id.* Accordingly, Plaintiff now moves to effect service on Saudi 24 TV via the Twitter account cited in the Supplemental Motion, which Plaintiff argues "is active and contains a link to Saudi 24 TV's website in its bio," and via email to the email addresses listed in Saudi 24 TV's Twitter account bio. *Id.* at 12.

       xiv.   Defendant SACM (Supplemental Motion)

*Service via email.* In her Supplemental Motion, Plaintiff argues that a process server attempted to serve SACM at its last known address in the United States, in Fairfax, VA. *Id.* That attempt was unsuccessful where, "upon arrival, security guards prevented the process server from entering SACM's premises, and service of process was refused." *Id.* at 9. Accordingly, Plaintiff now moves to serve SACM via international mail at the Ministry of Foreign Affairs Central Office in Saudi Arabia, where Plaintiff argues that SACM has requested to be served in prior lawsuits. *Id.* at 12–13. Plaintiff further moves to serve SACM via email to the publicly listed email address for the Director of the Center for Career Development at SACM.

## B.   Alternate Service is Justified and Reasonably Calculated

Plaintiff argues that effecting service as described above is reasonably calculated under the circumstances to provide each named defendant with notice of this lawsuit. *See generally* Initial Mot.; Suppl. Mot. In support of her Initial Motion, Plaintiff includes the Initial Declaration of Daniel Rashbaum, Counsel for Plaintiff, which provides a detailed explanation of why service via Letters Rogatory is not feasible here. (ECF No. 5-1) at 3. Specifically, "service via Letters Rogatory would be very time consuming and could potentially take over a year . . . [and] Plaintiff would incur a charge of approximately $6,000.00" from the process server retained by Counsel's firm. *Id.* The time-consuming nature of Letters Rogatory is supported by United States Department of State publications attached to the Declaration. *Id.* at Exs. A, B.

In support of Plaintiff's request to serve several defendants via social media, Plaintiff attached screenshots of the social media postings in which several defendants acknowledged having notice of the Complaint as described in III.A., *supra*. *Id.* at Exs. C, D, E, F. In support of Plaintiff's request to serve several defendants via their U.S.-based counsel, Plaintiff attached "true and correct" copies of the Notices of Appearance filed in a case before the United States District Court for the District of Columbia. *Id.* at Exs. G, H, I. In support of Plaintiff's request to serve one defendant at his work address, Plaintiff attached a screenshot of the employer's website, which lists that defendant as a columnist for the employer. *Id.* at Ex. J. Finally, Plaintiff filed under seal a chart listing the names, addresses, WhatsApp number, Twitter accounts, and email address where Plaintiff proposes to serve each Foreign Defendant as described more fully in III.A., *supra*. (ECF No. 18-1) at Ex. K.

In support of her Supplemental Motion, Plaintiff includes the Supplemental Declaration of Daniel Rashbaum corroborating the service attempts Plaintiff has made thus far and including

proofs of service for each defendant named therein along with FedEx tracking reports. *See generally* (ECF No. 19-1).

Plaintiff cites to several cases in which the methods of alternative service proposed here have been permitted. *See*, *e.g.*, *TracFone Wireless, Inc. v. Distelec Distribuciones Electronicas, S.A. de DV*, 268 F.R.D. 687, 690–91 (S.D. Fla. 2010) (permitting service via FedEx and by hand-delivery to Defendant's attorneys in the United States); *FTC. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *5 (S.D.N.Y. Mar. 7, 2013) (permitting service via email and Facebook where Plaintiff "set forth facts that supply ample reason for confidence that the Facebook accounts identified are actually operated by defendants"); *WhosHere, Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *4 (E.D. Va. Feb. 20, 2014) (permitting service via email and social networking websites); *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240-LB, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (permitting service via Twitter).

"Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3)." *Chanel, Inc. v. Individual, P'ship, or Unincorporated Ass'n*, No. 17-62441-CIV-MOORE, 2017 WL 8794733, at *4 (S.D. Fla. Dec. 13, 2007) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1114–15 (9th Cir. 2002)). "Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction 'or.'" *Brookshire Bros., Ltd. V. Chiquita Brands Int'l, Inc.*, No. 05-CIV-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007) (quoting *Rio Props., Inc.*, 284 F.3d at 1015) (internal quotation marks omitted). "Additionally, the Constitution itself does not mandate that service be effectuated in any particular way." *Chanel, Inc.*, 2017 WL 8794733, at *4. "Constitutional due process considerations require only that the method of service selected be 'reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1).

