**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-cv-25022-KMM**

GHADA OUEISS,

      Plaintiff,

vs.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

      Defendants.

---

<u>**DEFENDANTS DARKMATTER AND FAISAL AL BANNAI'S MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

LEGAL STANDARDS ...............................................................................................6

ARGUMENT ..............................................................................................................7

    I.   This Court Lacks Personal Jurisdiction Over DarkMatter and Al Bannai. ......7

        A.   Plaintiff Cannot Demonstrate a Statutory Basis for Jurisdiction. ........8

            1.   Plaintiff Fails to Allege Facts Sufficient to Satisfy Rule 4(k)(2)...8

            2.   Plaintiff Fails to Allege Facts Sufficient to Satisfy Florida's Long-Arm Statute. ..............................................................................12

        B.   Exercising Jurisdiction Over DarkMatter or Al Bannai Would Violate Due Process ............................................................................14

    II.  Plaintiff's Allegations of Agency Render DarkMatter and Al Bannai Immune From Suit. .....................................................................................16

    III.  Plaintiff Fails to State a Claim Against DarkMatter or Al Bannai. ..............18

        A.   Plaintiff's Five Total References To Al Bannai Are Entirely Insufficient to State Any Claim Against Him. ...............................18

        B.   Plaintiff's Allegations Against DarkMatter Are Speculative, Conclusory, And Otherwise Fail To State A Claim. .....................19

            1.   The Complaint Contains No Well-Pleaded Facts About DarkMatter. ............................................................................19

            2.   Plaintiff Fails to State a Dissemination Claim (Counts Four, Six, and Seven) ....................................................................20

            3.   Plaintiff Fails to State a Hacking Claim (Counts One, Two, and Three) ..............................................................................22

            4.   Plaintiff Fails to State a Conspiracy Claim (Count Eight)...........27

CONCLUSION .........................................................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3Q Techs., Ltd. v. Canfield Sci., Inc.*,
    No. 1:05-cv-2454, 2006 WL 1455663 (N.D. Ga. May 16, 2006) ............................................ 12

*Advantus, Corp. v. Sandpiper of Cal., Inc.*,
    No. 3:18-cv-1368, 2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) ........................................ 13

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
    416 F.3d 1242 (11th Cir. 2005) (per curiam) ..................................................................... 23

*Alhassid v. Bank of Am., N.A.*,
    60 F. Supp. 3d 1302 (S.D. Fla. 2014) ................................................................................ 28

*Allstate Ins. Co. v. Ginsberg*,
    863 So. 2d 156 (Fla. 2003) ................................................................................................ 26

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ..................................................................................... 7, 19

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
    480 U.S. 102 (1987) .......................................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 7, 23, 27

*Bailey v. Bd. of Cnty Comm'rs of Alachua Cnty*,
    956 F.2d 1112 (11th Cir. 1992) ......................................................................................... 28

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 7, 23, 28

*Bentley v. Bank of Am., N.A.*,
    773 F. Supp. 2d 1367 (S.D. Fla. 2011) .............................................................................. 18

*Broidy Cap. Mgmt. LLC v. Muzin*,
    No. 19-cv-0150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020), *appeal pending*,
    No. 20-7040 (D.C. Cir. argued Feb. 26, 2021) .................................................................. 30

*Brown Jordan Int'l, Inc. v. Carmicle*,
    846 F.3d 1167 (11th Cir. 2017) .................................................................................... 23, 24

*Buckley v. Littell*,
    539 F.2d 882 (2d Cir. 1976) .............................................................................................. 22

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................................. 15

*Cawley v. Bloch,*
    544 F. Supp. 133 (D. Md. 1982) ............................................................................ 14

*Celestine v. Capital One,*
    No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017) ........................ 26

*Collins v. Marsh,*
    No. 2:12-cv-51, 2012 WL 1058998 (M.D. Ala. Mar. 6, 2012) ............................. 28

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ................................................................................................. 9

*Del Vecchio v. Amazon.com, Inc.,*
    No. 11-366, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ................................ 24

*DHI Grp., Inc. v. Kent,*
    No. 16-cv-1670, 2017 WL 1088352 (S.D. Tex. Mar. 3, 2017) .............................. 30

*Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.,*
    No. 15-cv-81062, 2016 WL 4256916 (S.D. Fla. May 16, 2016) ........................... 15

*Emerald Asset Advisors, LLC v. Schaffer,*
    895 F. Supp. 2d 418 (E.D.N.Y. 2012) ................................................................... 14

*Five for Entm't S.A. v. Rodriguez,*
    No. 11-24142-CIV, 2013 WL 4433420 (S.D. Fla. Aug. 15, 2013) ........................ 20

*Fraser v. Smith,*
    594 F.3d 842 (11th Cir. 2010) ............................................................................... 15

*Fridovich v. Fridovich,*
    598 So. 2d 65 (Fla. 1992) ...................................................................................... 21

*Fullman v. Graddick,*
    739 F.2d 553 (11th Cir. 1984) ............................................................................... 27

*Garcia v. City of Laredo Tex.,*
    702 F.3d 788 (5th Cir. 2012) ........................................................................... 25, 26

*Goodyear Dunlop Tire Operations v. Brown,*
    564 U.S. 915 (2011) ............................................................................................... 10

*In re Google Assistant Privacy Litig.,*
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................... 25

*Hall v. Sargeant*,
    No. 9:18-CV-80748, 2019 WL 1359485 (S.D. Fla. Mar. 26, 2019) ......................................26

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ............................................................................................................14

*Heaney v. Gov't of Spain*,
    445 F.2d 501 (2d Cir. 1971) ...............................................................................................18

*Heath v. Playboy Enters., Inc.*,
    732 F. Supp. 1145 (S.D. Fla. 1990) ....................................................................................22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ...............................................................................................9, 11, 15

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ................................................................................................8

*Hungerstation LLC v. Fast Choice LLC*,
    No. 19-cv-05861, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020), *aff'd*, -- F.
    App'x ---, 2021 WL 963777 (9th Cir. Mar. 15, 2021) .........................................................11

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................................14

*International Underwriters AG v. Triple I: Int'l Investments, Inc.*,
    No. 06-80966-CIV, 2007 WL 9701852 (S.D. Fla. May 30, 2007) .......................................14

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................................25

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,
    449 A.2d 210 (Del. 1982) ...................................................................................................15

*Jensen v. Cablevision Sys. Corp.*,
    No. 17-00100, 2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017) ............................................24

*JES Props., Inc. v. USA Equestrian, Inc.*,
    253 F. Supp. 2d 1273 (M.D. Fla 2003) ...............................................................................29

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018) ........................................................................................................22

*Johnson v. White*,
    989 F.3d 913 (11th Cir. 2021) ............................................................................................16

*Langfitt v. Fed. Marine Terminals, Inc.*,
    647 F.3d 1116 (11th Cir. 2011) ..........................................................................................17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ............................................................................... 12

*Machtinger v. Inertial Airline Servs., Inc.*,
   937 So. 2d 730 (Fla. Dist. Ct. App. 2006) .............................................................. 15

*Mamani v. Berzain*,
   654 F.3d 1148 (11th Cir. 2011) ............................................................................... 22

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
   No. 15-cv-24363, 2016 WL 11501768 (S.D. Fla. Sept. 14, 2016)........................... 13

*Matar v. Dichter*,
   563 F.3d 9 (2d Cir. 2009) ....................................................................................... 17

*McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.*,
   501 F.3d 1244 (11th Cir. 2007) ................................................................................. 7

*Merch. One, Inc. v. TLO, Inc.*,
   No. 19-CV-23719, 2020 WL 248608 (S.D. Fla. Jan. 16, 2020)............................... 29

*Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*,
   811 So. 2d 841 (Fla. Dist. Ct. App. 2002) .............................................................. 21

*Morrison v. Univ. of Miami*,
   No. 1:15-CV-23856-UU, 2016 WL 3128604 (S.D. Fla. Mar. 21, 2016) ................. 20

*Nance v. Maxwell Fed. Credit Union (MAX)*,
   186 F.3d 1338 (11th Cir. 1999) ............................................................................... 30

*Navarro v. Verizon Wireless, L.L.C.*,
   No. 12-1958, 2013 WL 275977 (E.D. La. Jan. 24, 2013) ....................................... 25

*NexLearn, LLC v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017) ............................................................................... 11

*Ofisi v. Al Shamal Islamic Bank*,
   No. 15-2010, 2019 WL 1255096 (D.D.C. Mar. 19, 2019) ...................................... 13

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ......................................................... 7, 8, 9, 10, 14, 16

