**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-cv-25022-KMM**

GHADA OUEISS,

      Plaintiff,

vs.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

      Defendants.

_____

## <u>DEFENDANT DARKMATTER'S</u>
## <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# **TABLE OF CONTENTS**

Introduction ...................................................................................................................... 1

Background ........................................................................................................................ 2

Legal Standards ................................................................................................................ 6

Argument ........................................................................................................................... 8

    I.    This Court Lacks Personal Jurisdiction over DarkMatter ................................... 8

          A. Plaintiff Cannot Demonstrate a Statutory Basis for Jurisdiction. ........... 8

               1.    Plaintiff Fails to Allege Facts Sufficient to Satisfy Rule 4(k)(2) ... 8

               2.    Plaintiff Fails to Allege Facts Sufficient to Satisfy Florida's Long-Arm Statute ................................................................................... 11

          B. Exercising Jurisdiction Over DarkMatter Would Violate Due Process 13

    II.    Plaintiff's Agency Allegations, if Accepted as True, Render DarkMatter Immune from Suit ....................................................................................... 17

    III.    Plaintiff Fails to State a Claim Against DarkMatter ...................................... 19

          A. The Amended Complaint Contains No Well-Pleaded Facts About DarkMatter ........................................................................................... 20

          B. Plaintiff Fails to State a CFAA Claim (Count Two). ........................... 20

          C. Plaintiff Fails to State an IIED Claim (Count Three). ......................... 22

          D. Plaintiff Fails to State a Claim for Intrusion (Count Four) .................. 25

          E. Plaintiff Fails to State a Conspiracy Claim (Count Six). ..................... 25

Conclusion ...................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3Q Techs., Ltd. v. Canfield Sci., Inc.*,
No. 1:05-cv-2454, 2006 WL 1455663 (N.D. Ga. May 16, 2006) ..........................................12

*Advantus, Corp. v. Sandpiper of Cal., Inc.*,
No. 3:18-cv-1368, 2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) .......................................13

*Alhassid v. Bank of Am., N.A.*,
60 F. Supp. 3d 1302 (S.D. Fla. 2014)...................................................................................26

*Allstate Ins. Co. v. Ginsberg*,
863 So. 2d 156 (Fla. 2003) ..................................................................................................25

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ..............................................................................................7

*Asahi Metal Indus. Co., Ltd. v. Super. Ct.*,
480 U.S. 102 (1987) .............................................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................7, 21, 26

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................................7, 21

*Bickel v. City of Coral Springs*,
No. 17-cv-60606, 2017 WL 3336722 (S.D. Fla. Aug. 4, 2017)............................................24

*Brown Jordan Int'l, Inc. v. Carmicle*,
846 F.3d 1167 (11th Cir. 2017) .......................................................................................21, 22

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................................................15

*Butters v. Vance*,
225 F.3d 462 (4th Cir. 2000) ................................................................................................17

*Catalyst Pharms., Inc. v. Fullerton*,
748 F. App'x 944 (11th Cir. 2018)..........................................................................................7

*Cawley v. Bloch*,
544 F. Supp. 133 (D. Md. 1982)...........................................................................................15

*Cedar Hills Props. Corp. v. E. Fed. Corp.*,
   575 So. 2d 673 (Fla. 1st DCA 1991) ....................................................................27

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................10

*Del Vecchio v. Amazon.com, Inc.*,
   No. 11-366, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ................................22

*DHI Grp., Inc. v. Kent*,
   No. 16-cv-1670, 2017 WL 1088352 (S.D. Tex. Mar. 3, 2017) .............................27

*Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*,
   No. 15-cv-81062, 2016 WL 4256916 (S.D. Fla. May 16, 2016) ..........................15

*Dogan v. Barak*,
   932 F.3d 888 (9th Cir. 2019) ...............................................................................19

*Emerald Asset Advisors, LLC v. Schaffer*,
   895 F. Supp. 2d 418 (E.D.N.Y. 2012) ..................................................................14

*Fernandez v. Sch. Bd. of Miami-Dade Cnty.*,
   201 F. Supp. 3d 1353 (S.D. Fla. 2016) .................................................................18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ......................................................................................9, 10

*Fraser v. Smith*,
   594 F.3d 842 (11th Cir. 2010) ..............................................................................15

*Frias v. Demings*,
   823 F. Supp. 2d 1279 (M.D. Fla. 2011) ................................................................23

*Fullman v. Graddick*,
   739 F.2d 553 (11th Cir. 1984) ..............................................................................27

*Garcia v. Carnival Corp.*,
   838 F. Supp. 2d 1334 (S.D. Fla. 2012) .................................................................23

*Goodyear Dunlop Tire Operations v. Brown*,
   564 U.S. 915 (2011) .......................................................................................10, 21

*Hall v. Sargeant*,
   No. 9:18-CV-80748, 2019 WL 1359485 (S.D. Fla. Mar. 26, 2019) ....................25

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ............................................................................................14

*Heaney v. Gov't of Spain*,
    445 F.2d 501 (2d Cir. 1971) .................................................................................... 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ................................................................................... 9, 10, 15

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) .................................................................................... 9

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) ................................................................................................ 24

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .............................................................................................. 14

*International Underwriters AG v. Triple I: Int'l Investments, Inc.*,
    No. 06-80966-CIV, 2007 WL 9701852 (S.D. Fla. May 30, 2007) ......................... 14

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,
    449 A.2d 210 (Del. 1982) ...................................................................................... 15

*Jensen v. Cablevision Sys. Corp.*,
    No. 17-00100, 2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017) ............................... 22

*Johnson v. White*,
    989 F.3d 913 (11th Cir. 2021) ............................................................................... 17

*Kim v. Jung Hyun Chang*,
    249 So. 3d 1300 (Fla. 2d DCA 2018)..................................................................... 24

*Langfitt v. Fed. Marine Terminals, Inc.*,
    647 F.3d 1116 (11th Cir. 2011) ............................................................................. 17

*LeGrande v. Emmanuel*,
    889 So. 2d 991 (Fla. 3d DCA 2004)....................................................................... 23

*Liberti v. Walt Disney World Co.*,
    912 F. Supp. 1494 (M.D. Fla. 1995)....................................................................... 23

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ............................................................................. 12

*Machtinger v. Inertial Airline Servs., Inc.*,
    937 So. 2d 730 (Fla. 3d DCA 2006)....................................................................... 15

*In re Managed Care Litig.*,
    430 F. Supp. 2d 1336 (S.D. Fla. 2006)................................................................... 26

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
   No. 15-cv-24363, 2016 WL 11501768 (S.D. Fla. Sept. 14, 2016)........................................ 13

*Matar v. Dichter*,
   563 F.3d 9 (2d Cir. 2009) ....................................................................................................... 19

*McElmurray v. Consolidated Gov't of Augusta-Richmond Cnty.*,
   501 F.3d 1244 (11th Cir. 2007) ............................................................................................... 7

*Melton v. Century Arms, Inc.*,
   243 F. Supp. 3d 1290 (S.D. Fla. 2017) ................................................................................... 6

*Metro. Life Ins. Co. v. McCarson*,
   467 So. 2d 277 (Fla. 1985) ..................................................................................................... 25

*Nance v. Maxwell Fed. Credit Union (MAX)*,
   186 F.3d 1338 (11th Cir. 1999) ............................................................................................. 28

*NexLearn, LLC v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017) ............................................................................................. 11

*Ofisi v. Al Shamal Islamic Bank*,
   No. 15-2010, 2019 WL 1255096 (D.D.C. Mar. 19, 2019) ..................................................... 13

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ..............................................................7, 8, 9, 10, 11, 14, 16

*Parisi v. Kingston*,
   314 So. 3d 656 (Fla. 3d DCA 2021) ............................................................................... 12, 26

