UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-25022-KMM

GHADA OUEISS,

    Plaintiff,

vs.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD *et al.*,

    Defendants.
_____/

**USA DEFENDANTS' REPLY TO PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT**

Defendants Sharon Van Rider, Christanne Schey, Sam Jundi, and Annette Smith (collectively, "the USA Defendants") file this Reply to Plaintiff's Omnibus Response in Opposition to Defendants' Motions to Dismiss Amended Complaint (the "Response," ECF No. 172) and in support state as follows:

**INTRODUCTION**

The Response filed by Plaintiff, a public figure who regularly attacks her critics on Twitter,[1] confirms that she has failed to state any claim against the USA Defendants. Her Amended Complaint (ECF No. 135) centers on a purported "hack and leak" conspiracy to disseminate "stolen personal images" of Plaintiff. (Resp. at ii (defining "Conspiracy" as the "unlawful hack and leak operation"); Am. Compl. ¶¶ 1-3, 30.) As to the USA Defendants, the operative allegations are plainly insufficient and implausible:

---

[1] Plaintiff's own conduct undermines her claims of actionable harm. Amplifying the statements she complains about, Plaintiff "retweet[s] her attackers' tweets with the goal of exposing them and continuing her reporting." (Am. Compl. ¶ 26.)

- The Amended Complaint does *not* allege that any of the USA Defendants were involved in or had any knowledge of any "hack" of Plaintiff's devices. The USA Defendants are not even named in the federal law claims or the state law "intrusion" claim directed at the alleged hack. (*See* Am. Compl. Counts I, II, IV.)

- As for the alleged "leak," the Amended Complaint does *not* allege that any of the USA Defendants disseminated the "Doctored Financial Photo," which was allegedly published by Middle East News. (*Id.* ¶ 179.)

- The Amended Complaint also does *not* allege that USA Defendants Ms. Schey or Mr. Jundi posted or published Plaintiff's "stolen personal images." (*Id.* ¶¶ 3, 304(f), 307, 308.) There is nothing in the Amended Complaint that plausibly links Ms. Schey and Mr. Jundi to either the "hack" or the "leak."

- With respect to USA Defendants Ms. Smith and Ms. Van Rider, the Amended Complaint alleges retweeting of purportedly offensive photographs that were already ubiquitous on Twitter. (*Id.* ¶¶ 192, 200, 205, 221.) It is facially implausible that Ms. Smith and Ms. Van Rider would have conspired with the Crown Prince of Saudi Arabia and other foreign Defendants to retweet photos that had already been retweeted thousands of times.

- No surprise, then, that the allegations attempting to link the USA Defendants to the "hack and leak" conspiracy are bare conclusions that rest mainly on "information and belief." (*Id.* ¶¶ 46, 92, 94, 112, 300, 306.) The Amended Complaint is based solely on the USA Defendants' tweets that either expressed their opinions or discussed their activities—

all out in the open. These public statements are hardly the hallmarks of a global "conspiracy" rising to the ranks of royalty.[2]

The Amended Complaint also discusses at length the USA Defendants' interactions on Twitter and their praise for Saudi Arabia and its leaders. (*See* Resp. at 12-13; Am. Compl. ¶¶ 41-42, 49-50, 54-55, 59-60.) Those interactions are protected speech and not actionable. While Plaintiff may not view such conduct as "that of ordinary American citizens" (Resp. at 12), her opinion is of no moment.[3] What matters are the facts alleged, and the Amended Complaint does not state plausible facts supporting any claim against the USA Defendants.

## ARGUMENT

All claims against the USA Defendants arise under Florida law: Count III for Intentional Infliction of Emotional Distress ("IIED"), Count V for Libel, and Count VI for Civil Conspiracy.

### Count III: Intentional Infliction of Emotional Distress

First, the Response incorrectly contends that Plaintiff's IIED and libel claims against the USA Defendants are not based on the same conduct. (Resp. at 45.) Both claims are indeed based on the exact same thing: a series of tweets by the USA Defendants. The USA Defendants did not hack her phone, obtain private photographs, threaten her with violence, nor do any of the other things that the Amended Complaint attempts to peg on other Defendants. Thus, Plaintiff cannot assert both an IIED claim and a libel claim against them because the claims rest on the same tweets.