Here, since the Foreign and Supplemental Defendants reside in foreign nations that have not executed a treaty or international agreement for service of process, Plaintiff's only available mechanism to effect service of process, absent approval from the Court, is via Letters Rogatory, which even the State Department recommends against where an alternative exists. *See Service of Process*, United States Department of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process.html (last updated Nov. 7, 2018) ("Letters rogatory are a time consuming, cumbersome process and need not be utilized unless there are no other options available. If the laws of the foreign country permit other methods of service, the use of letters rogatory is not recommended given the routine time delays of up to a year or more in execution of the requests.").

As detailed in Section III.A., *supra*, Plaintiff has shown that significant efforts have been made to tailor the proposed methods of alternate service to the specific circumstances of each individual Foreign and Supplemental Defendant, such that the methods proposed are "reasonably calculated" to apprise each defendant of the pendency of the action and provide them an opportunity to object. *See Chanel, Inc.*, 2017 WL 8794733, at *4. Accordingly, the Court finds that alternate service of process is warranted here as specifically described below.

## III.     CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's *Ex Parte* Motion and Supplemental Motion for an Order Authorizing Alternative Service of Process on Foreign Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) are GRANTED

IN PART and DENIED IN PART. It is further ORDERED that service of process may be effected upon the Foreign and Supplemental Defendants as follows:

    i.    Defendant MBS: (1) Service via FedEx or International First-Class Mail to the Al Auja Palace, the Al Yamamah Palace, the Ministry of Defense, and the MiSK Foundation in the Kingdom of Saudi Arabia; and (2) service via Hand-Delivery on MBS's current U.S.-based counsel.[10]

    ii.    Defendant MBZ: (1) Service via FedEx or International First-Class Mail to the Crown Prince Court in the UAE; and (2) service via Twitter.

    iii.    Defendant al Bannai: (1) Service via FedEx or International First-Class Mail to the EDGE Group and DarkMatter (*see* vi., *infra*) in the UAE.

    iv.    Defendant Al Qahtani: (1) Service via FedEx or International First-Class Mail to the Royal Court of the Kingdom of Saudi Arabia Building in the Kingdom of Saudi Arabia; and (2) service via Hand-Delivery on Al Qahtani's current U.S.-based counsel.

    v.    Defendant Al-Asaker: (1) Service via FedEx or International First-Class Mail to the MiSK Foundation in the Kingdom of Saudi Arabia; (2) service via Hand-Delivery on Al-Asaker's current U.S.-based counsel; and (3) service via Twitter.

    vi.    Defendant DarkMatter: (1) Service via FedEx or International First-Class Mail to the address listed on DarkMatter's website in the UAE; and (2) Service via Twitter.

    vii.    Defendant MiSK: (1) Service via FedEx or International First-Class Mail to the address listed on MiSK's website in the Kingdom of Saudi Arabia; and (2) service via Hand-Delivery on MiSK's current U.S.-based counsel.

    viii.    Defendant Zeinab: (1) Service via Saudi 24 TV (*see* xiii., *infra*); and (2) service via Twitter.[11]

---

[10] The Court declines to order service via WhatsApp at this juncture and finds that service as directed above, particularly service upon MBS's U.S.-based counsel, is reasonably calculated enough to provide ample notice of this cause.

[11] In Plaintiff's Initial Motion, she moved to effect service on Zeinab via Hand-Delivery on Saudi 24 TV, but as described in her Supplemental Motion, that no longer seems feasible.

      ix.      Defendant Al-Owerde: (1) Service via email; and (2) service via Twitter.

      x.      Defendant Al Otaibi: Service via Twitter.

      xi.      Defendant Al Menaia: Service via Twitter.

      xii.      Defendant Al Arabiya: (1) Service via FedEx or International First-Class Mail to the address listed on its website; and (2) service via email.

      xiii.      Defendant Saudi 24 TV: (1) Service via email; and (2) service via Twitter.

      xiv.      Defendant SACM: Service via FedEx or International First-Class Mail to the Ministry of Foreign Affairs Central Office in the Kingdom of Saudi Arabia.[12]

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of January, 2021.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:    All counsel of record

---

[12] The Court declines to allow service via email to the publicly listed email address for the Director of the Center for Career Development at SACM, as Plaintiff has not explained how this email address is a reasonably calculated means of effecting service on SACM.