*Ortega Trujillo v. Banco Cent. Del Ecuador*,
   17 F. Supp. 2d 1340 (S.D. Fla. 1998) .................................................................... 21

*Platypus Wear, Inc. v. Clarke Modet & Co.*,
   515 F. Supp. 2d 1288 (S.D. Fla. 2007) .................................................................. 13

*Posner v. Essex Ins. Co.*,
  178 F.3d 1209 (11th Cir. 1999) ................................................................... 6, 8, 13

*Raimi v. Furlong*,
  702 So. 2d 1273 (Fla. Dist. Ct. App. 1997) ....................................................... 27

*Ramirez v. SupportBuddy Inc.*,
  No. 17-5781, 2018 WL 2089362 (S.D.N.Y. May 4, 2018) ................................... 24

*Randall v. Offplan Millionaire AG*,
  No. 6:17-cv-2103-ORL-31-TBS, 2019 WL 5188368 (M.D. Fla. June 17,
  2019) ............................................................................................................... 16

*Rebalko v. City of Coral Springs*,
  No. 19-60569-CIV, 2020 WL 6446042 (S.D. Fla. Nov. 3, 2020) .......................... 26

*Russo v. Fink*,
  87 So. 3d 815 (Fla. Dist. Ct. App. 2012) ........................................................... 27

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ........................................................................................ 17

*Sargeant v. Maroil Trading Inc.*,
  No. 17-cv-81070, 2018 WL 3031841 (S.D. Fla. May 30, 2018) .................... 27, 29

*Sisso v. Islamic Republic of Iran*,
  448 F. Supp. 2d 76 (D.D.C. 2006) .................................................................... 12

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) .................................................................... 7, 28

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) .................................................................................. 22, 23

*Stasiak v. Kingswood Co-op, Inc.*,
  No. 8:11-CV-1828-T-33MAP, 2012 WL 527537 (M.D. Fla. Feb. 17, 2012) ......... 26

*Stirling Int'l Realty, Inc. v. Soderstrom*,
  No. 14-1109, 2015 WL 2354803 (M.D. Fla. May 15, 2015) ................................ 25

*Stoddard v. Wohlfahrt*,
  573 So. 2d 1060 (Fla. Dist. Ct. App. 1991) ....................................................... 26

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
  447 F.3d 1357 (11th Cir. 2006) ......................................................................... 7

*In re Takata Airbag Prods. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) ............................................................... 8

*Thompson v. Carnival Corp.*,
174 F. Supp. 3d 1327 (S.D. Fla. 2016) ..................................................................... 9

*Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*,
204 F. Supp. 2d 1338 (M.D. Fla. 2002), *aff'd sub nom. Tyne v. Time Warner
Entm't Co., L.P.*, 425 F.3d 1363 (11th Cir. 2005) ................................................. 21

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) ....................................................................... 25, 26

*Walden v. Fiore*,
571 U.S. 277 (2014) .................................................................................................. 11

*Washington v. Fla. Dep't of Children & Families*,
595 F. Supp. 2d 1291 (M.D. Fla. 2009) ................................................................ 13

*Weil v. Phillips*,
816 F. App'x 339 (11th Cir. 2020) ........................................................................ 18

*Weisman v. S. Wine & Spirits of Am., Inc.*,
297 So. 3d 646 (Fla. Dist. Ct. App. 2020) ........................................................... 27

*Wilcox v. Stout*,
637 So. 2d 335 (Fla. Dist. Ct. App. 1994) ........................................................... 15

*World–Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ...................................................................................... 9, 11, 16

*Wright v. Yurko*,
446 So. 2d 1162 (Fla. Dist. Ct. App. 1984) ......................................................... 27

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ............................................................................... 25

**Statutes**

18 U.S.C. § 1030(a)(2)(C) ............................................................................................. 23

18 U.S.C. § 1030(c)(4)(A)(i)(I) .................................................................................... 23

18 U.S.C. § 1030(e)(11) ........................................................................................... 23, 24

18 U.S.C. § 2510(15) ..................................................................................................... 25

18 U.S.C. § 2701(a) ....................................................................................................... 24

28 U.S.C. § 1367(a) ....................................................................................................... 11

FLA. STAT. § 48.193 .................................................................................................. 8, 12

**Other Authorities**

CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, 4 FEDERAL PRACTICE &
    PROCEDURE CIVIL (4th ed.)...............................................................................8, 9, 12

FED. R. CIV. P. 4(k)(1) ........................................................................................12

FED. R. CIV. P. 4(k)(2) ...........................................8, 9, 10, 11, 12, 13, 14

FED. R. CIV. P. 12(b)(1) .........................................................................................7

FED. R. CIV. P. 12(b)(2) ..............................................................................6, 11, 30

FED. R. CIV. P. 12(b)(6) ..................................................................................7, 30

**INTRODUCTION**

Plaintiff Ghada Oueiss, a Lebanese journalist who resides abroad, accuses eighteen defendants—including the leaders of two foreign countries, various foreign companies and officials, and a handful of Twitter enthusiasts—of engaging in a vast conspiracy to harm her. Yet most of the defendants, like Plaintiff herself, live and work in foreign countries and have no meaningful connections to Florida or the United States. Despite Plaintiff's transparent attempt to manufacture jurisdiction by naming two Florida defendants (whose lone connections to this lawsuit apparently consist of "retweeting" the statements of others), this lawsuit simply does not belong in this Court.

Plaintiff's jurisdictional allegations are particularly weak with respect to Defendants DarkMatter and Faisal Al Bannai (collectively, the "Moving Defendants"). DarkMatter is a UAE company, and Al Bannai is a UAE resident. Plaintiff alleges no jurisdictionally meaningful connection between these defendants and Florida or the United States: There are no well-pleaded allegations that DarkMatter or Al Bannai directed any activities at the United States or Florida, committed any torts here, or purposefully availed themselves of U.S. or Florida law. And despite Plaintiff's attempt to conjure up a jurisdictionally significant international "conspiracy" sweeping in both foreign rulers and domestic retweeters, she fails to allege that DarkMatter or Al Bannai were even aware that the Florida "conspirators" existed—let alone agreed with them (or anyone else) to do anything illegal. Because exercising personal jurisdiction over DarkMatter and Al Bannai would offend federal law, including the Fifth Amendment to the U.S. Constitution, the Court should dismiss these Defendants from the lawsuit.

Based on Plaintiff's allegations, DarkMatter and Al Bannai are also immune from suit. Plaintiff squarely alleges that these defendants acted "at the behest" of the UAE and Saudi Arabia, in order to further those countries' geopolitical aims. Accepting those allegations as true (as

1

required at this stage) entitles the Moving Defendants to enjoy the same immunity from suit that those foreign states would enjoy.

Finally, Plaintiff fails to state any claims against DarkMatter and Al Bannai.  Essentially, Plaintiff has pointed to tidbits from salacious news stories regarding the activities of various non-party actors, added a handful of conclusory "information and belief" accusations, and presented this Court with a weak theory of guilt by association.  That comes nowhere close to meeting her burden of pleading claims against either DarkMatter or Al Bannai (who is barely mentioned in the 316-paragraph Complaint).  Regardless, Plaintiff's claims fail for a variety of independent reasons—starting with clear Supreme Court precedent barring claims under the Alien Tort Statute (Count One) against foreign corporations like DarkMatter.

Ultimately, if Plaintiff's claims may proceed at all, they must proceed in an overseas court—not a federal court in Florida.  This Court should dismiss Oueiss's Complaint as to DarkMatter and Al Bannai with prejudice.

## BACKGROUND

### A.    The Parties

Plaintiff Ghada Oueiss is a Lebanese journalist and principal anchor and presenter for *Al Jazeera* in Doha, Qatar.  Complaint (ECF 1, "Compl.") ¶¶ 1, 16–17, 34.  Plaintiff alleges that in April 2020, hackers removed personal materials from her mobile device without her authorization, and that others later disseminated those materials online.  *Id.* ¶¶ 171–77.  She does not allege that she is a resident of the United States or Florida.

Like 16 of the 18 defendants, DarkMatter and Al Bannai are not Florida residents. Defendant DarkMatter is an Emirati cybersecurity company founded and operating in the UAE. *Id.* ¶ 71.  Defendant Al Bannai is an Emirati entrepreneur and businessman who has founded or co-founded several companies.  Plaintiff alleges that Al Bannai founded DarkMatter, but is now

the CEO of a different company.  *Id.* ¶ 72.  The Complaint does not allege that Al Bannai worked at DarkMatter at the time of the alleged hack, but only that he "maintained an ownership interest in DarkMatter" during that period.  *Id.*

The remaining 16 defendants are foreign leaders and officials, foreign companies, and U.S.-based Twitter users:

*The "Foreign Official Defendants."*  Plaintiff alleges that two former Saudi officials, defendants Saud Alqahtani and Bader Al-Asaker, "spearheaded" and "led" the hack and dissemination of Plaintiff's materials.  Compl. ¶¶ 79, 84.  She claims that Alqahtani and Al-Asaker worked "at the behest" of two other defendants:  the Crown Prince of Saudi Arabia, His Highness Mohammed bin Salman bin Abdulaziz Al Saud, and the Crown Prince of Abu Dhabi, His Highness Mohammed bin Zayed Al Nahyan (inaccurately named as the "Crown Prince of the United Arab Emirates").  *Id.* ¶¶ 84, 189.