*Platypus Wear, Inc. v. Clarke Modet & Co.*,
   515 F. Supp. 2d 1288 (S.D. Fla. 2007) ................................................................................... 13

*Posner v. Essex Ins. Co.*,
   178 F.3d 1209 (11th Cir. 1999) ......................................................................................6, 8, 13

*Raimi v. Furlong*,
   702 So. 2d 1273 (Fla. 3d DCA 1997) ..................................................................................... 25

*Ramirez v. SupportBuddy Inc.*,
   No. 17-5781, 2018 WL 2089362 (S.D.N.Y. May 4, 2018) ..................................................... 22

*Randall v. Offplan Millionaire AG*,
   No. 6:17-cv-2103-ORL-31-TBS, 2019 WL 5188368 (M.D. Fla. June 17,
   2019) ....................................................................................................................................... 16

*Rebman v. Follett Higher Educ. Grp., Inc.*,
   575 F. Supp. 2d 1272 (M.D. Fla. 2008) ................................................................................. 27

*Russo v. Fink,*
  87 So. 3d 815 (Fla. 4th DCA 2012)......................................................................................26

*Samantar v. Yousuf,*
  560 U.S. 305 (2010) .........................................................................................................17

*Sargeant v. Maroil Trading Inc.,*
  No. 17-cv-81070, 2018 WL 3031841 (S.D. Fla. May 30, 2018) .........................................26

*Simmonds Equip., LLC v. GGR Int'l, Inc.,*
  126 F. Supp. 3d 855 (S.D. Tex. 2015)...............................................................................22

*Snow v. DirecTV, Inc.,*
  450 F.3d 1314 (11th Cir. 2006) .........................................................................................7

*Stoddard v. Wohlfahrt,*
  573 So. 2d 1060 (Fla. 5th DCA 1991) ...............................................................................25

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,*
  447 F.3d 1357 (11th Cir. 2006) .........................................................................................7

*In re Takata Airbag Prods. Liab. Litig.,*
  396 F. Supp. 3d 1101 (S.D. Fla. 2019)...............................................................................9

*Thompson v. Carnival Corp.,*
  174 F. Supp. 3d 1327 (S.D. Fla. 2016)...............................................................................9

*Washington v. Fla. Dep't of Children & Families,*
  595 F. Supp. 2d 1291 (M.D. Fla. 2009) .............................................................................13

*Watts v. City of Hollywood, Fla.,*
  146 F. Supp. 3d 1254 (S.D. Fla. 2015)...............................................................................25

*Weisman v. S. Wine & Spirits of Am., Inc.,*
  297 So. 3d 646 (Fla. 4th DCA 2020).............................................................................26, 27

*Wilcox v. Stout,*
  637 So. 2d 335 (Fla. 2d DCA 1994) ..................................................................................15

*World–Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) .....................................................................................................10, 16

*Wright v. Yurko,*
  446 So. 2d 1162 (Fla. 5th DCA 1984)................................................................................26

*Yousuf v. Samantar,*
  699 F.3d 763 (4th Cir. 2012) .............................................................................................17

**Statutes**

18 U.S.C.

§ 951 ...................................................................................................... 18
§ 1030(a)(2)(C) ...................................................................................... 20
§ 1030(b), (g) .......................................................................................... 27
§ 1030(c)(4)(A)(i)(I) ............................................................................... 20
§ 1030(e)(11) ........................................................................................... 21

28 U.S.C. § 1367(a) ...................................................................................... 11

FLA. STAT. § 48.193 ............................................................................... 8, 12

**Other Authorities**

CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, 4 FEDERAL PRACTICE & PROCEDURE CIVIL § 1068.1 (4th ed.) ................................................. 8, 11

FED. R. CIV. P.

4(k)(1) ..................................................................................................... 11
4(k)(2) ........................................................................... 8, 9, 10, 11, 12, 13
12(b)(1) ............................................................................................... 7,, 28
12(b)(2) ........................................................................................... 6, 11, 28
12(b)(6) ............................................................................................... 7, 28

RESTATEMENT (SECOND) OF AGENCY § 1 ............................................... 17

RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW § 66(f) .................. 19

RESTATEMENT (SECOND) OF TORTS § 46 ................................................. 23

# INTRODUCTION

Plaintiff Ghada Oueiss, a Lebanese journalist who resides abroad, accuses fifteen defendants—including the Crown Prince of Saudi Arabia, various foreign companies and officials, and a handful of Twitter enthusiasts—of engaging in a vast conspiracy to harm her.  Yet most of the defendants, like Plaintiff herself, live and work in foreign countries and have no meaningful connections to Florida or the United States.  Despite Plaintiff's transparent attempt to manufacture jurisdiction by naming two Florida defendants (whose lone connection to this lawsuit is that they posted about Plaintiff on social media), this lawsuit simply does not belong in this Court.

Plaintiff alleges that two groups of foreign hackers accessed her mobile device without permission, and other foreigners publicly posted materials the hackers obtained.  Plaintiff makes no allegation that the hack or the initial dissemination occurred in the United States, or caused any injury in this country.  Rather, she primarily alleges that she once visited Florida (before the events at issue in this suit), and that one of the defendants allegedly *retweeted* hacked materials while "physically present in Florida."  This, Plaintiff strains to argue, creates personal jurisdiction over thirteen foreign defendants in this forum.

Plaintiff is wrong.  As the Supreme Court recently reiterated, personal jurisdiction requires a "strong" relationship among the defendant, the forum, and the litigation.  But Defendant DarkMatter, a UAE company, has no connections of any sort with Florida, never mind a "strong" one.  Plaintiff alleges no jurisdictionally meaningful connection between DarkMatter and Florida or the United States:  There are no well-pleaded allegations that DarkMatter directed any activities at the United States or Florida, committed any torts here, or purposefully availed itself of the privilege of conducting business in the U.S. or Florida.  And despite Plaintiff's attempt to conjure up a jurisdictionally significant international "conspiracy" sweeping in a foreign ruler and domestic social media users, she fails to allege that DarkMatter was even aware that the Florida

1

"conspirators" existed, let alone agreed with them (or anyone else) to commit a tort in Florida. Because exercising personal jurisdiction over DarkMatter would offend federal law, including the Fifth Amendment to the U.S. Constitution, the Court should dismiss DarkMatter from this lawsuit.

Further, based on Plaintiff's allegations, DarkMatter is also immune from suit. Plaintiff squarely (though falsely) alleges that DarkMatter acted "at the behest" of the Crown Prince of the Kingdom of Saudi Arabia in order to further Saudi Arabia's geopolitical aims. If that factual allegation is accepted as true, DarkMatter enjoys the same immunity from suit that the Crown Prince would enjoy under well-established common law principles.

Finally, Plaintiff fails to state any claims against DarkMatter. Essentially, Plaintiff has pointed to tidbits from salacious news stories regarding alleged hacking activities unrelated to this suit, added a handful of conclusory "information and belief" accusations, and presented this Court with a weak theory of guilt by association. That comes nowhere close to meeting Plaintiff's burden of pleading claims against DarkMatter.

Ultimately, Plaintiff's Amended Complaint fares no better than her last one. Plaintiff has again failed to demonstrate that her claims may proceed against DarkMatter anywhere, and certainly not in a federal court in Florida. This Court should dismiss Plaintiff's Amended Complaint as to DarkMatter with prejudice.

## **BACKGROUND**

### A.    **The Parties**

Plaintiff Ghada Oueiss is a Lebanese journalist and principal anchor and presenter for *Al Jazeera* in Doha, Qatar. Amended Complaint (ECF 135, "Am. Compl.") ¶¶ 1, 17. Plaintiff alleges that hackers removed personal materials from her mobile device without her authorization, and that others disseminated those materials online. *Id.* ¶¶ 156–57. She does not allege that she is a

resident of the United States or Florida.  Although she alleges that she visited Florida once in 2014 (*id.* ¶ 36), she does not allege that the hack occurred during that visit.