---

[2] "For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world." *Grunewald v. United States*, 353 U.S. 391, 402 (1957).

[3] Of course, the expression of unpopular, controversial, or even hurtful views is *quintessential* American conduct. This Nation has chosen "to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder v. Phelps*, 562 U.S. 443, 460–61 (2011) ("Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker.").

*See Ortega Trujillo v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998) ("a single publication gives rise to a single course of action"); *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) ("In short, *regardless of privilege*, a plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'") (emphasis in original).

Plaintiff answers that she "is not complaining about one or two tweets," but rather "approximately 340 tweets" as part of a "multi-faceted conspiracy . . . to sway the narrative on Twitter." (Resp. at 46.) The number of tweets—whether 340 or 34 or 3—makes no difference. The IIED claim against the USA Defendants is based on nothing more than the USA Defendants' tweets. Therefore, the IIED and libel claims improperly rest on the same conduct.

Second, this Court decides as a matter of law what constitutes outrageous conduct for an IIED claim. *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (Moore, J.). It can review the tweets allegedly posted by the USA Defendants and conclude that the tweets were not outrageous, particularly when compared to extreme conduct that courts have deemed not outrageous in prior cases.[4] This conclusion is even more compelling when the tweets are directed at a public figure like Plaintiff who taunts and challenges others on Twitter. Tellingly, Plaintiff is silent on the fact that she has hurled at the USA Defendants the same "mercenary" insult she finds so objectionable. (*See* Am. Compl. ¶¶ 34, 210, 220.) Fair game for one side, apparently.

This Court's prior opinion in *Garcia* epitomizes the "extremely high" bar for "outrageous" conduct under Florida law. 838 F. Supp. 2d at 1339 (quotation omitted). There, seven crew members on a cruise liner allegedly grabbed a passenger, kicked her, punched her, threw her to

---

[4] *See* bullet-point list of eleven cases in *Whidden v. Roberts*, No. 5:19-CV-80-MCR/MJF, 2020 WL 6566961, at *9-10 (N.D. Fla. July 28, 2020), *report and recommendation adopted*, No. 5:19CV80-CR/MJF, 2020 WL 6566322 (N.D. Fla. Nov. 9, 2020).

the ground, handcuffed her, dragged her across the floor, confined her to her cabin overnight, triggered a panic attack, and destroyed a camera the passenger's companion had used to record the onslaught. *Id.* at 1336. The Court dismissed the passenger's claim for intentional infliction of emotional distress. *Id.* at 1339. While she could state a claim for assault and battery, "[n]othing contained in [the] Complaint is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985)). If *that* conduct is not outrageous under the law, then Plaintiff here has nothing.[5]

Case law cited in the Response does not overcome this high bar. (*See* Resp. at 46.) In *Albert v. National Cash Register Co.*, 874 F. Supp. 1328 (S.D. Fla. 1994), the Court declined to dismiss an IIED claim because, although the plaintiff had alleged "a pervasive pattern of constant harassment," there was insufficient information to determine whether the defendant's conduct was outrageous or not as a matter of law. *Id.* at 1331. By contrast, here the Court has everything it needs to evaluate the IIED claim: the underlying tweets.

The *Albert* opinion is particularly unhelpful to Plaintiff's cause because it highlighted that IIED liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely

---

[5] Plaintiff attempts to downplay her prior grievance of feeling "aghast" that the allegedly hacked photographs "were tweeted more than 40,000 times" by claiming now that those tweets came from "thousands of bot accounts created as part of the Conspiracy." (Defs' MTD at 6, 9; Resp. at 47; *see* Am. Compl. ¶ 244.) If the actions of the Twitter community were significant enough for Plaintiff to include in her *Washington Post* article, they are significant enough for the Court to consider here. Plaintiff cannot have it both ways.

5

inconsiderate and unkind." *Id.* (citing Restatement (Second) of Torts § 46 cmt. d (1965)). The description is spot-on: tweets here are *not* actionable conduct. *Id.*[6]

### Count V: Libel

The allegedly "defamatory" tweets by the USA Defendants do not constitute libel as a matter of law. (*See* USA Defs.' MTD at 11-16.) The tweets were not false statements of fact; they were constitutionally protected opinions and political discourse.