*The "Recruiting Defendants."*  Oueiss contends that seven of the defendants recruited individuals to disseminate information about Oueiss:  Tarek Abou Zeinab, Faisal Al Menaia, Turki Al-Owerde, Awwad Al Otaibi, Masharea,[1] the MiSK Foundation, and the Saudi Arabian Cultural Mission.  Compl. ¶¶ 88, 90, 100, 115, 139, 212, 313(d).[2]

*The "Network Defendants."*  Plaintiff alleges that five defendants spread defamatory materials about her: Middle East News, FZ-LLC,[3] Sharon Von Rider,[4] Hussam Al-Jundi, Annette

---

[1] Identified in the Complaint as "Saudi 24 TV."  *Compare* Compl. ¶ 87 *with* Broadcast Defendants' Motion to Stay Discovery, ECF 90 at 1 n.2.

[2] Although the Complaint limits what it calls the "Recruiting Defendants" to defendants Zeinab, Al Menaia, Al-Owerde, and Al Otaibi, it further alleges that MiSK Foundation and the Saudi Arabian Cultural Mission participated in the recruiting process.

[3] Identified in the Complaint as "Al Arabiya."  *Compare* Compl. ¶ 87 *with* Broadcast Defendants' Motion to Stay Discovery, ECF 90 at 1 n.2.

[4] The Complaint refers to Ms. Von Rider as Sharon Collins.  *Compare* Compl. ¶ 38 *with* ECF 32, USA Defendants' Motion to Dismiss Complaint for Failure to State a Claim at 1.

Smith, and Christanne Schey.  Compl. ¶¶ 38, 51, 85, 213–21, 231.  Only two defendants—Von Rider and Al-Jundi—are alleged to be Florida residents.  *Id.* ¶¶ 5, 38, 46.

### B.   The Allegations

Plaintiff alleges that data was removed from her mobile device in April 2020, after several months of receiving "suspicious" messages and phone calls.  Compl. ¶ 169.  She further alleges that these suspicious messages were "used to install malicious software on [her] device that could be used to access its contents remotely."  *Id.*   Plaintiff claims that she received the first of "multiple" messages in October 2019, while she was "physically present in the U.S."—albeit not in Florida.  *Id.*; *see id.* ¶ 178.  But Plaintiff concedes that the messages she received in April 2020, just days before she alleges that materials were actually removed from her phone, came when she and her phone were *outside* the United States.  *Id.* ¶ 171; *cf. id.* ¶ 35 ("Ms. Oueiss has been to the U.S. as recently as the fall of 2019.").  She further concedes that no materials were removed from her phone until April 17, 2020, again when she was outside the United States.  *Id.* ¶¶ 176–77.

In an apparent attempt to connect her allegations to the United States, Plaintiff also speculates that hackers "possibly" accessed a WhatsApp server in California.  *Id.* ¶ 170 ("Upon information and belief . . . Defendants intentionally accessed WhatsApp's servers located around the world, and possibly servers located in California, to access confidential content stored on the mobile device.").  She further speculates that the hackers may have used a spyware called Pegasus, which was developed by non-defendants "Israeli cyber firm NSO Group Technologies Limited."  *Id.* ¶ 147; *see id.* ¶ 174 (stating that a Pegasus process "may be the process that likely achieved" a portion of the hack).[5]

---

[5] Plaintiff also alleges that DarkMatter once owned a company called Pegasus LLC. Compl. ¶ 157.  But she never alleges that Pegasus LLC developed the Pegasus spyware; on the contrary, she concedes that NSO Group developed it.  *Id.* ¶ 147.

Plaintiff next claims that, following the alleged hack, some materials on her phone were publicly disseminated online and some Twitter users defamed her.  *Id.* ¶¶ 185–87, 192, 196. Specifically, in April and June of 2020, personal materials were allegedly posted online—photos of Oueiss smoking a cigarette and drinking alcohol, as well as doctored photos of Oueiss in a hot tub.  *Id.* ¶¶ 182–83, 192, 196.  Plaintiff alleges that the images were first posted by a Twitter account called @ Uncareer1 and a Telegram account called @Uncareer20, *id.* ¶¶ 192, 196, and that these accounts were created by the Foreign Official Defendants, *id.* ¶¶ 189, 194.  Once the materials were posted online, Oueiss alleges that two defendants retweeted the images of Oueiss in a hot tub, *see id.* ¶¶ 205 (defendant Von Rider), 224 (defendant Smith), and that some defendants defamed her, *id.* ¶¶ 183, 185–86.  But Plaintiff does not allege that DarkMatter or Al Bannai disseminated these materials or made such defamatory statements.

The Complaint barely mentions Al Bannai.  He appears just five times:  in a list of all defendants (*Id.* p.1), in a paragraph identifying him (¶ 72), in a general statement regarding personal jurisdiction (¶ 125), and in two paragraphs accusing him, in conclusory terms, of "hack[ing] Plaintiff's mobile device."  *Id.* ¶ 126; *see id.* ¶ 167.  Al Bannai is not mentioned in any of the eight causes of action.

Plaintiff alleges barely more with respect to DarkMatter.  Primarily, she offers vague and conclusory allegations that DarkMatter is connected to the unrelated activities of various non-party actors, none of which have anything to do with her claims in this lawsuit.  For example, Plaintiff alleges (citing media reporting) that certain journalists and officials were hacked over the course of several years.  *Id.* ¶¶ 151–161.  But she accuses *non-parties* of having allegedly committed most of these activities.  *See, e.g., id.* ¶ 155 (alleging "hacking operations" by various non-defendant UAE residents); *id.* ¶¶ 156–57 (alleging spying by "Group 42").  Even when she tries to link

DarkMatter to these allegations—such as by insinuating certain connections with "hacking group known as Project Raven," *id.* ¶¶ 151, 153—she never connects them to her legal claims.  For example, Plaintiff never alleges that Project Raven hacked her phone.

Finally, when it comes to allegations regarding the actual subject matter of her claims, Plaintiff merely speculates, again in conclusory fashion, that DarkMatter and Al Bannai must have been involved in the alleged hack in light of the (unrelated) "prior hacking operations."  *See, e.g.*, *Id.* ¶ 167 ("Upon information and belief, . . . Defendant DarkMatter with Defendant al Bannai, consistent with prior hacking operations carried out at the behest of the UAE regime and Defendant MBZ, hacked into Ms. Oueiss' personal mobile device.").  Plaintiff makes zero allegations—not even conclusory or speculative ones—that the Moving Defendants engaged (directly or indirectly) in the dissemination of any hacked materials.  Nor does Plaintiff allege that the Moving Defendants conspired with anyone else either to hack or to disseminate Plaintiff's materials.

## C.     The Claims

Plaintiff brings eight causes of action.  All eight are asserted against "All Defendants."  Based on the alleged hack of her phone, she brings claims under the Alien Tort Statute (Count One), the Computer Fraud and Abuse Act (Count Two), the Stored Communications Act (Count Three), and Florida intrusion law (Count Five).  Based on the alleged dissemination of her materials, she brings state-law claims for intentional infliction of emotional distress (Count Four), public disclosure of private facts (Count Six), and libel (Count Seven).  Finally, Plaintiff brings a state-law civil conspiracy claim (Count Eight).

## LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must "allege sufficient facts to make out a prima facie case of jurisdiction."  *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999).  "[W]here the defendant challenges the court's exercise

of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). The Court must evaluate personal jurisdiction "as it relates to each defendant separately." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

To survive a motion to dismiss under Rule 12(b)(1) or (6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] their claim[] across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1250–51 (11th Cir. 2007) (standard for facial jurisdictional challenge under Rule 12(b)(1) analogous to Rule 12(b)(6) standard). These standards require more than vague allegations and recitations of legal conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts apply a two-step analysis. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). Second, "where there are well-pleaded factual allegations," the Court must "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER DARKMATTER AND AL BANNAI.