DarkMatter is an Emirati cybersecurity company founded and operating in the UAE.  *Id.* ¶ 76.  Like thirteen of the fifteen named defendants (and like Plaintiff herself), Defendant DarkMatter has no connection to Florida.  *Id.*

The remaining 14 defendants are foreign officials, foreign companies, and Twitter users:

*The "Foreign Official Defendants."*  Plaintiff alleges that two former Saudi officials, defendants Saud Al Qahtani and Bader Al-Asaker, "spearheaded" and "led" the hack of Plaintiff's phone and dissemination of her materials.  *Id.* ¶¶ 78, 83, 88, 122.  She claims that Al Qahtani and Al-Asaker worked "at the behest" of the Crown Prince of Saudi Arabia, defendant His Highness Mohammed bin Salman bin Abdulaziz Al Saud ("MBS").  *Id.* ¶¶ 84, 189.

*The "Recruiting Defendants."*  Plaintiff contends that six of the defendants recruited or instructed individuals to disseminate information about Plaintiff:  Tarek Abou Zeinab, Faisal Al Menaia, Turki Al-Owerde, Awwad Al Otaibi, Masharea wa Enjazat IT Corporation LLC, and the MiSK Foundation.  *Id.* ¶¶ 92, 100, 112, 114, 196, 308(d).[1]

*The "Network Defendants."*  Plaintiff alleges that five defendants disseminated defamatory materials about her:  Middle East News, FZ-LLC; Sharon Van Rider; Sam Jundi; Annette Smith; and Christanne Schey.  *Id.* ¶¶ 38, 51, 85, 213–21, 231.

Only two defendants—Van Rider and Jundi—are alleged to be Florida residents.  *Id.* ¶¶ 39, 47.

---

[1] Although the Amended Complaint limits what it calls the "Recruiting Defendants" to defendants Zeinab, Al Menaia, Al-Owerde, and Al Otaibi (Am. Compl. ¶ 46 n.17), it further alleges that MiSK Foundation participated in the recruiting process, *id.* ¶¶ 87, 308(d).

### B.     The Allegations

Plaintiff alleges that her mobile device was accessed without her permission on four occasions:  November 20, 2019; April 14, 2020; July 6, 2020; and July 15, 2020.  Am. Compl. ¶¶ 161–63, 167.  Plaintiff claims that Defendant DarkMatter committed only one of those alleged hacks:  the April 14, 2020 hack.  *Id.* ¶ 167.  Plaintiff attributes the other three hacks to the Foreign Official Defendants, *id.* ¶¶ 260, 304(c), and alleges that they accomplished that hack using Pegasus, a spyware Plaintiff says the Saudis have procured.  *Id.* ¶ 157.  Plaintiff makes no such contention with respect to the alleged DarkMatter hack, however, claiming only that DarkMatter accessed her device using an unspecified "sophisticated mobile spyware." *Id.* ¶¶ 157, 170, 308(b). Plaintiff alleges that on April 14, 2020, she received a WhatsApp message from a Moroccan phone number.  *Id.* ¶ 168.  On April 14 or 15, her device crashed (known as a "kernel panic"), and on April 19 and 20, a "greater-than-average count of file access events occurred," many of them happening at a time when Plaintiff "was confirmed to be asleep." *Id.* ¶ 172.  Plaintiff does not allege, however, that it was DarkMatter that accessed these files.  She says only that "The file access events . . . may have been activity by one or more threat actors with remote access to the device seeking additional content for their campaign of disparagement and disinformation after their initial leak was publicized." *Id.*

The Amended Complaint offers no reason to suppose that it was DarkMatter who perpetrated the alleged hack.  Citing only news reports, Plaintiff alleges that other, unrelated hacks have been attributed to a group called Project Raven, which she alleges DarkMatter controls.  *Id.* ¶¶ 76, 148, 151.  But Plaintiff never alleges that Project Raven hacked her phone, nor does she offer any other facts connecting DarkMatter to her allegations.  Indeed, Plaintiff's allegations that DarkMatter committed the April 14 hack are made "upon information and belief." *Id.* ¶¶ 153, 157,

167, 171.  Plaintiff also fails to allege that the April 2020 hack—the lone hack she attributes to DarkMatter—occurred while she was in the United States or Florida.  *See id.* ¶ 36 (alleging that she "has been to the U.S. as recently as the fall of 2019").

Plaintiff next alleges that other defendants—not DarkMatter—defamed her and publicly disseminated materials obtained from her phone.  She alleges that on April 19, 2020, Twitter and Telegram accounts controlled by defendants Al Qahtani and Al-Asaker posted photos of Plaintiff smoking a cigarette and drinking alcohol.  *Id.* ¶¶ 184, 187.  These posts, Plaintiff concedes, were made *before* the alleged "file access events" on Plaintiff's phone on April 19 and 20, 2020.  *Id.* ¶ 172.  Plaintiff then alleges that on June 2, 2020, the same Twitter and Telegram accounts posted photos of Plaintiff in a hot tub, doctored to make it appear that Plaintiff was nude.  *Id.* ¶¶ 177, 191, 241.  Once the materials were posted online, Plaintiff alleges that two defendants retweeted the images of Plaintiff in a hot tub, *see id.* ¶¶ 205 (defendant Van Rider), 221 (defendant Smith), and that some defendants defamed her, *id.* ¶¶ 211–15, 220–22, 230, 234.

Of the two Florida residents named in the Amended Complaint, only Van Rider is allege to have retweeted Plaintiff's materials; Jundi is alleged only to have made defamatory remarks.  *Id.* ¶¶ 205, 211–15.  Plaintiff does not allege that DarkMatter disseminated any of Plaintiff's materials, or that DarkMatter libeled her or made any defamatory statements about her.

C.    **The Claims**

Plaintiff brings six causes of action.  Based on the alleged hack of her phone, she brings claims against various defendants under the Alien Tort Statute (Count One), the Computer Fraud and Abuse Act ("CFAA") (Count Two), and Florida intrusion law (Count Four).  Based on the alleged dissemination of her materials and defamation, she brings state-law claims for intentional infliction of emotional distress ("IIED") (Count Three) and libel (Count Five).  Finally, Plaintiff

brings a state-law civil conspiracy claim (Count Six).  Plaintiff asserts only four of those claims against DarkMatter:  the CFAA claim under federal law, and IIED, intrusion, and conspiracy claims under Florida law.[2]

### D.   Procedural History

Plaintiff filed her original complaint in December of 2020 against eighteen named defendants.  ECF 1.  All defendants subsequently moved to dismiss the complaint.  ECF 32, 98, 104, 106, 108–14.  Rather than oppose the motions to dismiss, Plaintiff moved for jurisdictional discovery, or in the alternative for additional time to amend her complaint.  ECF 129.  This Court denied Plaintiff's motion for jurisdictional discovery (instead staying all discovery) and allowed Plaintiff additional time to file an amended complaint.  ECF 130–31.  Among other changes, Plaintiff's Amended Complaint (ECF 135) removes three defendants (Mohammed Bin Zayed Al Nahyan, Faisal al Bannai, Saudi Arabian Cultural Mission), and two counts (a claim under the Stored Communications Act and a common-law claim for public disclosure of private facts).

## LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must "allege sufficient facts to make out a prima facie case of jurisdiction."  *Posner v. Essex Ins.*

---

[2] For the purposes of this filing only, DarkMatter assumes that Florida law applies to Plaintiff's common-law claims.  DarkMatter reserves the right to argue later that the law of another jurisdiction should instead apply to Plaintiff's state-law claims.  A federal court hearing a state law claim applies the choice-of-law rules of the forum state.  *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017).  Florida applies the "most significant relationship test" to choice-of-law issues in tort actions.  *Id.*  Under that test, a court considers "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered."  *Id.*  Here, the hack is not alleged to have occurred or to have caused an injury in Florida, Oueiss is not a Florida resident, DarkMatter's place of business is the UAE, and there is no allegation of a relationship between DarkMatter and Oueiss in Florida.  Thus, there is serious doubt that Florida law would apply to Oueiss's state-law claims.

*Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999).  To establish jurisdiction over a foreign defendant, plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) (citation omitted); *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present.").  The Court must evaluate personal jurisdiction "as it relates to each defendant separately."  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).  "[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction[.]"  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

To survive a motion to dismiss under Rule 12(b)(1) or (6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] their claim[] across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see McElmurray v. Consolidated Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1250–51 (11th Cir. 2007) (standard for facial jurisdictional challenge under Rule 12(b)(1) analogous to Rule 12(b)(6) standard).  These standards require more than vague allegations and recitations of legal conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts apply a two-step analysis.  First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).  Second, "where there are well-pleaded factual allegations," the Court must "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.   THIS COURT LACKS PERSONAL JURISDICTION OVER DARKMATTER

Plaintiff's request for this Court to exercise jurisdiction over an international defendant with no meaningful connection to the United States or Florida should be denied as plainly inconsistent with U.S. law, including the U.S. Constitution. A federal court may exercise personal jurisdiction over a non-resident defendant only if the plaintiff can satisfy two requirements: first, federal or state law must authorize the exercise of personal jurisdiction; and second, exercising that jurisdiction must comport with constitutional due process requirements. *Posner*, 178 F.3d at 1214.

Plaintiff alleges two mutually exclusive bases for statutory jurisdiction: (1) Federal Rule of Civil Procedure 4(k)(2), Am. Compl. ¶ 124, which permits jurisdiction only if the defendant *cannot* be sued in any state court; and (2) Florida's long-arm statute, FLA. STAT. § 48.193, Am. Compl. ¶ 129, which describes when an out-of-state defendant *can* be sued in Florida courts. As explained below, (A) Plaintiff cannot demonstrate jurisdiction over DarkMatter under either provision, and (B) exercising jurisdiction over DarkMatter in this case would violate due process.

### A.   Plaintiff Cannot Demonstrate a Statutory Basis for Jurisdiction.

#### 1.   *Plaintiff Fails to Allege Facts Sufficient to Satisfy Rule 4(k)(2).*

Plaintiff fails to allege facts supporting the exercise of personal jurisdiction over DarkMatter regarding her CFAA claim—the only federal-law claim she brings against DarkMatter. Rule 4 permits a federal district court to exercise personal jurisdiction over "a claim that arises under federal law," FED. R. CIV. P. 4(k)(2), only when (1) a "defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction," and (2) "exercising jurisdiction is consistent with the Constitution and laws of the United States." *Oldfield*, 558 F.3d at 1218; *see also* CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, 4 FEDERAL PRACTICE & PROCEDURE CIVIL

§ 1068.1 (4th ed.) ("WRIGHT & MILLER").  Because Rule 4(k)(2) is meant to be only a "narrow extension of the federal reach," FED. R. CIV. P. 4(k)(2) advisory committee notes, "it is a rare occurrence when a court invokes jurisdiction under the rule." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1150 (S.D. Fla. 2019) (citation omitted); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (noting that, in the fourteen years since Rule 4(k) was enacted, "none of our cases has countenanced jurisdiction under the rule"). The few cases allowing jurisdiction under Rule 4(k)(2) involve defendants with clear and intentional contacts with the United States.  *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337–38 (S.D. Fla. 2016) (describing cases involving 4(k)(2) jurisdiction over (i) Osama Bin Laden and (ii) an international insurance company that "insured hundreds of shipments to the United States").

Rule 4(k)(2) does not create personal jurisdiction over DarkMatter here.  The parties agree on the Rule's first requirement:  DarkMatter is not "amenable to the jurisdiction of any state's courts of general jurisdiction."  *Oldfield*, 558 F.3d at 1218.

As for the second requirement, Plaintiff cannot show that allowing this Court to exercise jurisdiction over DarkMatter with respect to her CFAA claim would be consistent with the due process clause of the Fifth Amendment.   In particular, Plaintiff cannot show "purposeful availment," *i.e.*, that "the non-resident defendant has established 'certain minimum contacts with the [United States] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Oldfield*, 558 F.3d at 1220 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  As the Supreme Court recently clarified, personal jurisdiction requires a "strong 'relationship among the defendant, the forum, and the litigation.'"  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021)

(quoting *Helicopteros*, 466 U.S. at 414).  That requirement ensures that a defendant only faces litigation where his "conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there."  *Oldfield,* 558 U.S. at 1220–21 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see Ford Motor Co.*, 141 S. Ct. at 1026 (requirement "incorporates real limits, as it must to adequately protect defendants foreign to a forum").  In order to meet her burden, Plaintiff would need to show that (1) DarkMatter's "contacts with the forum . . . relate to the plaintiff's cause of action or [gave] rise to it," and (2) that DarkMatter took "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." *Oldfield*, 558 F.3d at 1220.[3]

Plaintiff fails to connect DarkMatter's (nonexistent) connections to the United States with her CFAA claim (the only cause of action asserted against DarkMatter "that arises under federal law," FED. R. CIV. P. 4(k)(2)), or otherwise show that DarkMatter directed its activities to the United States.  The CFAA claim relates exclusively to the alleged hack  Am. Compl. ¶¶ 259, 264. But Plaintiff makes no allegations connecting the alleged hack to the United States.  She does not allege, for example, that Plaintiff's device was present in the United States at the time of the alleged hack—nor could it be, considering that the alleged April 2020 hack necessarily occurred *after* her last visit to the U.S. in the "fall of 2019." *Id.* ¶ 36.  Nor does she allege that the hack itself caused an injury in the United States; the sole injury she alleges in the U.S. stems from her dissemination

---

[3] Plaintiff does not—and could not—allege that DarkMatter (a UAE company) is subject to *general* jurisdiction in the United States.  *See* Am. Compl. ¶¶ 76, 150; *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (for a company, the "paradigm forum for the exercise of general jurisdiction" is the company's place of incorporation or primary place of business) (citation omitted); *Goodyear Dunlop Tire Operations v. Brown,* 564 U.S. 915, 919 (2011) (for general jurisdiction, contacts must be "so continuous and systemic" as to render the defendant "essentially at home" in the forum).

and defamation claims.  Indeed, Plaintiff fails to allege that DarkMatter has any connections to the United States at all.  Am. Compl. ¶ 76.  Thus, Plaintiff has not even attempted to demonstrate that DarkMatter "purposefully availed" itself of the privilege of conducting activities in the United States, or that its alleged actions were "directly aimed at" the United States.  *Oldfield*, 558 F.3d at 1221 n.28.  On the contrary, Plaintiff alleges that DarkMatter and others "expressly targeted Ms. Oueiss in various locations" *outside* the United States.  Am. Compl. ¶ 123.

Because the Amended Complaint does not allege that DarkMatter directed its actions at the United States with respect to the CFAA claim (*i.e.*, the hacking), Rule 4(k)(2) does not permit this Court to exercise personal jurisdiction over DarkMatter.  Accordingly, this Court should dismiss that claim as to DarkMatter.  FED. R. CIV. P. 12(b)(2).  And because this Court thus lacks original jurisdiction over the lone federal claim against DarkMatter, this Court cannot exercise supplemental subject matter jurisdiction over the three remaining state-law claims.  *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction over state-law claims permitted only where court has "original jurisdiction" over a federal claim); *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1381 (Fed. Cir. 2017) (after "dismissal of [] claim for lack of personal jurisdiction left no remaining claim over which the district court could exercise original subject matter jurisdiction," court could not exercise supplemental jurisdiction).