Plaintiff mistakenly argues that the USA Defendants' tweets are not protected by the First Amendment because they are "mixed" expressions of opinion. (*See* Resp. at 50-51.) This argument is based on misrepresentations of the libel allegations, which in turn misrepresent the USA Defendants' tweets. According to Plaintiff, the USA Defendants falsely stated that Plaintiff "engaged in sexual acts for favors" or "engages in sexual acts with terrorists for notoriety." (*Id.* at 49.) Plaintiff trots out the "prostitution" and "terrorism" themes repeatedly in her Response. (*Id.* at 1, 15, 49, 51-53). Yet, Plaintiff cannot point to any tweet by any USA Defendant that states or implies as a matter of fact that Plaintiff was engaged in prostitution or terrorism.

First, as to the purported "sexual acts," Plaintiff points to several tweets by Ms. Smith and Ms. Van Rider, not by "USA Defendants" *en masse*. The Amended Complaint does not allege that Mr. Jundi or Ms. Schey stated anything about "sexual acts" or "prostitution." (*See* Am. Compl. ¶¶ 199-201, 203, 212-15, 221, 228-29.) As for Ms. Smith and Ms. Van Rider, Exhibit "A" hereto demonstrates that they did not state or suggest any prostitution or sexual activity as a matter of fact; the tweets were at most social media epithets that are protected as First Amendment

---

[6] Plaintiff also relies on *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441 (D. Conn. 2009). That case is inapplicable on both the law and the facts. It applied Connecticut state law to the IIED claim and involved accessing email without permission, *id.* at 454-55, while here Plaintiff does not allege any involvement by the USA Defendants in the so-called hacking.

expressions of opinion and that no reasonable person would interpret as factual. Likewise, with respect to Mr. Jundi and Ms. Schey, their allegedly defamatory tweets about terrorism, as demonstrated in Exhibit "B," are protected as First Amendment expressions of opinion that no reasonable person would interpret as factual.

Both the Eleventh Circuit and the U.S. Supreme Court have made clear that non-literal assertions of "fact" are not actionable. The tweets by the USA Defendants are protected expressions of opinion and rhetorical hyperbole, particularly when the Court examines the circumstances in which the statements were made: the Wild West of Twitter, which is replete with statements that "cannot reasonably be interpreted as stating actual facts about an individual." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quotation omitted); *see Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) (describing Twitter as "the Wild West . . . shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire").

For example, in *Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002), the court held that journalist Geraldo Rivera's statement that the plaintiff was an "accomplice to murder" was not defamatory as a matter of law because a "reasonable viewer would have understood Rivera's comments merely as expressing his belief that Horsley shared in the moral culpability for Dr. Slepian's death, not as a literal assertion that Horsley had, by his actions, committed a felony." *Id.* at 701-02. Similarly, a reasonable viewer on Twitter would understand the USA Defendants' tweets as expressing their affection for Saudi Arabia and distaste for Plaintiff, not as literal assertions that she engaged in prostitution, sexual acts, or terrorism.

Courts recognize Twitter for what it is: a freewheeling forum. Notably, Plaintiff's Response ignores *Ganske v. Mensch*—which the USA Defendants discussed extensively in their Motion to Dismiss, *see* pp. 12-13—in favor of an unpublished opinion, *Stern v. O'Quinn*, No. 07-

7

cv-60534, 2008 WL 11401794 (S.D. Fla. Aug. 8, 2008). (*See* Resp. at 51.) However, *Stern* involved allegedly defamatory statements made in television interviews. *Id.* at *2-4. *Ganske* is far closer to the current facts, as it involves an allegedly defamatory tweet. *See* 480 F. Supp. 3d at 547-48. The *Ganske* court granted dismissal in part due to context: like "the unique context of statements made on Internet fora, [where] courts have emphasized the generally informal and unedited nature of these communications . . . , Twitter's forum is equally—if not more—informal and 'freewheeling.'" *Id.* at 553. Here, Plaintiff is as informal and freewheeling on Twitter as anyone else, and she should not now be heard to complain about opinions expressed against her when she admittedly reposts "her attackers' tweets with the goal of exposing them and continuing her reporting." (Am. Compl. ¶ 26.)