Plaintiff's request for this Court to exercise jurisdiction over international defendants with no meaningful connection to the United States or Florida should be denied as a clear violation of U.S. law, including the U.S. Constitution. A federal court may exercise personal jurisdiction over

a non-resident defendant only if the plaintiff can satisfy two requirements:  first, federal or state law must authorize the exercise of personal jurisdiction; and second, exercising that jurisdiction must comport with constitutional due process requirements.  *Posner*, 178 F.3d at 1214.

Plaintiff alleges two mutually exclusive bases for statutory jurisdiction:  (1) Federal Rule of Civil Procedure 4(k)(2), Compl. ¶ 125, which permits jurisdiction only if defendant *cannot* be sued in any state court; and (2) Florida's long-arm statute, Fla. Stat. § 48.193, Compl. ¶ 130, which describes when a defendant *can* be sued in Florida courts.  As explained below, (A) Plaintiff cannot demonstrate jurisdiction over DarkMatter or Al Bannai under either provision, and (B) exercising jurisdiction over them in this case would violate due process.

### A.    Plaintiff Cannot Demonstrate a Statutory Basis for Jurisdiction.

*1.   Plaintiff Fails to Allege Facts Sufficient to Satisfy Rule 4(k)(2).*

Plaintiff fails to allege facts supporting the exercise of personal jurisdiction over DarkMatter or Al Bannai relating to her federal claims.  Rule 4 permits a federal district court to exercise personal jurisdiction over "a claim that arises under federal law," Fed. R. Civ. P. 4(k)(2), only when (1) a "defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction," and (2) "exercising jurisdiction is consistent with the Constitution and laws of the United States."  *Oldfield*, 558 F.3d at 1218; *see also* CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, 4 FEDERAL PRACTICE & PROCEDURE CIVIL § 1068.1 (4th ed.) ("WRIGHT & MILLER"). Because Rule 4(k)(2) is meant to be only a "narrow extension of the federal reach," Fed. R. Civ. P. 4(k)(2) advisory committee notes, "it is a rare occurrence when a court invokes jurisdiction under the rule." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1150 (S.D. Fla. 2019); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (noting that, in the fourteen years since Rule 4(k) was enacted, "none of our cases has countenanced jurisdiction under the rule").  The few cases allowing jurisdiction under Rule 4(k)(2)

involve defendants with clear and intentional contacts with the United States. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337–38 (S.D. Fla. 2016) (describing cases involving 4(k)(2) jurisdiction over (i) Osama Bin Laden and (ii) an international insurance company that "insured hundreds of shipments to the United States").

This Court lacks personal jurisdiction over the Moving Defendants under Rule 4(k)(2). DarkMatter and Al Bannai do not dispute the first requirement: Neither one is "amenable to the jurisdiction of any state's courts of general jurisdiction." *Oldfield*, 558 F.3d at 1218.

But Plaintiff cannot satisfy the second requirement: She cannot show that "the non-resident defendant has established 'certain minimum contacts with the [United States] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield*, 558 F.3d at 1220 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). That requirement ensures that a defendant only faces litigation where his "conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there." *Id.* at 1220–21 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see* WRIGHT & MILLER, § 1124 ("The district court should be especially scrupulous to protect aliens who reside in a foreign country from forum selections so onerous that injustice could result."). In order to meet her burden, Plaintiff would need to show that the Moving Defendants' (1) "contacts with the forum . . . relate to the plaintiff's cause of action or [gave] rise to it," and (2) took "some act by which [they] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Oldfield*, 558 F.3d at 1220.[6]

---

[6] Plaintiff does not—and could not—allege that DarkMatter (a UAE company) or Al Bannai (a UAE resident) are subject to *general* jurisdiction in the United States. *See* Compl. ¶¶ 70–72; *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum

Plaintiff fails to connect DarkMatter's or Al Bannai's (supposed) connections to the United States with any of her three causes of action "that arise[] under federal law," Fed. R. Civ. P. 4(k)(2), or otherwise show that these defendants directed their activities to the United States.  All three federal claims relate exclusively to the alleged "unlawful hacking operation."  Compl. ¶ 261 (Count One); *see id.* ¶¶ 266 (Count Two), 274 (Count Three).  But the only two allegations connecting the alleged hack to the United States are that (1) Plaintiff received at least one "suspicious" message on her mobile device while she was visiting the United States, *see id.* ¶ 169 (alleging that "[d]uring the first" of the hacking "events," she was "physically present in the U.S."); and (2) the alleged hack may have been accomplished by accessing WhatsApp servers, some of which *may* have been in California, *id.* ¶ 170 ("Upon information and belief…Defendants intentionally accessed WhatsApp's servers located around the world, *and possibly* servers located in California, to access confidential content stored on the mobile device.") (emphasis added).

Even accepting these scanty allegations as true, neither demonstrates that DarkMatter or Al Bannai "purposefully availed" themselves of U.S. jurisdiction, or that their alleged actions were "directly aimed at" the United States.  *Oldfield*, 558 F.3d at 1221 n.28.  On the contrary, Plaintiff alleges that defendants "targeted Plaintiff in various locations, *including the U.S.*"  Compl. ¶ 124 (emphasis added); *see id.* ¶ 169 (only first of messages received between October 2019 and May 2020 received in the United States).  Similarly, Plaintiff alleges that hackers targeted servers "around the world," and only "*possibly* servers located in California."  *Id.* ¶ 170 (emphasis added).  But those "isolated" contacts merely show that, if Oueiss happened to be in the United States at

---

for the exercise of general jurisdiction is the individual's domicile," and for a company, it is the place of incorporation or primary place of business.) (citation omitted); *Goodyear Dunlop Tire Operations v. Brown,* 564 U.S. 915, 919 (2011) (for general jurisdiction, contacts must be "so continuous and systemic" as to render the defendant "essentially at home" in the forum).

the time of the alleged events, or if the messages happened to pass through California servers, that was entirely "fortuitous"—*i.e.*, there was no purposeful availment by DarkMatter or Al Bannai. *World–Wide Volkswagen*, 444 U.S. at 295.[7]

In fact, the only purported connections between Plaintiff's federal claims and this lawsuit are based solely on *Plaintiff's unilateral conduct*—specifically, where she happened to be traveling when she supposedly received "suspicious" messages. But Plaintiff's contacts cannot give rise to U.S. jurisdiction over DarkMatter or Al Bannai; rather, "it is the *defendant's* conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added); *see Helicopteros Nacionales*, 466 U.S. at 417 (The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

Because Rule 4(k)(2) does not permit this Court to exercise personal jurisdiction over DarkMatter or Al Bannai with respect to the federal claims (Counts One, Two, and Three), the Court should dismiss those claims. FED. R. CIV. P. 12(b)(2). And because this Court thus lacks original jurisdiction over *any* claims, it cannot exercise supplemental subject matter jurisdiction over the remaining five state-law claims. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction over state-law claims allowed only where court has "original jurisdiction" over other claims); *see NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1381 (Fed. Cir. 2017) (after "dismissal of [] claim for lack of personal jurisdiction left no remaining claim over which the district court

---

[7] Even if Plaintiff had pleaded that defendants removed materials from U.S. servers, that would still be insufficient. *See, e.g., Hungerstation LLC v. Fast Choice LLC*, No. 19-cv-05861, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020) (no Rule 4(k)(2) jurisdiction where defendant allegedly stole proprietary materials from a third party server in the United States on which the plaintiff's materials were stored), *aff'd*, -- F. App'x ---, 2021 WL 963777 (9th Cir. Mar. 15, 2021).

could exercise original subject matter jurisdiction," court could not exercise supplemental jurisdiction).

> ### 2. *Plaintiff Fails to Allege Facts Sufficient to Satisfy Florida's Long-Arm Statute.*

Plaintiff contends that "[t]his Court *also* has personal jurisdiction over all Defendants pursuant to Florida's long-arm statute[.]"  Compl. ¶ 130 (emphasis added); *see* Fed. R. Civ. P. 4(k)(1).  But as noted, Rule 4(k)(2) permits jurisdiction only where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction."  FED. R. CIV. P. 4(k)(2); *see* WRIGHT & MILLER, § 1068.1 (Rule 4(k)(2) permits jurisdiction only "over a defendant who is not within the reach of any state's long-arm statute"); *see, e.g., 3Q Techs., Ltd. v. Canfield Sci., Inc.*, No. 1:05-cv-2454, 2006 WL 1455663, at *10 (N.D. Ga. May 16, 2006) (finding no jurisdiction under Rule 4(k)(2) where there was personal jurisdiction over the defendant in New Jersey).  As plaintiff "ha[s] conceded by invoking Rule 4(k)(2)," the Moving Defendants are "not subject to the jurisdiction of the courts of general jurisdiction of any state," including Florida.  *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 90 (D.D.C. 2006).  Plaintiff's Rule 4(k)(2) argument is thus incompatible with—and concedes the weakness of—her argument under the Florida long-arm statute.