### 2. *Plaintiff Fails to Allege Facts Sufficient to Satisfy Florida's Long-Arm Statute.*

Plaintiff contends in the "[a]lternative[]" that "this Court *also* has personal jurisdiction over [DarkMatter]  pursuant to Florida's long-arm statute[.]"  Am. Compl. ¶ 129 (emphasis added); *see* FED. R. CIV. P. 4(k)(1).  As noted, Rule 4(k)(2) permits jurisdiction only where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction."  FED. R. CIV. P. 4(k)(2); *see* WRIGHT & MILLER, § 1068.1 (Rule 4(k)(2) permits jurisdiction only "over a defendant who is not

within the reach of any state's long-arm statute"); *see, e.g., 3Q Techs., Ltd. v. Canfield Sci., Inc.*, No. 1:05-cv-2454, 2006 WL 1455663, at *10 (N.D. Ga. May 16, 2006) (finding no jurisdiction under Rule 4(k)(2) where there was personal jurisdiction over the defendant in New Jersey). Although this state-law jurisdictional basis is pleaded in the alternative, Plaintiff's primary Rule 4(k)(2) argument is incompatible with—and concedes the weakness of—her argument under the Florida long-arm statute.

Beyond this fundamental problem, Florida's long-arm statute does not provide jurisdiction on its own terms. Plaintiff relies on Fla. Stat. § 48.193, which permits jurisdiction over a defendant who, "personally or through an agent," committed a "tortious act" *within* Florida. FLA. STAT. § 48.193(1)(a)(2); *see Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). But Plaintiff alleges that the dissemination and defamation torts were the only ones actually committed in Florida; she makes no allegation that the alleged hack was committed in Florida. *See* Am. Compl. ¶¶ 205, 217. And, as indicated by her failure to bring her libel claim against DarkMatter, Am. Compl. ¶ 281–291, Plaintiff never alleges that DarkMatter participated in any defamation or dissemination of the allegedly hacked materials in Florida (or anywhere else).

Plaintiff's allegation that Defendants entered into a conspiracy to commit torts in Florida, Am. Compl. ¶ 129, does not create personal jurisdiction over DarkMatter, either. The Amended Complaint gives no reason to suppose that DarkMatter entered into any conspiracy, much less that DarkMatter knew that any conspiracy would include acts in Florida. "[A] claim for civil conspiracy must contain clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021) (explaining that "vague and conclusory allegations regarding a conspiracy involving [foreign] defendants" are insufficient to support personal jurisdiction). "[I]f the plaintiff fails to plead with specificity any

facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy, then Florida courts decline to apply the co-conspirator theory to extend personal jurisdiction over a non-resident defendant." *Advantus, Corp. v. Sandpiper of Cal., Inc.,* No. 3:18-cv-1368, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019) (citation and internal quotation marks omitted); *see, e.g.*, *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-cv-24363, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016) (declining to apply the conspirator theory of jurisdiction where the plaintiff "offer[ed] only conclusions and no facts to support the civil conspiracy claim"); *Washington v. Fla. Dep't of Children & Families*, 595 F. Supp. 2d 1291, 1295 (M.D. Fla. 2009), *report and recommendation adopted*, 2009 WL 10708487 (M.D. Fla. Feb. 5, 2009) (same); *Platypus Wear, Inc. v. Clarke Modet & Co.*, 515 F. Supp. 2d 1288, 1296 (S.D. Fla. 2007) (same); *see also Posner*, 178 F.3d at 1218 (bare allegation that defendants "conspired to cause harm" in a "concerted effort" without specifying any underlying tort that the defendants acting in concert committed was insufficient to establish personal jurisdiction). As explained in more detail below, *see* Part III.E, *infra*, Plaintiff's wholly conclusory conspiracy allegations do not show that DarkMatter *agreed* with any co-defendants to do anything anywhere, let alone in Florida specifically.[4]

## B.    Exercising Jurisdiction Over DarkMatter Would Violate Due Process

In addition to failing to satisfy either Rule 4(k)(2) or Florida's long-arm statute, Plaintiff's claims against DarkMatter fail for the independent reason that exercising jurisdiction over DarkMatter would violate due process with respect to both the CFAA claim and the state-law

---

[4] In addition to failing to make a *prima facie* showing of conspiracy jurisdiction under Florida law, Plaintiff does not—and could not—allege conspiracy jurisdiction under Rule 4(k)(2), either. *See, e.g.*, *Ofisi v. Al Shamal Islamic Bank*, No. 15-2010, 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019) ("[A]s far as the Court is aware, no court to have considered the question has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2).").

claims.  To exercise jurisdiction consistent with the U.S. Constitution, Plaintiff must (1) point to "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws," *Oldfield*, 558 F.3d at 1220 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); and (2) show "that the exercise of jurisdiction comports with traditional notions of 'fair play and substantial justice,'" including "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* at 1221 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945); *Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 114 (1987)).  Plaintiff has not made—and cannot make—either showing.

*First*, as already noted, Plaintiff cannot show that DarkMatter "purposefully availed" itself of the privilege of conducting business in the United States (or, by extension, in Florida).  Plaintiff has not alleged that DarkMatter directed its conduct at the United States at all or at Florida specifically.  Nor does Plaintiff allege that DarkMatter possessed "the knowledge that overt acts in furtherance of the conspiracy would and did take place in Florida." *International Underwriters AG v. Triple I: Int'l Investments, Inc.*, No. 06-80966-CIV, 2007 WL 9701852, at *5 (S.D. Fla. May 30, 2007).  The Amended Complaint does not allege that DarkMatter was even aware of the only alleged connection to Florida—that a Florida resident supposedly retweeted hacked materials, and that other Florida residents defamed her.  And the Amended Complaint never alleges that DarkMatter could have expected that any activities would have an effect in the United States generally, never mind Florida specifically.  Thus, Plaintiff cannot show that the DarkMatter "purposely availed" itself of the protections of Florida law, or could have expected to be haled into a court here.  *See, e.g.*, *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 431 (E.D.N.Y. 2012) (court must consider whether "the out-of-state coconspirator had an awareness of

14

the effects of the activity in New York"); *Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982) (finding conspirator-based jurisdiction only when "(1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum"); *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982) (before court can exercise personal jurisdiction based on a conspirator's actions, plaintiff must make a "factual showing" that "the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and [that] the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy"). An allegation that the out-of-state coconspirator was at least aware of the likely in-forum effects of unlawful activity is critical, because otherwise jurisdiction could impermissibly rise or fall based on the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Helicopteros*, 466 U.S. at 417); *cf. Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010) (A court "may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction.").

Consistent with this requirement, Florida cases imputing an alleged conspirator's contacts to a non-resident defendant involve defendants who knowingly conspired *directly* with the individual deemed to have Florida contacts—and thus were aware of significant foreseeable effects within Florida. *See, e.g.*, *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 733 (Fla. 3d DCA 2006) (defendant conspired with individuals who defrauded a Florida corporation); *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. 2d DCA 1994) (similar); *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-cv-81062, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016) (similar). But Plaintiff's wholly conclusory allegations are insufficient to show that DarkMatter conspired with any Florida resident.

*Second*, Plaintiff cannot show that exercising jurisdiction over DarkMatter would satisfy the "fairness" prong of the due process analysis.  In evaluating this factor, the Eleventh Circuit considers:

> [1] [T]he forum State's interest in adjudicating the dispute; [2] the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; [3] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [4] the shared interest of the several States in furthering fundamental substantive social policies.