As a public figure, Plaintiff faces the additional hurdle of proving actual malice, *i.e.*, that the USA Defendants made each allegedly defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). The lack of actual malice may be apparent on the pleadings and, so, appropriate grounds for dismissal. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252-53 (11th Cir. 2021); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (noting that "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice").

A few months ago, *Coral Ridge Ministries Media* affirmed the dismissal of a defamation claim based on lack of actual malice. 6 F.4th at 1253. There, a ministry sued for defamation based on its inclusion in the Southern Poverty Law Center's "Hate Map," a website list of "hate groups." *Id.* at 1250. For starters, the Eleventh Circuit "disregard[ed] the portions of the complaint where

8

Coral Ridge alleged in a purely conclusory manner that the defendants acted 'with actual malice' in publishing the Hate Map." *Id.* at 1252; *see also Michel*, 816 F.3d at 704 (finding no actual malice in complaint's "threadbare recitals"). For the remaining portions, the court found the complaint did not allow a reasonable inference that the Center had a culpable state of mind nor acted with reckless disregard for the truth. 6 F.4th at 1252-53. The same analysis applies here. While Plaintiff repeats "reckless disregard" like a mantra throughout the Complaint and Response (*see* Am. Compl. ¶¶ 197, 206, 211, 217, 226, 232, 287; Resp. at 53-54), she fails to allege specific facts from which the Court could reasonably infer a culpable or reckless state of mind.

Finally, the arguments in Plaintiff's Response that defamation *per se* applies and the Communications Decency Act ("CDA") does not apply miss the mark. (*See* Resp. at 52-54.) Plaintiff's discussion of defamation *per se* relies on cases that did not involve public figures, who must meet the "actual malice" requirement under *New York Times v. Sullivan*. Additionally, her discussion of the CDA rests on a familiar mischaracterization of the tweets underlying her claims. The USA Defendants did not "add[] their own false statements" to the retweeted photographs (*id.* at 54) because, as explained above, the tweets did not contain any provable statements of fact. The tweets expressed the users' opinions: favoring Saudi Arabia and disfavoring Plaintiff. In any event, the Amended Complaint relies on mere retweeting without additional commentary, which is protected under the CDA. (*See* Am. Compl. ¶¶ 200, 209, 211, 224, 229; USA Defs.' MTD at 15-16.)

### Count VI: Civil Conspiracy

The civil conspiracy count fails because it lacks any underlying tort or wrong by the USA Defendants. Their only alleged conduct are tweets that are not defamatory and do not support an

IIED claim. (*See* Resp. at 56.) The remaining counts against the other Defendants fail for the reasons explained in their respective Motions to Dismiss.

Moreover, there is no plausible allegation that the USA Defendants ever combined with other Defendants to generate a "peculiar power of coercion" nor joined any conspiracy. *See Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981) (rejecting conspiracy claim because "any decision regarding staff privileges . . . must be decided by the hospital, a single entity"). As shown in Exhibit "C," the allegations of concerted effort between the USA Defendants and other Defendants are largely made on "information and belief," which this Court should disregard. The remaining allegations not based on "information and belief" are conclusory and patently implausible statements without any factual support, or they simply misconstrue the underlying tweets, as seen in Exhibit "D."

The conspiracy count is smoke and mirrors, based on speculation and misrepresentation of the USA Defendants' tweets.

## **CONCLUSION**

In the end, the Amended Complaint's fatal deficiencies are obvious. The USA Defendants therefore respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice for failure to state a claim and any other relief the Court deems proper.

Dated: October 14, 2021                    Respectfully submitted,

                                                                               */s/ Marcos Daniel Jiménez*
                                                                               Marcos Daniel Jiménez
                                                                                Florida Bar No. 441503
                                                                               **Marcos D. Jiménez, P.A.**
                                                                                255 Alhambra Circle, 8th Floor
                                                                                Miami, FL 33134
                                                                                Tel:  305-570-3249
                                                                                Fax:  305-437-8158
                                                                                Email: mdj@mdjlegal.com

                                                          *Counsel for Defendants Sharon Van Rider, Christanne Schey, Sam Jundi, and Annette Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2021, a copy of the foregoing pleading was automatically served upon filing via the CM/ECF portal to all counsel of record.

                                                                               */s/ Marcos Daniel Jiménez*
                                                                               Marcos Daniel Jiménez