Beyond this fundamental problem, Florida's long-arm statute does not provide jurisdiction on its own terms.  Plaintiff relies on Fla. Stat. Ann. § 48.193, which permits jurisdiction over a defendant who, "personally or through an agent," committed a "tortious act" *within* Florida.  FLA. STAT. ANN. § 48.193(1)(a)(2); *see Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013).  But none of Plaintiff's claims falls within this provision.  In the sole paragraph of her Complaint devoted to Florida's long-arm statute, Plaintiff describes only actions by other defendants—namely, the *retweeting* of supposedly hacked materials.  Compl. ¶ 130.  She never

alleges that DarkMatter or Al Bannai participated in any retweeting or other dissemination of the allegedly hacked materials in Florida (or anywhere else).

To the extent Plaintiff argues that this Court has personal jurisdiction over the Moving Defendants based on the existence of a conspiracy, she is wrong.  "[I]f the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy, then Florida courts decline to apply the co-conspirator theory to extend personal jurisdiction over a non-resident defendant." *Advantus, Corp. v. Sandpiper of Cal., Inc.,* No. 3:18-cv-1368, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019) (citation and internal quotation marks omitted); *see, e.g.*, *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-cv-24363, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016) (declining to apply the conspirator theory of jurisdiction where the plaintiff "offer[ed] only conclusions and no facts to support the civil conspiracy claim"); *Washington v. Fla. Dep't of Children & Families*, 595 F. Supp. 2d 1291, 1295 (M.D. Fla. 2009), *report and recommendation adopted*, 2009 WL 10708487 (M.D. Fla. Feb. 5, 2009) (same); *Platypus Wear, Inc. v. Clarke Modet & Co.*, 515 F. Supp. 2d 1288, 1296 (S.D. Fla. 2007) (same); *see also Posner*, 178 F.3d at 1218 (bare allegation that defendants "conspired to cause harm" in a "concerted effort" without specifying any underlying tort that the defendants acting in concert committed was insufficient to establish personal jurisdiction).  As explained in more detail below, *see* Part III.B.4, *infra*, Plaintiff's wholly conclusory conspiracy allegations do not show that any tort was committed in Florida, or that either DarkMatter of Al Bannai agreed with any co-defendants to do *anything*.[8]

---

[8] Although Plaintiff cannot make a *prima facie* showing of conspiracy jurisdiction under Florida law, it is notable that apparently no court has found conspiracy jurisdiction under Rule 4(k)(2) either.  *See, e.g.*, *Ofisi v. Al Shamal Islamic Bank*, No. 15-2010, 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019) ("[A]s far as the Court is aware, no court to have considered the question has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2).").

**B.      Exercising Jurisdiction Over DarkMatter or Al Bannai Would Violate Due Process**

In addition to failing to satisfy either Rule 4(k)(2) or Florida's long-arm statute, the Court should dismiss Plaintiff's claims against DarkMatter and Al Bannai on the independent ground that exercising jurisdiction over them would violate due process.   To exercise jurisdiction consistent with the U.S. Constitution, Plaintiff must (1) point to "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws," *Oldfield*, 558 F.3d at 1220 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); and (2) show "that the exercise of jurisdiction comports with traditional notions of 'fair play and substantial justice,'" including "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* at 1221(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945); *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987)).   Plaintiff has not made—and cannot make—either showing.

*First*, as already noted, Plaintiff cannot show "purposeful availment."   Plaintiff has not alleged that these defendants directed their conduct at the United States at all, let alone at Florida specifically.   Plaintiff certainly never alleges that the Moving Defendants possessed "the knowledge that overt acts in furtherance of the conspiracy would and did take place in Florida." *International Underwriters AG v. Triple I:  Int'l Investments, Inc.*, No. 06-80966-CIV, 2007 WL 9701852, at *5 (S.D. Fla. May 30, 2007).  Thus, Plaintiff cannot show that the Moving Defendants "purposely availed" themselves of the protections of Florida law or could have expected to be haled into a Florida court.  *See, e.g.*, *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 431 (E.D.N.Y. 2012) (court must consider whether "the out-of-state coconspirator had an awareness of the effects of the activity in New York"); *Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982) (finding conspirator-based jurisdiction only when "(1) two or more individuals conspire

14

to do something (2) that they could reasonably expect to lead to consequences in a particular forum"); *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982) (before court can exercise personal jurisdiction based on a conspirator's actions, plaintiff must make a "factual showing" that "the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and [that] the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy").  Absent a requirement that the alleged out-of-state coconspirator was aware of the likely in-forum effects of unlawful activity, jurisdiction would impermissibly rise or fall based on the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Helicopteros Nacionales*, 466 U.S. at 417); *cf. Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010) (A court "may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction.").

Consistent with this requirement, Florida cases imputing an alleged conspirator's contacts to a non-resident defendant involve defendants who conspired *directly* with the individual deemed to have Florida contacts—and thus were aware of significant foreseeable effects within Florida. *See, e.g.*, *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 733 (Fla. Dist. Ct. App. 2006) (defendant conspired with individuals who defrauded a Florida corporation); *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994) (similar); *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-cv-81062, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016) (similar). But Plaintiff alleges nothing of the sort.

*Second*, Plaintiff cannot show that exercising jurisdiction over DarkMatter or Al Bannai would satisfy the "fairness" prong of the due process analysis.  In evaluating this factor, the Eleventh Circuit considers:

> [1] [T]he forum State's interest in adjudicating the dispute; [2] the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; [3] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [4] the shared interest of the several States in furthering fundamental substantive social policies.

*Oldfield*, 558 F.3d at 1221–22 (quoting *World–Wide Volkswagen*, 444 U.S. at 292); *see, e.g.*, *Randall v. Offplan Millionaire AG*, No. 6:17-cv-2103-ORL-31-TBS, 2019 WL 5188368, at *10 (M.D. Fla. June 17, 2019) (finding no jurisdiction over out-of-state defendants under these factors), *report and recommendation adopted*, 2019 WL 5388200 (M.D. Fla. Oct. 22, 2019).  In evaluating these factors, courts bear in mind "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system."  *Oldfield,* 558 F.3d at 1221.

None of these factors favors Plaintiff.  Because Plaintiff herself "do[es] not reside in [Florida] and most of the parties are located outside the United States," Florida "has little to no interest in adjudicating this controversy." *Randall*, 2019 WL 5188368, at *10.  Because she is not a Florida resident, nothing about this forum is particularly convenient for Plaintiff—and it would obviously be an extraordinary burden for the Moving Defendants in the UAE to defend this lawsuit 7,000 miles from home.  *See id.*  Finally, no interests of the interstate judicial system or the several States are furthered by adjudicating a dispute between a foreign plaintiff and foreign defendants regarding events that took place outside both this forum and the United States.  This Court thus lacks personal jurisdiction over the Moving Defendants.

## II.  PLAINTIFF'S ALLEGATIONS OF AGENCY RENDER DARKMATTER AND AL BANNAI IMMUNE FROM SUIT.

DarkMatter and Al Bannai are also entitled to common law conduct-based immunity because Plaintiff alleges that they are agents of the UAE.  *See Johnson v. White*, 989 F.3d 913, 914 (11th Cir. 2021) (court lacks subject matter jurisdiction over immune defendants).  Such immunity is afforded to an "agent of [a foreign] state with respect to acts performed in his official

capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."

*Samantar v. Yousuf*, 560 U.S. 305, 321 (2010).  Under common law principles, an "agent" is

merely "one authorized by another (*i.e.*, the principal) to act on the other's account and under the

other's control." *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1120 (11th Cir. 2011)

(quoting Restatement (Second) of Agency § 1(1), (2), cmt. e).

 Here, Plaintiff alleges that DarkMatter and Al Bannai acted as agents of the UAE—*i.e.*, "at

the behest of the UAE regime"—in carrying out an official UAE policy:  "DarkMatter with

Defendant al Bannai, consistent with prior hacking operations carried out at the behest of the UAE

regime and Defendant MBZ, hacked into Ms. Oueiss' personal mobile device . . . with the goal of

obtaining confidential information about Ms. Oueiss and other individuals whom the Saudi and

UAE regimes perceived as critics."  Compl. ¶ 167.  Plaintiff further alleges that other defendants,

including the leaders of Saudi Arabia and the UAE, "us[ed]" and "utilized" DarkMatter to further

their goals.  *Id.* ¶¶ 267, 129 (alleging "MBS and MBZ's actions in using DarkMatter to hack

Plaintiff's mobile device with the goal of obtaining Plaintiff's confidential information to

intimidate her from reporting on Saudi and UAE's human rights abuses").  And Plaintiff alleges

that the actions were not carried out for the Moving Defendants' personal benefit, but were rather

pursued for official, geopolitical purposes of the UAE and Saudi Arabia.  *See, e.g.*, *id.* ¶ 150 ("The

UAE, at the direction of Defendant MBZ, has also leveraged its mature offensive cyber effects

operations capabilities against dissidents."); *id.* ¶ 155 (similar); *id.* ¶ 163 (similar).