*Oldfield*, 558 F.3d at 1221–22 (quoting *World–Wide Volkswagen*, 444 U.S. at 292); *see, e.g.*, *Randall v. Offplan Millionaire AG*, No. 6:17-cv-2103-ORL-31-TBS, 2019 WL 5188368, at *10 (M.D. Fla. June 17, 2019) (finding no jurisdiction over out-of-state defendants under these factors), *report and recommendation adopted*, 2019 WL 5388200 (M.D. Fla. Oct. 22, 2019).  In evaluating these factors, courts bear in mind "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system."  *Oldfield,* 558 F.3d at 1221.

None of these factors favors Plaintiff.  Because Plaintiff herself "do[es] not reside in [Florida] and most of the parties involved are located outside the United States," Florida "has little to no interest in adjudicating this controversy."  *Randall*, 2019 WL 5188368, at *10.  Because she is not a Florida resident, nothing about this forum is particularly convenient for Plaintiff—and it would obviously be an extraordinary burden for DarkMatter defend this lawsuit 7,000 miles from its place of business in the UAE.  *See id.*  Finally, no interests of the interstate judicial system or the several states are furthered by adjudicating a dispute between a foreign plaintiff and a foreign defendant regarding events that took place thousands of miles away from both this forum and U.S. shores.

Plaintiff's allegation of conspiracy is a transparent attempt to manufacture jurisdiction in a forum that is convenient for no one but her lawyers.  That attempt is futile.  This Court lacks personal jurisdiction over DarkMatter.

## II.   PLAINTIFF'S AGENCY ALLEGATIONS, IF ACCEPTED AS TRUE, RENDER DARKMATTER IMMUNE FROM SUIT

DarkMatter is entitled to common-law conduct-based immunity because Plaintiff alleges (falsely) that DarkMatter acted as an agent of Defendant MBS and Saudi Arabia.  *See Johnson v. White,* 989 F.3d 913, 914 (11th Cir. 2021) (courts lack subject matter jurisdiction over immune defendants).  Common-law conduct-based immunity is afforded to an "agent of [a foreign] state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Samantar v. Yousuf*, 560 U.S. 305, 321 (2010). Under common-law principles, an "agent" is merely "one authorized by another (*i.e.,* the principal) to act on the other's account and under the other's control."  *Langfitt v. Fed. Marine Terminals, Inc.,* 647 F.3d 1116, 1120 (11th Cir. 2011) (quoting Restatement (Second) of Agency § 1(1), (2), cmt. e); *see, e.g.*, *Butters v. Vance*, 225 F.3d 462, 466 (4th Cir. 2000) (holding that contractor enjoyed Saudi Arabia's derivative sovereign immunity under Foreign Sovereign Immunities Act).[5]

Plaintiff alleges that DarkMatter at all times acted as agent of the Saudi Crown Prince—*i.e.*, "at the behest of Defendant MBS."  Am. Compl. ¶ 167.  The things DarkMatter supposedly did at the "direct[ion]" of MBS, *id.* ¶ 128, moreover, were done not to accomplish MBS's private, personal goals, but rather for geopolitical aims—namely, to spy on "perceived critics of the Saudi

---

[5] *Butters* relied on the Foreign Sovereign Immunities Act as the source of derivative sovereign immunity, *Butters*, 225 F.3d at 466, and was decided before the Supreme Court held in *Samantar v. Yousuf* that that Act does not govern immunity of foreign officials, 510 U.S. at 325. As the Fourth Circuit recognized on remand in *Samantar*, pre-*Samantar* decisions are instructive on questions of common-law immunity like conduct-based immunity.  *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012); *see also Samantar*, 560 U.S. at 324 ("Even if a suit is not governed by the [Foreign Sovereign Immunities] Act, it may still be barred by foreign sovereign immunity under the common law.").

and UAE regimes," *id.* ¶ 76, in furtherance of Saudi Arabia's (and other states') severance of ties with Qatar, *id.* ¶ 148, and in an effort to "target dissidents and individuals that speak out against joint UAE and Saudi interests," *id.* ¶ 150.  The allegation that Defendants, including DarkMatter, violated the Foreign Agents Registration Act ("FARA"), underscores that Plaintiff is ultimately alleging actions taken on behalf of *Saudi Arabia*, not the Crown Prince personally.  *Id.* ¶ 246 (alleging that "[t]he purpose of FARA disclosures is to give the American people the ability to fully evaluate political communications that are sponsored by a foreign state and to prevent foreign states from concealing their attempts to influence U.S. government policy."); *see also id.* ¶ 248 (alleging that the U.S. national Defendants' "acts and omissions" "were committed in violation of 18 U.S.C. § 951, which requires those acting as agents of a *foreign government* to notify the U.S. Attorney General") (emphasis added).

To be sure, the Amended Complaint omits the "de facto ruler" description of MBS that Plaintiff used in the original complaint, Compl. ¶¶ 4, 8, 11, 33 (ECF 1), and makes conclusory assertions that MBS acted in his personal capacity.  *Cf. Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (observing that courts have authority to "consider prior pleadings when the plaintiff directly contradicts the facts set forth in his original complaint") (internal quotation marks and citations omitted).  But the fact remains that, accepting Plaintiff's amended factual allegations as true, Plaintiff's theory is that all the actions in question were done at the behest of the Crown Prince of Saudi Arabia in order to accomplish broad geopolitical goals. *See* Amicus Br. of the U.S. in supp. of Pet. for Cert., *Lewis v. Mutond*, No. 19-185, 2020 WL 2866592, at *10 (May 2020) (recognizing the "common-sense rule" that conduct-based immunity "generally turns on whether the challenged *action* was taken in an official capacity") (emphasis in original) (hereinafter U.S. *Amicus*, *Lewis*).  And because Plaintiff claims that DarkMatter acted at

the direction of the Saudi Crown Prince in his official role, a decision in Plaintiff's favor necessarily would pass judgment on the lawfulness of actions directed by Saudi Arabia, and thereby effectively "enforce a rule of law against the state." RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW § 66(f); *see Dogan v. Barak*, 932 F.3d 888, 894 (9th Cir. 2019) (concluding that exercising jurisdiction over defendant would have the effect of enforcing a rule of law against Israel where complaint alleged that an Israeli leader instructed the defendant to take the actions at issue and that the defendant's actions were under actual or apparent authority of the Israeli government).

To be clear, the agency allegations are made up—DarkMatter is *not* an agent of Saudi Arabia, and did not partake in the alleged activities, whether on behalf of Saudi Arabia or anyone else. But if accepted as true—as they must be on a 12(b)(6) motion—then DarkMatter enjoys common-law conduct-based immunity in light of those allegations. *See Matar v. Dichter,* 563 F.3d 9, 14 (2d Cir. 2009) (observing that a "plaintiff's concession" regarding foreign official's agency status can suffice "to dispose of the claim of the individual defendant") (citing *Heaney v. Gov't of Spain,* 445 F.2d 501, 504 (2d Cir. 1971)).[6]

## III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DARKMATTER

Even aside from the threshold jurisdictional and immunity hurdles, none of Plaintiff's causes of action states a claim against DarkMatter upon which relief can be granted. Plaintiff's allegations against DarkMatter are speculative, conclusory, and otherwise fail to state a claim.

---

[6] Because these threshold jurisdictional and immunity "matters simply must be resolved before discovery can proceed," Plaintiff is not entitled to discovery pending the resolution of those issues. ECF 130 at 4–6 (citing authority for the proposition that "legitimate jurisdictional challenges" and "defenses of immunity" should be resolved before discovery is granted).