 To be clear, all of this is fanciful; these allegations, like virtually all of Plaintiff's

allegations regarding the Moving Defendants, are simply false.  But if accepted as true—as they

must be on a 12(b)(6 motion—then both DarkMatter and Al Bannai enjoy common law conduct-

based immunity in light of those allegations.  *See Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009)

(observing that a "plaintiff's concession" regarding foreign official's agency status can suffice "to dispose of the claim of the individual defendant") (citing *Heaney v. Gov't of Spain*, 445 F.2d 501, 504 (2d Cir. 1971)).

### III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DARKMATTER OR AL BANNAI.

Even aside from the threshold jurisdictional and immunity hurdles, none of Plaintiff's eight causes of action states a claim upon which relief can be granted against DarkMatter or Al Bannai. Plaintiff failed her "responsibility to plead[] factual content that allows the court to draw the reasonable inference that [*each*] *defendant* is liable for the misconduct alleged." *Weil v. Phillips*, 816 F. App'x 339, 341–42 (11th Cir. 2020) (emphasis added) (internal quotations omitted). It does not suffice to "improperly lump Defendants together," making it "impossible to determine which Defendant's conduct caused the purported" tort. *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1375 (S.D. Fla. 2011). Yet Plaintiff's scattershot counts are all brought against "all defendants," without well-pleaded facts suggesting that the Moving Defendants committed any of the alleged torts. None of Plaintiff's causes of action withstands scrutiny.

### A.    Plaintiff's Five Total References To Al Bannai Are Entirely Insufficient to State Any Claim Against Him.

Plaintiff's allegations against Al Bannai are totally deficient, and this Court should dismiss him from this lawsuit. As noted, the Complaint mentions Al Bannai in just five paragraphs. Three of those simply name him as a defendant (Compl. p.1), identify him in general terms (¶ 72), and assert that the court has personal jurisdiction over all defendants, including him (¶ 125). The remaining two paragraphs are conclusory and speculative on their face. *See id.* ¶ 167 ("Upon information and belief, . . . Defendant DarkMatter with Defendant al Bannai, consistent with prior hacking operations carried out at the behest of the UAE regime and Defendant MBZ, hacked into Ms. Oueiss' personal mobile device[.]"); ¶ 126 ("Specifically, Defendant DarkMatter, under the

direction of Defendants MBS, MBZ, and with assistance from Defendants al Bannai, Alqahtani and Bader Al-Asaker, among others, hacked Plaintiff's mobile device[.]").  Al Bannai is not mentioned by name in any of the eight counts.

The only apparent reason why Al Bannai was sued at all is that he supposedly "maintained an ownership interest in DarkMatter during the period when DarkMatter hacked Plaintiff's mobile device."  *Id.* ¶ 72.  But Plaintiff does not allege that Al Bannai worked at DarkMatter during any part of the purported conspiracy, was aware of anything DarkMatter was alleged to have done, or played any specific role.  Nor does Plaintiff allege that he agreed with any co-defendants or committed any overt act in furtherance of a conspiracy.  Indeed, when listing the overt acts that "[e]ach Defendant named in this Complaint committed" in furtherance of the alleged conspiracy, the Complaint fails to mention Al Bannai at all.  *Id.* ¶ 313.

After "eliminat[ing] any allegations in the complaint that are merely legal conclusions," *Am. Dental Ass'n*, 605 F.3d at 1290, no well-pleaded factual allegations against Al Bannai remain. Because Plaintiff has failed to allege *any* non-conclusory facts that would allow this court to reasonably infer that Al Bannai played any role whatsoever in the supposed misconduct, he should be dismissed from the lawsuit with prejudice.

**B.    Plaintiff's Allegations Against DarkMatter Are Speculative, Conclusory, And Otherwise Fail To State A Claim.**

*1.   The Complaint Contains No Well-Pleaded Facts About DarkMatter.*

Plaintiff's meager allegations regarding DarkMatter are no more specific than those against Al Bannai, and likewise fail to state a claim.  They essentially boil down to the "information and belief" speculation that, because DarkMatter supposedly is linked to various other media reports of hacking that have nothing to do with the allegations in this lawsuit, it presumably hacked Plaintiff's phone as well.  Compl. ¶¶ 166–67.  For example, drawing from various news stories

regarding supposed hacks of other people besides Plaintiff (and allegedly committed by individuals and entities besides DarkMatter), the Complaint offers a theory of guilt by association. *See, e.g.*, *id.* ¶¶ 151–63, 174 (alleging various supposed activities unconnected to the hack of Plaintiff's phone by Group 42 Holdings Ltd., NSO Group, and various individuals). But Plaintiff obviously cannot state a claim against *DarkMatter* based on allegations regarding unrelated events involving non-defendants. And Plaintiff's chief allegation regarding DarkMatter is based explicitly on "information and belief"—*i.e.*, speculation. Compl. ¶ 167. Plaintiff's failure to plead specific, non-conclusory facts dooms her claims against DarkMatter.

## 2. *Plaintiff Fails to State a Dissemination Claim (Counts Four, Six, and Seven)*

Regardless, all of Plaintiff's claims fail against DarkMatter (and Al Bannai as well) due to various claim-specific pleading defects. Plaintiff's three "dissemination" claims—Counts Four, Six, and Seven—should be dismissed as unsupported by the Complaint's allegations. All seek to hold "All Defendants" liable for the alleged "dissemination" of the confidential photos. Compl. ¶ 278 (Count Four) (alleging, for purpose of IIED claim, that Plaintiff would "suffer emotional distress as a result of the dissemination of [Plaintiff's] personal and confidential photographs to the public"); *see also id.* ¶ 292 (Count Six); ¶ 299 (Count Seven). But Plaintiff never alleges that DarkMatter was involved in disseminating—*i.e.*, retweeting—the photographs, either personally or through an agent. In fact, Plaintiff never mentions DarkMatter (or Al Bannai) anywhere in the 55-paragraph section of her Complaint describing the alleged dissemination of stolen materials. *See id.* ¶¶ 185–240. Instead, the Complaint attributes the retweeting to other defendants. *Id.* ¶¶ 189, 208, 219, 226, 233. This failure to allege that DarkMatter was involved in sharing the materials requires dismissal of all three dissemination claims. *See*, *e.g.*, *Five for Entm't S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *1 (S.D. Fla. Aug. 15, 2013) (libel claim dismissed where plaintiff did not allege that defendant made the statements in question); *Morrison*

*v. Univ. of Miami*, No. 1:15-CV-23856-UU, 2016 WL 3128604, at *8 (S.D. Fla. Mar. 21, 2016) (public disclosure of private facts claim dismissed when plaintiff failed to allege that defendant "himself, published the fact").

Beyond failing to allege that DarkMatter was involved in disseminating the materials, these three claims fail on their own terms. *First*, the claims are largely mutually exclusive. Plaintiff cannot assert a claim for IIED based on the same "publication" giving rise to the alleged libel. Under Florida law, "a single publication gives rise to a single cause of action." *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998) (citing *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)). Thus, a "claim for intentional infliction of emotional distress must stem from outrageous conduct separate from the defamation and not merely [re]describe the tort of libel while characterizing it as outrageous conduct." *Id.* Similarly, Plaintiff cannot assert both a libel claim, which requires a "false" statement, *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. Dist. Ct. App. 2002), and a public disclosure of private facts claim, which requires a "true" statement, *Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002) ("[A]n essential element of the tort of public disclosure of private facts is that the facts at issue be true."), *aff'd sub nom. Tyne v. Time Warner Entm't Co., L.P.*, 425 F.3d 1363 (11th Cir. 2005). Plaintiff's assertions that Defendants "attached a *false* narrative" to her photographs, Compl. ¶ 292, and "published *doctored* images," *id.* ¶ 312, dooms her claim for public disclosure of private facts.