### A.   The Amended Complaint Contains No Well-Pleaded Facts About DarkMatter.

Plaintiff's meager allegations regarding DarkMatter essentially boil down to the "information and belief" speculation that, because DarkMatter supposedly is linked to various media reports of hacking that have nothing to do with the allegations in this lawsuit, it presumably hacked Plaintiff's phone as well.  Am. Compl. ¶ 157.  For example, she alleges that "Project Raven"—a group DarkMatter supposedly controls—engaged in hacks of other journalists in 2016 and 2017.  *See id.* ¶¶ 148, 151.  But such reheated references to stale news stories do not render Plaintiff's allegations in this lawsuit regarding DarkMatter plausible.  Plaintiff cannot state a claim against DarkMatter based on rough connections to unrelated events involving non-defendants. And Plaintiff's chief allegations regarding DarkMatter, in addition to being conclusory, are all explicitly based on "information and belief," *id.* ¶¶ 167, 153, 157, 171—*i.e.*, speculation. Plaintiff's failure to plead specific, non-conclusory facts dooms her claims against DarkMatter.

### B.   Plaintiff Fails to State a CFAA Claim (Count Two).

The CFAA is a criminal statute that includes a civil cause of action for "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer."   18 U.S.C. § 1030(a)(2)(C).   It authorizes a civil action if a violation involves one of five factors specified in the statute.  *Id.* § 1030(g).

Beyond failing to plead specific facts regarding anything DarkMatter did, Plaintiff fails to plead a required element of a civil action under the CFAA:  "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I). "Loss" within the meaning of the CFAA encompasses only two categories:  "(1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and

restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (citing 18 U.S.C. § 1030(e)(11)). In other words, "loss" is either "the direct costs of responding to the violation" or "consequential damages resulting from interruption of service." *Id.*

The Amended Complaint's assertion that Plaintiff suffered losses within the meaning of the CFAA that amount to over $5,000, Am. Compl. ¶ 266, is not supported by any specific allegations that would make her claim under the CFAA plausible. The Amended Complaint offers only conclusory allegations that track the above-quoted standard set in *Brown* without providing any factual content that could support a reasonable inference that Plaintiff incurred costs that meet the statutory minimum. *Id.* ("Ms. Oueiss' losses include the cost of reasonably investigating and otherwise responding to each of the Defendants' violations, including costs associated with repairing the integrity of her personal mobile device after the hacking, and evaluating the intrusion, which amount to over $5,000.00."). It is well-established that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Further, Plaintiff alleges that another defendant carried out three of the four alleged hacks and does not allege what portion of her alleged losses are attributable to the only hack DarkMatter allegedly performed. Am. Compl. ¶¶ 260–61. The Amended Complaint thus alleges no factual basis for concluding that *DarkMatter* caused losses that meet the statutory minimum for a CFAA claim. Lastly, the only "consequential damages" Plaintiff alleges—non-monetary damages like reputational harm, lost business opportunities, and mental anguish, *id*. ¶ 245—are not "consequential damages" within the meaning of the CFAA because Oueiss does not allege any interruption of service. 18 U.S.C. § 1030(e)(11)

("other consequential damages incurred *because of interruption of service*") (emphasis added); *Brown Jordan Int'l, Inc.*, 846 F.3d at 1174. *Contra Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 865 (S.D. Tex. 2015) (lost business opportunity qualified as "consequential damages" because it resulted from an interruption in service).

Accordingly, this Court should follow the lead of courts around the country and dismiss the CFAA claim. *See, e.g., Ramirez v. SupportBuddy Inc.*, No. 17-5781, 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018) (dismissing CFAA claim because "plaintiff fail[ed] to quantify her alleged costs or make specific allegations as to the costs of repairing or investigating the alleged damage to her computer"); *Jensen v. Cablevision Sys. Corp.*, No. 17-00100, 2017 WL 4325829, at *13 (E.D.N.Y. Sept. 27, 2017) (dismissing CFAA claim where plaintiff "fail[ed] to allege enough damages or loss to meet the [$5,000 minimum] requirement under the CFAA"); *Del Vecchio v. Amazon.com, Inc.*, No. 11-366, 2012 WL 1997697, at *4 (W.D. Wash. June 1, 2012) (same).

## C.     Plaintiff Fails to State an IIED Claim (Count Three).

Plaintiff contends that DarkMatter's alleged hack of her phone constituted intentional infliction of emotional distress. Am. Compl. ¶¶ 269–74. Plaintiff likewise alleges that other defendants are liable for IIED because they subsequently disseminated materials obtained from Plaintiff's device. *Id.* Plaintiff does not allege, however, that DarkMatter disseminated the materials from her phone; she attributes the dissemination only to other defendants. *See id.* ¶¶ 125 ("Defendant DarkMatter hacked Ms. Oueiss' mobile device . . . The Recruiting Defendants then instructed the U.S. Defendants, among others, to disseminate this stolen content . . ."); 282–83 (alleging that DarkMatter and other defendants hacked her device, but that only other defendants disseminated the materials obtained from her device). Indeed, Plaintiff's libel claim—which alleges that various defendants published "knowingly false narratives" about Plaintiff—does not

even name DarkMatter as a defendant.  Am. Compl. ¶¶ 281–291.  Plaintiff's IIED claim against DarkMatter, therefore, encompasses only the alleged hack of her device.

To state a claim for IIED, a complaint must allege that:  (1) the conduct was deliberate or reckless (*i.e.*, the wrongdoer knew or should have known that emotional distress would result); (2) the conduct was outrageous; (3) the conduct caused the emotional distress; and (4) the distress was severe.  *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).  Plaintiff's IIED claim fails to state any of these elements.

First, conduct must be truly "outrageous" to give rise to an IIED claim.  *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) ("Florida common law has evolved an extremely high standard" for outrageous conduct).  The conduct must go beyond "all bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community."  *Liberti v. Walt Disney World Co.*, 912 F. Supp. 1494, 1505–06 (M.D. Fla. 1995) (noting that "[f]ew cases have upheld a plaintiff's pursuit of this cause of action under Florida law"); *see also Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. J (1965)) ("In regards to severity, the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.").  The conduct Plaintiff alleges (accessing her mobile device without authorization), fails to meet this "extremely high" standard.  *Garcia*, 838 F. Supp. 2d at 1339.

Second, Plaintiff has not alleged that *DarkMatter's* actions caused her emotional distress.  All of the distress Plaintiff alleges stems from the dissemination of her materials, not from the alleged hack of her device.  *See, e.g.*, Am. Compl. ¶ 273 ("Defendants' actions described in this Complaint have caused Ms. Oueiss to suffer severe emotional distress. Specifically, Ms. Oueiss suffered mental anguish as a result of the public ridicule and harassment that she has faced . . .

every day since these photographs were wrongfully accessed and disseminated from her mobile device.").

Third, even if the alleged distress were attributed to the hack, that distress does not rise to the level required to support an IIED claim.  Plaintiff alleges that she suffered "mental anguish as a result of the public ridicule and harassment that she has faced."  *Id*.  But the only specific mental anguish Plaintiff alleges in support of her IIED claim is that she "is now scared to visit her family in Florida, as several Defendants (*e.g.*, Van Rider and Jundi) reside in Florida."  *Id.* ¶ 245.  This is insufficient to state an IIED claim. *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1306 (Fla. 2d DCA 2018) (reversing finding of IIED and noting that "significant feelings of fright, shame, worry, and humiliation—and others besides—occasioned by the acts of others are, even if regrettable, an unavoidable part of living in society"); *cf. Bickel v. City of Coral Springs*, No. 17-cv-60606, 2017 WL 3336722, at *2 (S.D. Fla. Aug. 4, 2017) (denying motion to dismiss when plaintiff's allegations included "nightmares, paranoia, and extreme anxiety").