*Second*, where a libel plaintiff is a public figure, the plaintiff must allege "the disseminator of the information either knew the alleged defamatory statements were false, or published them with reckless disregard despite awareness of their probable falsity." *Mile Marker,* 811 So. 2d at

845; *see Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976) (defining journalist as a public figure).  But Plaintiff makes no such allegation about DarkMatter.

*Third*, the public disclosure of private facts claim fails for the additional reason that Plaintiff does not allege that DarkMatter was the *first* to publish the private facts.  *Heath v. Playboy Enters., Inc.*, 732 F. Supp. 1145, 1149 (S.D. Fla. 1990) ("Republication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim.").

### 3.  Plaintiff Fails to State a Hacking Claim (Counts One, Two, and Three)

As already noted, Plaintiff offers only conclusory and speculative allegations that DarkMatter hacked Plaintiff's phone.  *See, e.g.*, Compl. ¶ 167 ("information and belief").  Regardless, as with the dissemination claims, each hacking claim fails for independent reasons.

*The Alien Tort Statute ("ATS") (Count One)*.  The Supreme Court has held that, "absent further action from Congress it would be inappropriate for courts to extend ATS liability to foreign corporations."  *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1403 (2018).  That alone forecloses an ATS claim against DarkMatter.  Regardless, Plaintiff cannot overcome the "high bar" to recognizing a new private cause of action under the ATS.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727–28 (2004) (noting that courts should exercise "great caution" in doing so); *see Mamani v. Berzain*, 654 F.3d 1148, 1152 (11th Cir. 2011) ("The ATS is no license for judicial innovation.").  Any new ATS claims must "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms" the Supreme Court has recognized—namely, "violation of safe conducts, infringement of the rights of ambassadors, and piracy."  *Sosa*, 542 U.S. at 724–25.  Unsurprisingly, to Moving Defendants' knowledge, no court has held that computer hacking falls into that category.[9]

_____

[9] Plaintiff's reference to the Convention on Cybercrime—a non-self-executing treaty that requires nations to enact domestic laws outlawing various computer crimes—does not affect that

*The Computer Fraud and Abuse Act ("CFAA") (Count Two).* The CFAA is a criminal statute that includes a civil cause of action for "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). It authorizes a civil action if a violation involves one of five factors specified in the statute. *Id.* § 1030(g).

Beyond the lack of specific facts regarding anything DarkMatter did, Plaintiff fails to plead a required element of a civil action: "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Loss" within the meaning of the CFAA encompasses only two categories: "(1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (citing 18 U.S.C. § 1030(e)(11)). In other words, "loss" is either "the direct costs of responding to the violation" or "consequential damages resulting from interruption of service." *Id.*

The Complaint's bare assertion that Plaintiff suffered loss "in excess of $5,000," Compl. ¶ 269, is conclusory and not supported by any specific allegations. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Twombly*, 550 U.S. at 555). Plaintiff does not specify the amount of repair costs or allege that she suffered any "interruption of service." And the only

---

conclusion. *See* Convention on Cybercrime, Art. 2; *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (per curiam) (non-self-executing treaty invalid basis for ATS claim); *see also Sosa*, 542 U.S. at 732 (norms must be "obligatory," "universal," and "specific").

"consequential damages" she alleges—"evaluating the intrusion, theft and conduct relating to the theft," Compl. ¶ 269, along with non-monetary damages like reputational harm, lost business opportunities, and mental anguish, *id*. ¶ 247—are not "consequential damages" within the meaning of the CFAA.   18 U.S.C. § 1030(e)(11) ("other consequential damages incurred *because of interruption of service*") (emphasis added); *Brown Jordan Int'l, Inc.*, 846 F.3d at 1174.

Accordingly, this Court should follow the lead of courts around the country and dismiss Count Two.  *See, e.g., Ramirez v. SupportBuddy Inc*., No. 17-5781, 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018) (dismissing CFAA claim because "plaintiff fail[ed] to quantify her alleged costs or make specific allegations as to the costs of repairing or investigating the alleged damage to her computer"); *Jensen v. Cablevision Sys. Corp*., No. 17-00100, 2017 WL 4325829, at *13 (E.D.N.Y. Sept. 27, 2017) (dismissing CFAA claim where plaintiff "fail[ed] to allege enough damages or loss to meet the [$5,000 minimum] requirement under the CFAA"); *Del Vecchio v. Amazon.com, Inc*., No. 11-366, 2012 WL 1997697, at *4 (W.D. Wash. June 1, 2012) (same).

*The Stored Communications Act ("SCA") (Count Three)*.  The SCA, 18 U.S.C. §§ 2701– 12, another criminal statute that includes a civil cause of action, proscribes intentional unauthorized access of electronic communication facilities.   18 U.S.C. § 2701(a) (penalizing "whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system"); *see id.* § 2707(a) (civil action).

A mobile phone, however, is not a "facility," and information stored on the mobile phone is not in "electronic storage" under the SCA.  Although the SCA does not define "facility," it defines "electronic communication service" as "any service which provides to users thereof the

24

ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Based on this definition, the Eleventh Circuit has applied the SCA only to electronic communications stored with third-party service providers. *See United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) (recognizing that "the SCA clearly applies, for example, to information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system (BBS)," and describing it as "non-applicab[le]…to hacking into personal computers to retrieve information stored therein"); *see also, e.g.*, *Garcia v. City of Laredo Tex.*, 702 F.3d 788, 792–93 (5th Cir. 2012) (following *Steiger*); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014) (SCA "covers access to electronic information stored in third party computers").

By contrast, electronic communications stored on a personal mobile phone are not stored by a third-party service provider and, consequently, are not within the SCA's scope. *E.g.*, *Garcia*, 702 F.3d at 793 (text messages and photos stored on a cell phone were "not in 'electronic storage' as defined by the SCA and [we]re thus outside the scope of the statute"); *Stirling Int'l Realty, Inc. v. Soderstrom*, No. 14-1109, 2015 WL 2354803, at *6 (M.D. Fla. May 15, 2015) (To state a claim under the SCA "Plaintiffs must show that the facility they allege [the defendant] breached is one which is operated by an electronic communication service provider, such as a computer mail or storage facility, and *not* an end user device like a personal computer, laptop, hard drive, or *cell phone*.") (emphasis added); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 821–22 (N.D. Cal. 2020) (smartphones and smart speakers are not facilities under the SCA); *Navarro v. Verizon Wireless, L.L.C.*, No. 12-1958, 2013 WL 275977, at *3 (E.D. La. Jan. 24, 2013) (alleged direct access to cellular telephone and photographs stored on it did not state a claim under SCA); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1058–59 (N.D. Cal. 2012) (iPhones are not facilities and user information stored on an iPhone is not in electronic storage within meaning of

the SCA).  Because Plaintiff's mobile phone is not a facility under the SCA, and the information allegedly taken from it was not in electronic storage within the meaning of the SCA, Plaintiff fails to state a claim under the SCA.  *See, e.g.*, *Steiger*, 318 F.3d at 1049; *Garcia*, 702 F.3d at 793.[10]

*Intrusion (Count Five).*   The tort of intrusion requires: (1) a private quarter; (2) some physical or electronic intrusion into that private place; and (3) that the intrusion was highly offensive to a reasonable person.  *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). The third factor mirrors an intentional infliction of emotional distress claim.  *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-CV-1828-T-33MAP, 2012 WL 527537, at \*2 (M.D. Fla. Feb. 17, 2012) (citing *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. Dist. Ct. App. 1991)).  Under Florida law, "the tort of invasion of privacy by intrusion has traditionally applied to physical locations." *Hall v. Sargeant*, No. 9:18-CV-80748, 2019 WL 1359485, at \*7 (S.D. Fla. Mar. 26, 2019) (holding that an email account and digital files contained within are not "places" that can be the basis for an intrusion claim under Florida law); *Celestine v. Capital One*, No. 17-20237-CIV, 2017 WL 2838185, at \*3 (S.D. Fla. June 30, 2017) (explaining that accessing medical records, driver's license information, and credit reports does not constitute an intrusion of a "place").  Although Florida courts have said "precious little" about what besides a home may constitute a "private quarter," *Rebalko v. City of Coral Springs*, No. 19-60569-CIV, 2020 WL 6446042, at \*29 (S.D. Fla. Nov. 3, 2020), "[o]ther federal courts considering this issue have concluded that Florida's tort law does not extend to non-physical places," *Hall*, 2019 WL 1359485, at \*8.  Because an electronic

---

[10] The Complaint's "information and belief" allegation that Defendants accessed "files physically and electronically stored on [Plaintiff's] mobile device while such files were in electronic storage in [WhatsApp] systems," Compl. ¶ 170, does not save the SCA claim.  The Complaint clearly alleges that hackers "access[ed] confidential content stored on the mobile device," not from third-party servers.  *Id*.; *see also id*. ¶ 274.

hack of a mobile phone does not constitute intrusion into a "private quarter" within the meaning of Florida law, the Court should dismiss this claim too.