Finally, to the extent that the Amended Complaint can be read to allege that DarkMatter is liable for IIED based on the subsequent dissemination of Plaintiff's materials, as opposed to the alleged hack of her phone, Plaintiff cannot meet the first element (*i.e.*, that DarkMatter knew or should have known that emotional distress would result).  Plaintiff makes no allegation that DarkMatter knew or should have known that Plaintiff's materials would be disseminated publicly.  Nor does Plaintiff, a public figure, allege that DarkMatter acted with the "actual malice" required for stating an IIED claim.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55–57 (1988) (prohibiting recovery under an IIED theory when public figure failed to show "a false statement of fact which was made with 'actual malice'").

**D.      Plaintiff Fails to State a Claim for Intrusion (Count Four).**

Intrusion requires (1) a private quarter; (2) some physical or electronic intrusion into that private place; and (3) that the intrusion was highly offensive to a reasonable person. *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Under Florida law, a virtual location like Plaintiff's phone is not a "place" that can be the basis for an intrusion claim. *See Hall v. Sargeant*, No. 9:18-CV-80748, 2019 WL 1359485, at *8 (S.D. Fla. Mar. 26, 2019) ("Other federal courts considering this issue have concluded that Florida's tort does not extend to non-physical places."); *see also Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015) (no intrusion claim for accessing driver's license information on state database because it did not involve a physical place). Because an electronic hack of a mobile phone is not an intrusion into a "private quarter" under Florida law, this claim fails.

Further, in adjudicating claims for intrusion, Florida law applies the same standard for outrageousness of conduct that it applies to IIED claims. *See Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062–63 (Fla. 5th DCA 1991) (applying IIED standard to intrusion claim). That is, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). For the reasons explained in Part III.C, *supra*, the conduct Oueiss alleges does not meet this standard.

**E.      Plaintiff Fails to State a Conspiracy Claim (Count Six).**

To state a claim for civil conspiracy under Florida law, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). In addition, a civil conspiracy requires an actionable underlying tort or wrong.

*Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020), *review denied*, No. SC20-1116, 2020 WL 6391277 (Fla. Nov. 2, 2020); *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984) (dismissing conspiracy claim premised on underlying defamation claim that was barred).  Plaintiff fails to allege that DarkMatter entered into a conspiracy.

A conspiracy requires an agreement between the defendant and her alleged conspirators; mere association is not enough.  *See Russo v. Fink*, 87 So. 3d 815, 819 (Fla. 4th DCA 2012); *see also Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (dismissing conspiracy claim where plaintiff "merely [alleged] that they engaged in the same 'scheme'"); *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1345 (S.D. Fla. 2006), *aff'd sub nom. Shane v. Humana, Inc.*, 228 F. App'x 927 (11th Cir. 2007) ("[P]roof of the agreement is at the heart of a conspiracy claim.").  Plaintiff, however, offers nothing more than conclusory "information and belief" allegations that DarkMatter agreed to hack Plaintiff's phone.  *See, e.g.*, Am. Compl. ¶¶ 167 ("*Upon information and belief*, Defendant MBS coordinated with DarkMatter regarding this hacking operation, and Defendant DarkMatter agreed, at the behest of Defendant MBS, to carry out this hacking operation.") (emphasis added); 264 (similar); 304 ("Accordingly, each Defendant named herein entered into an agreement (either explicitly or tacitly) whereby they conspired to commit the acts set forth above. . . .").  Such "bare assertions" that a defendant "knew of, condoned, and willfully and maliciously agreed" to commit a tort are insufficient to state a conspiracy claim.  *Iqbal*, 556 U.S. at 680; *Parisi*, 314 So. 3d at 662 (finding allegations insufficient to support conspiracy claim when "pleading vaguely tie[d] the events together by alleging, in conclusory fashion, that the circumstances unfolded '[p]ursuant to an agreement'"); s*ee also Sargeant v. Maroil Trading Inc.*, No. 17-cv-81070, 2018 WL 3031841, at *4 (S.D. Fla. May 30, 2018) (Report & Recommendation) (finding allegations of a conspiracy to hack the plaintiff's email account to

be too vague and conclusory to state a claim); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

Although Plaintiff makes only conclusory assertions that DarkMatter conspired to *hack* her device, she makes no allegations whatsoever that DarkMatter conspired to *disseminate* her materials. *See Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (dismissing civil conspiracy claim where underlying claim was defeated). The dozens of paragraphs in the Amended Complaint about the dissemination never mention DarkMatter. *See* Am. Compl. ¶¶ 183–239. Plaintiff explicitly identifies other Defendants as disseminating Plaintiff's materials and recruiting others to do so. *See id.* ¶¶ 184 (MBS, Al Qahtani, Al-Asaker); 200 (Van Rider); 211 (Jundi); 220 (Smith); 232 (Schey, Zeinab, Al-Owerde, Al Otaibi, and Al Menaia). Nowhere in Plaintiff's Amended Complaint does she allege that DarkMatter even knew the alleged hack was part of an overall scheme relating to Plaintiff—let alone that DarkMatter shared a common goal with anyone else. *Weisman*, 297 So. 3d at 652 ("A conspiracy requires the combination of two or more persons—a meeting of two independent minds intent on one purpose.") (quoting *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991)). Accordingly, Plaintiff's conspiracy claim should be dismissed for failure to state a claim.

Finally, even if Plaintiff had adequately pleaded state-law conspiracy with respect to one or more of the five substantive counts, her civil conspiracy claim could not proceed to the extent it asserts violations of the CFAA. The CFAA provides a federal civil remedy for conspiring to violate that Act. 18 U.S.C § 1030(b), (g). As a result, any private suit alleging a conspiracy to violate the CFAA must proceed under that statute, not as a state-law civil conspiracy claim. *DHI Grp., Inc. v. Kent*, No. 16-cv-1670, 2017 WL 1088352, at *12 (S.D. Tex. Mar. 3, 2017) (dismissing

claim alleging a state-law civil conspiracy to violate the CFAA as preempted by the Act) *report and recommendation adopted*, 2017 WL 1079184 (S.D. Tex. Mar. 22, 2017); *see also Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342–43 (11th Cir. 1999) (affirming dismissal of a state-law claim for conspiring to violate the Age Discrimination in Employment Act because that statute created its own mechanism for private actions).  At a bare minimum, therefore, Plaintiff's conspiracy claim should be dismissed to the extent it alleges a conspiracy to violate the CFAA.

## **CONCLUSION**

For all of these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice as to DarkMatter under FED. R. CIV. P. 12(b)(1), (2), and (6).

Dated: August 2, 2021                       Respectfully submitted,

                                     */s/* Stephen J. Binhak
                               Stephen J. Binhak
                               Fla. Bar No. 736491
                               binhaks@binhaklaw.com
                               The Law Office of Stephen James Binhak, P.L.L.C.
                               1 SE 3rd Avenue, Suite 2600
                               Miami, Florida 33131
                               Tel: (305) 361-5500/ Fax: (305) 428-9532

                               Anthony T. Pierce (*pro hac vice*)
                               James E. Tysse (*pro hac vice*)
                               AKIN GUMP STRAUSS HAUER & FELD LLP
                               2001 K Street N.W.
                               Washington, D.C. 20006
                               Tel: (202) 887-4000/Fax: (202) 887-4288
                               apierce@akingump.com

                               Natasha G. Kohne (*pro hac vice*)
                               AKIN GUMP STRAUSS HAUER & FELD LLP
                               580 California Street, Suite 1500
                               San Francisco, CA 94104
                               Tel: (415) 765-9500/ Fax: (415) 765-9501
                               *Attorneys for Defendant DarkMatter*