### 4.  Plaintiff Fails to State a Conspiracy Claim (Count Eight)

Plaintiff fails to allege that DarkMatter (or Al Bannai) entered into a conspiracy.  To state a claim for civil conspiracy under Florida law, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997).  In addition, a civil conspiracy requires an actionable underlying tort or wrong. *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. Dist. Ct. App. 2020); *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. Dist. Ct. App. 1984) (dismissing conspiracy claim premised on underlying defamation claim that was barred).

Plaintiff's failure to allege that DarkMatter agreed with anyone to do anything dooms her conspiracy count.  A conspiracy requires an *agreement*; mere association with alleged conspirators is not sufficient. *Russo v. Fink*, 87 So. 3d 815, 819 (Fla. Dist. Ct. App. 2012) ("Because [plaintiff] never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count.").  Nor are "bare assertions" that a defendant "knew of, condoned, and willfully and maliciously agreed" to commit a tort. *Iqbal*, 556 U.S. at 680; s*ee Sargeant v. Maroil Trading Inc.*, No. 17-cv-81070, 2018 WL 3031841, at *4 (S.D. Fla. May 30, 2018) (Report & Recommendation) (finding allegations of a conspiracy to hack the plaintiff's email account to be too vague and conclusory to state a claim); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").  Instead, a plaintiff should offer well-pleaded factual allegations of actual "communication" from which the court can reasonably infer that an agreement

was formed.  *Bailey v. Bd. of Cnty Comm'rs of Alachua Cnty*, 956 F.2d 1112, 1122 (11th Cir. 1992) (noting that "the linchpin for conspiracy is agreement, which presupposes communication").

The Complaint does not allege that DarkMatter (or Al Bannai) entered into an agreement with anyone to hack Plaintiff's phone, disseminate her hacked materials, or otherwise commit any tort or crime.  The Complaint contains only broad, vague accusations, most of which do not even name DarkMatter.  *See, e.g.*, Compl. ¶ 166 (alleging that "Defendants MBS, MBZ and Tahnoun, among others, hatched a plan to invade Ms. Oueiss' privacy [and] steal her personal information").  And the few allegations alleging an agreement by *other* defendants—such as a supposed agreement to "utiliz[e]" DarkMatter as part of the scheme—are entirely conclusory and bereft of factual support.  *See, e.g.*, *id.* ¶ 307 ("Defendants willfully and knowingly agreed and conspired with each other to engage in the wrongful conduct alleged in this Complaint"); *id.* ¶ 309(b) ("[E]ach Defendant named herein entered into an agreement (either explicitly or tacitly)" to "*[u]tilize* Defendant DarkMatter*" as part of the hacking operation.); *id.* ¶ 129 ("MBS and MBZ's actions in *using DarkMatter* to hack Plaintiff's mobile device…") (emphasis added).  Such "a conclusory allegation of agreement at some unidentified point"—by *other* defendants, no less—"does not supply facts adequate to show illegality."  *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (quoting *Twombly*, 550 U.S. at 556–57); *see Collins v. Marsh*, No. 2:12-cv-51, 2012 WL 1058998, at *2 (M.D. Ala. Mar. 6, 2012) (dismissing civil conspiracy claim where plaintiff failed to allege facts suggesting agreement other than common goal, scheme, or purpose).  Indeed, these are exactly the sort of conclusory allegations that courts have found insufficient to state a claim for conspiracy.  *See, e.g.*, *Snow*, 450 F.3d at 1318 & n.3 ("vague and conclusory allegations" that defendants "have committed, and conspired to commit, acts and have acted alone and in concert to commit acts within the State of Florida" are "insufficient to establish a prima

facie case of personal jurisdiction"); *Sargeant*, 2018 WL 3031841, at *4 (finding too conclusory allegation that, "[i]n or about August 2016, the Defendants devised a scheme whereby they agreed together to, unlawfully and without authorization, access the [plaintiff's] Email Account, and . . . Server").

While Plaintiff's allegations that DarkMatter conspired to *hack* her device are conclusory and speculative, her allegations that DarkMatter conspired to *disseminate* her materials do not exist.  As previously observed, Plaintiff never mentions DarkMatter across the 55 paragraphs describing the alleged dissemination.  *See* Compl. ¶¶ 185–240.  Instead, she alleges only that numerous *other* defendants recruited individuals to spread certain content on social media, *see id.* ¶ 100 (alleging that defendant Zeinab did so), ¶ 104 (Al Menaia), ¶ 113 (Al-Owerde), ¶ 118 (Al Otaibi); ¶ 127 (MBS, Alqahtani, Al-Asaker, MiSK, SACM), or were otherwise in contact with one another, *see id.* ¶¶ 63–70, 73–84, 89–120; 201–02.  Plaintiff fails to allege even that DarkMatter knew that the Recruiting Defendants or Network Defendants existed, or that the alleged hack was part of an overall scheme relating to/ her—let alone that DarkMatter shared a common goal with anyone else.  *See JES Props., Inc. v. USA Equestrian, Inc*., 253 F. Supp. 2d 1273, 1280 (M.D. Fla 2003) (dismissing civil conspiracy claim where there were not "even alleg[ations] that Defendants were conscious of each other's conduct nor that this awareness was an element in their decision-making process"); *Merch. One, Inc. v. TLO, Inc*., No. 19-CV-23719, 2020 WL 248608, at *8 (S.D. Fla. Jan. 16, 2020) (conspirators must share "a meeting of two independent minds intent on one purpose").  These insufficient allegations confirm not only that this Court lacks jurisdiction over DarkMatter, but that Plaintiff fails to state a claim as well.

Finally, even if Plaintiff had adequately pleaded state-law conspiracy with respect to some of the seven substantive counts, her civil conspiracy claim cannot proceed to the extent it asserts

violations of the CFAA and SCA.   "Every court to decide whether the [SCA] permits private actions under secondary liability theories," such as conspiracy, "has held that it does not."  *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020), *appeal pending*, No. 20-7040 (D.C. Cir. argued Feb. 26, 2021).  Because Congress did not create a civil remedy for conspiring to violate the SCA, states may not create one themselves.  *DHI Grp., Inc. v. Kent*, No. 16-cv-1670, 2017 WL 1088352, at *12 (S.D. Tex. Mar. 3, 2017) (dismissing state-law claim for conspiring to violate the SCA as preempted by the SCA), *report and recommendation adopted*, 2017 WL 1079184 (S.D. Tex. Mar. 22, 2017).  Similarly, because the CFAA *does* provide a federal civil remedy for conspiring to violate that Act, any private suit alleging a conspiracy to violate the CFAA must proceed under that statute, not as a state-law civil conspiracy claim.  *See id.* at *12 (dismissing claim alleging a state-law civil conspiracy to violate the CFAA as preempted by the Act); *see also Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342–43 (11th Cir. 1999) (affirming dismissal of a state-law claim for conspiring to violate the Age Discrimination in Employment Act because that statute created its own mechanism for private actions).  At a bare minimum, therefore, Plaintiff's conspiracy claim should be dismissed to the extent it alleges a conspiracy to violate the SCA or CFAA.

## **<u>CONCLUSION</u>**

For all of these reasons, Oueiss's Complaint should be dismissed with prejudice as to

DarkMatter and Al Bannai under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).


Dated: March 26, 2021                          Respectfully submitted,

                                      _/s/_ Stephen J. Binhak
                                      Stephen J. Binhak
                                      Fla. Bar No. 736491
                                      binhaks@binhaklaw.com
                                      The Law Office of Stephen James Binhak, P.L.L.C.
                                      1 SE 3rd Avenue, Suite 2600
                                      Miami, Florida 33131
                                      Tel: (305) 361-5500
                                      Fax: (305) 428-9532

                                      Anthony T. Pierce (_pro hac vice_)
                                      James E. Tysse (_pro hac vice_)
                                      AKIN GUMP STRAUSS HAUER & FELD LLP
                                      2001 K Street N.W.
                                      Washington, D.C. 20006
                                      Tel: (202) 887-4000
                                      Fax: (202) 887-4288
                                      apierce@akingump.com

                                      Natasha G. Kohne (_pro hac vice_)
                                      AKIN GUMP STRAUSS HAUER & FELD LLP
                                      580 California Street, Suite 1500
                                      San Francisco, CA 94104
                                      Tel: (415) 765-9500
                                      Fax: (415) 765-9501

                                      _Attorneys for Defendants DarkMatter and Faisal Al Bannai_