**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 20-CV-25022-KMM

GHADA OUEISS

   Plaintiff,

v.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

   Defendants.

**DEFENDANTS AL MENAIA, AL OTAIBI,
AL-OWERDE, AND ZEINAB'S[1] REPLY IN SUPPORT OF MOTION TO DISMISS**

## I. Plaintiff's Conspiracy Allegations Are Too Conclusory To Be Credited

  These Defendants' first dismissal argument is the Court's lack of personal jurisdiction. Mot. at 3-15. The Defendants established that Plaintiff's co-conspirator theory of personal jurisdiction fails to satisfy Florida's long-arm statute, because she has not plausibly pled civil conspiracy. *Compare* Mot. at 3-10 *with* Opp. at 27-30. In response, Plaintiff claims that these Defendants' ties to the alleged conspirators "are conspicuous" based on the quantity of their Twitter interactions. Opp. at 11-12, 29. Plaintiff fails to connect the dots between the content of those interactions and her conspiracy theory, and fails to plausibly allege whether any of them related to participation in the so-called "hack and leak" plot.[2] Knowing people and interacting online does not "reveal the existence" of any conspiracy.

  Plaintiff's inability to keep her own allegations regarding the lumped-together "Recruiting Defendants" straight illustrates her fundamental pleading problem. Unlike the Amended Complaint, Plaintiff's Opposition now adds a *fifth* Defendant, Bader Al-Asaker, to that definition.

---

[1] Collectively, these four individuals are referred to as the "Defendants." Their underlying Motion to Dismiss [DE-163] is referred to as the "Motion" or "Mot." The Plaintiff's Omnibus Response in Opposition [DE-172] is referred to as the "Opposition" or "Opp."

[2] Importantly, Plaintiff narrowly defines the "Conspiracy" as the "hack and leak operation," Opp. at ii, but these Defendants are not alleged to have participated in the hacking of Plaintiff's phone, the leaking of images from her phone, or the dissemination of those images. Mot. at 2.

*See* Opp. at i (DE-172:14).  Brushing in broad strokes, the Opposition argues that "the Recruiting Defendants" were involved in "personally disseminating disinformation" and "mobilizing" the USA Defendants "to circulate the same defamatory content."  Opp. at 10.[3]  But the Amended Complaint fails to plead any facts that plausibly show such a thing occurred.[4]  Rather, ¶¶ 216, 223, 225, and 232 (cited in the Opposition) offer wholly conclusory assertions that the lumped-together "Recruiting Defendants […] instructed" the USA Defendants "to personally attack Ms. Oueiss on Twitter."  Paragraph 122 (also cited) fails to mention any of these Defendants, generically alleging: "This conduct includes recruiting U.S. citizens to spread stolen and doctored photographs of Ms. Oueiss[…]"  *Id.*  Similarly, ¶ 196 claims in equally conclusive terms that the amorphous "Recruiting Defendants" generically "instructed the Network to spread the stolen content[.]"  *See also* Opp. at 14, 29.  But there are no factual allegations or even references to Tweets actually supporting these conclusions.

Such vague and conclusory allegations violate basic pleading requirements, because "conclusory allegation[s] of agreement at some unidentified point does not supply facts adequate to show illegality."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Plaintiff pleads no facts identifying any one of these four Defendants as having offered any such "instruction," much less any "specific time, place, or person involved."  *Id.* at 565 n.10.  Where these Defendants are actually mentioned by name, Plaintiff disingenuously misreads her actual allegations.  Thus, the Opposition claims that Mr. Al Menaia "personally instructed participants in the conspiracy […] to spread stolen content."  *Id.* at 29 (citing Am. Compl. ¶¶ 196, 216).  But the cited paragraphs are not nearly so specific, instead generically referring to the "Recruiting Defendants."  *Id.*  And the Amended Complaint's sparse allegations specifically leveled against Mr. Al Menaia **do not** allege that he "instructed" anybody to participate in a conspiracy against Plaintiff by spreading "stolen content."  *See* Am. Compl. ¶ 104 (alleging instruction to spread "disinformation about **other countries** […]") (emphasis added).

---

[3] In her conspiracy allegations, Plaintiff fundamentally misconstrues what constitutes illegality: "Attacking critics," posting "pro-MBS propaganda," "spreading pro-MBS disinformation," or simply "praising MBS" is all political speech that is not even close to being unlawful.

[4] In resolving the pending Motions to Dismiss, this Court must look to the allegations ***actually pled*** in the Amendment Complaint, and Plaintiff "cannot amend a complaint through statements in a brief."  *Ramirez v. City of Fort Lauderdale Fire Rescue*, No. 19-60169-CIV, 2019 U.S. Dist. LEXIS 72739, *4-5 (S.D. Fla. Apr. 29, 2019) (internal quotations and citation omitted).

The same is true for Mr. Zeinab. Plaintiff generally alleges that Mr. Zeinab "instructed numerous members in the Network to post pro-Defendant MBS propaganda videos." (Am. Compl. ¶ 102). There are no allegations that the unidentified "propaganda videos" even related to Plaintiff, much less that they involved any illegality.[5] Incredibly, the Opposition also resurrects the original Complaint's now-deleted reference to a badly mistranslated Tweet by Mr. Zeinab. *Compare* Opp. at 58 ("Zeinab even acknowledged the creation of this Network […]") *with* Compl. ¶ 99 ("Zeinab, remarkably, acknowledged creating the Network […]"). Plaintiff struck that discredited allegation from her Amended Complaint, conceding it had been egregiously mistranslated. *See* DE-110 at 8-9. At best, the Amended Complaint retains a reference to Mr. Zeinab's alleged "media initiative aimed at amplifying pro-Defendant MBS content […]," which does not relate to Ms. Oueiss in any way and does not involve illegality. Am. Compl. ¶ 99. It is perfectly reasonable for an independent Lebanese journalist to express opinions that differ from those of Plaintiff, Al Jazeera, CNN, or The Washington Post. It is not reasonable to infer that such political opinions by a political journalist evidence participation in an actionable conspiracy.

Continuing to grasp at straws, Plaintiff points to the alleged dinner between Ms. Van Rider and Mr. Al Otaibi's family at a public restaurant in Saudi Arabia. Opp. at 14, 28. But she offers no plausible allegations that during that meal, Ms. Van Rider and Mr. Al Otaibi even mentioned Plaintiff, much less reached any agreement to defame her or disseminate hacked-and-leaked material. Her logical leaps – that a family dinner plus Tweets "praising Saudi Arabia" equal a criminal conspiracy – are the apex of implausibility.

"Factual allegations must not only be consistent with an inference of conspiracy but also must be 'suggestive enough to render a . . . conspiracy plausible' and must 'raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'" *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1308 (S.D. Fla. 2010) (citing *Twombly* at 556); *see also Wells Fargo Bank v. Berkman*, No. 1:10-CV-2286-TWT, 2011 U.S. Dist. LEXIS 16484, *17-22 (N.D. Ga. Feb. 17, 2011) (dismissing conspiracy claim where the alleged facts were "consistent with conspiracy, but equally consistent with lawful conduct."). That is particularly so with respect to social media, which by its very nature promotes collective or group interactions

---

[5] Plaintiff failed to address or acknowledge Defendants' argument that Mr. Zeinab's allegedly assisting Ms. Van Rider with an online video on one alleged occasion is not alleged to relate in any way to Plaintiff. Mot. at 7.

3

involving spirited debate on social and political issues. Here, Plaintiff's "concerted" action allegations against these Defendants fail to "nudge[] [her] claims across the line from conceivable to plausible[,]" and require an impermissible leap from vigorous social media group discourse on controversial issues to the existence of a conspiratorial agreement. *See Twombly* at 547.

### A. Shotgun Pleading

Plaintiff addresses these Defendants' shotgun pleading argument in a footnote. Opp. at 44 n.14. Defendants do not claim that group allegations against them are *per se* improper. Rather, no Defendant is on notice regarding his particular alleged role in Plaintiff's far-flung conspiracy, a problem magnified by each Defendant's different as-alleged situation. Plaintiff alleges that: Mr. Zeinab is a "well-connected Lebanese political operative" linked to Saudi 24 TV; Mr. Al Menaia, a Saudi citizen, allegedly acted "in concert with" Mr. Zeinab; Mr. Al-Owerde, a Saudi journalist allegedly "loyal to" Mr. Al Qahtani, holds a "leadership role in the Network," somehow "indoctrinating" "the U.S.-based Defendants[;]" Mr. Al Otaibi, also a Saudi citizen, "works in the Information Technology and Security field[,]" and was allegedly recruited "through the MiSK Foundation to take part in leading the cultivation of the Network[.]"[6] It would be difficult to imagine allegations that are more vague, ambiguous, and conclusory.

Lumping these differently situated individuals together "fails to distinguish between the defendants and otherwise articulate what conduct is attributable to which defendant[,]" and "the Court cannot discern whether lumping defendants together could make sense in this case because the Complaint does not clearly describe the defendants' relationship to one another[.]" *Aguilar v. B Braun Med. Inc.*, No: 2:19-cv-67, 2019 U.S. Dist. LEXIS 84085, *3-4 (M.D. Fla. May 20, 2019). Plaintiff's inability to consistently articulate which individuals are identified as the "Recruiting Defendants" highlights that flaw.

### B. The "Peculiar Power Of Coercion" Theory Does Not Apply

Plaintiff's novel and last-ditch suggestion that her conspiracy claim rests on an unpled "peculiar power of coercion" theory should be rejected. *See* Opp. at 56. "This theory of conspiracy has very limited application. It only applies when two or more people are able to use their combined power to inflict an economic injury." *Kalmanson v. Adams*, 988 So. 2d 1121, 1123 (Fla. 5th DCA 2008) (Torpy, J., concurring). Plaintiff has not pled or alleged any facts supporting the

---

[6] Am. Compl. ¶¶ 96-97, 104, 108-109, 114, 116.

4

"limited application" of such a theory with respect to any of these Defendants. *See id.* ("Appellant must plead **facts** to show that the combination exists and that the combination has some unique coercive power that was used to cause economic harm to Appellant.") (emphasis original).

Because Plaintiff has not pled a cognizable conspiracy claim against these Defendants, Florida's long-arm statute does not support the exercise of personal jurisdiction over them.

## II. The Long-Arm Statute Is Also Not Satisfied, Because The Alleged Conspiracy Was Not Directed At Florida And Plaintiff Suffered No Injury In Florida

Plaintiff fails to directly address Defendants' argument that Florida's long-arm statute is not satisfied, because the alleged conspiracy was not directed at Florida. *See* Mot. at 10. Plaintiff acknowledges Defendants' related argument that Plaintiff suffered no cognizable injury in Florida in passing. She necessarily agrees that she suffered no injury in Florida, but leans heavily on *Tavakoli v. Doronin*, [2019 U.S. Dist. LEXIS 43188] (S.D. Fla. Mar. 18, 2019) to buttress the one-sentence conclusion that her place of injury is "irrelevant," because a substantial aspect of the alleged tort occurred in Florida. Opp. at 30.

An examination of *Tavakoli*'s Florida-centric facts leads to the opposite conclusion. *Tavakoli* involved a plan to oust an investor from an acquisition deal. The defendants "carried out their plan" at a corporate board meeting held in Miami. 2019 U.S. Dist. LEXIS 43188 at *6-7. The underlying acquisition involved a Letter Agreement signed in Miami. *Id.* at *8. Prior to the Miami board meeting ousting the plaintiff, some of the defendants also "had a dinner meeting in Miami." *Id.* at *9. Thus – unlike this case – the heart of the alleged conspiracy hinged on events physically occurring in Florida, where "a 'substantial aspect of the alleged tort' was committed [.]" *Id.* at *20.

Here, by contrast, besides the entirely fortuitous location[7] of two named defendants and their attendant online activity, virtually no events central to the Amended Complaint occurred in

---

[7] Plaintiff generally claims that the alleged conspiracy "intended to recruit members to the Network who were from major U.S. cities[…]" Opp. at 31. Nowhere does she plead that Ms. Van Rider or Mr. Jundi were targeted because of their Florida location. Defendants also adopt the Crown Prince's Reply brief arguments generally establishing that Plaintiff's claims have no meaningful connection to Florida. *See* [DE 175 at 1-3].

5

Florida.[8]  Unable to establish that "a substantial aspect of the alleged tort" occurred in Florida or that she was injured in Florida, Plaintiff offers no basis for the exercise of long-arm jurisdiction.

### III. Due Process Principles Prohibit Exercising Personal Jurisdiction Over Defendants

Plaintiff's response to the Defendants' constitutional due process argument fares no better. In conclusory fashion, she points to "participat[ion] in the conspiracy alleged under Florida law[,]" restating her tabulation of the Defendants' generic Twitter interactions. Opp. at 31.  Resorting to the undefined and absurdly broad label "Foreign Defendants," Plaintiff claims that "the Foreign Defendants actively sought the participation of Florida residents in their scheme […]" Opp. at 31-32 (citing Am. Compl. ¶¶ 204, 216).  But as recounted above, ¶¶ 204 and 216 generically allege that Ms. Van Rider and Mr. Jundi were "instructed by the Recruiting Defendants […] to personally attack Ms. Oueiss on Twitter."  They nowhere mention that these individuals were so instructed due to their Florida location.  Plaintiff also points to Amended Complaint ¶ 142 for the proposition that "the Foreign Defendants consciously sought the benefit of using Florida residents […]" Opp. at 32.  In fact, ¶ 142 nowhere mentions Florida, these Defendants, or even the USA Defendants, instead referring to "Saudi-based bot accounts."  *Id.*  Plaintiff relatedly claims "that the Foreign Defendants are alleged to have targeted Florida *co-conspirators* as well as Florida readers[,]" Opp. at 32.  To the contrary, the Amended Complaint contains no allegations of targeting Florida readers, and the Opposition cites none.  *See id.*

Unable to plausibly allege that any of these Defendants traveled to Florida, published defamatory material in Florida, or intended to target a Florida audience by reaching conspiratorial agreements with anyone, and having suffered no injury in Florida, Plaintiff cannot establish that her claims arise out of or relate to any Florida contacts.  *See* Mot. at 11-12.  Nor can she establish purposeful availment, under either the "effects test" or the "traditional analysis." *Id.* at 13-14.

Plaintiff's response to Defendants' argument regarding offense to traditional notions of fair play and substantial justice rests on *ipse dixit*.  Opp. at 33.  Plaintiff fails to grapple with the lack of substantive connection between the subject matter of this lawsuit (Middle Eastern and Saudi affairs) and Florida.  Nor does she address the significant burdens attendant to subjecting these four Defendants to litigation halfway across the world.  *See* Mot. at 14.  She also fails to address

---

[8] For the same reasons, Defendants adopt Masharea and Middle East News' related arguments that Plaintiff's state law claims do not apply to the alleged extraterritorial conduct. *See* [DE 168 at 11-2]; [DE 169 at 14-15] & related Reply briefs.

the well-settled law that as a foreign plaintiff lacking connections to this forum, she does not enjoy the strong presumption that her forum choice is based on convenience. *See* Mot. at 14 (quotations and citation omitted). For these reasons, and as explained in Defendants' Motion to Dismiss, even if this Court concludes that Florida's long-arm statute were satisfied, personal jurisdiction would still be inappropriate on Due Process grounds.[9] Defendants adopt the related due process arguments contained in the Crown Prince's Reply brief. [DE 175 at 3].

### IV. Plaintiff's Allegations Support Conduct-Based And Derivative Immunity

The Defendants asserted independent and alternative subject-matter jurisdiction dismissal arguments pursuant to conduct-based and derivative immunity. Mot. at 15-17. The Opposition attacks the Crown Prince's entitlement to sovereign immunity, but otherwise contends that all conduct allegedly taken by these Defendants was "spearhead[ed,]" "orchestrated" by, and done "at the behest of," the Crown Prince. Opp. at 1-6, 9-12, 20-24. Plaintiff conveniently glosses over the inextricably entwined nature of the "network" allegedly "recruited" by these Defendants, the Crown Prince, and the state of Saudi Arabia. *See, e.g.*, Am. Compl. ¶¶ 43 (alleging "Ms. Van Rider's sudden and seemingly inexplicable connection to Defendant MBS and Saudi Arabia."); 49 (Mr. Jundi "increasingly devoted to praising [the Crown Prince] and Saudi Arabia"); 56 (Ms. Smith "praising Saudi Arabia […]"); 60 (Ms. Schey "praising Saudi Arabia […]"). These Defendants are not alleged to have acted as rogue agents following personal whims, but rather under the Crown Prince's orders for purposes of "praising Saudi Arabia" online and "promot[ing] pro-[Crown Prince] propaganda[.]" *See id.* at ¶ 38.

If this Court accepts the Crown Prince's immunity arguments (*see* [DE 175 at 3-7]), which these Defendants adopt), Plaintiff's allegations relegating these Defendants to the status of agents[10] acting "at the behest of" the Crown Prince would make those actions "official acts performed within the scope of [their] duty[.]" *Moriah v. Bank of China, Ltd.*, 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015) (citations omitted). Conduct-based immunity therefore applies.

---

[9] To the extent the undefined term "Foreign Defendants" includes Messrs. Zeinab, Al-Owerde, Al Menaia, and Al Otaibi, Plaintiff's argument that Rule 4(k)(2) supplies a jurisdictional basis over them fails, because as Plaintiff concedes, Rule 4(k)(2) requires that Plaintiff's claims arise under federal law. Here, neither of the two causes of action Plaintiff brought under federal law were asserted against any of these Defendants. *See* Opp. at 34-36.

[10] Courts have "not focused on the degree of an official's 'authority' to act on behalf of the foreign state because conduct-based immunity may extend to an 'agent' of a foreign state." *Doe v. Buratai*, 318 F. Supp. 3d 218, 231 (D. D.C. 2018) (internal quotations and citations omitted).

### A. The Restatement Does Not Frame The Correct Inquiry

The Opposition presses the incorrect standard towards framing that inquiry. The Restatement (Second) of Foreign Relations has never been endorsed or adopted by the U.S. Supreme Court, and "[t]he State Department, too, has registered its skepticism regarding the Restatement's test." *Broidy Capital Mgmt. LLC v. Muzin*, No. 20-7040, 2021 U.S. App. LEXIS 26667, *32 (D.C. Cir. Sept. 3, 2021). Rather, the common law regarding immunity, as explained in *Samantar v. Yousuf*, 560 U.S. 305, 312 (2010), applies to these Defendants' conduct-based immunity claim. *See* Mot. at 15-16 (explaining the common law standard).

### B. *McMahon* Does Not Foreclose The Application Of Derivative Immunity

The Opposition incorrectly suggests that Eleventh Circuit law forecloses the derivative immunity doctrine. *See* Opp. at 25 (citing *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007)). That is not accurate. *McMahon* involved claims of immunity by a private U.S. Government contractor implicating "sensitive military judgments" – not immunity derived from service as an agent of a foreign official. The Eleventh Circuit cited *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) for the general proposition that "courts have recognized claims of derivative sovereign immunity in a variety of contexts[,]" but never precluded its application in a situation involving agents alleged to be "following commands of [a] foreign sovereign[.]" *Id.* at 1343. Besides urging this Court to disregard *Butters*, the Opposition fails to engage with the substantive conclusion that, given the Amended Complaint's allegations, these Defendants acted as private agents of an immune foreign sovereign. Dismissal is appropriate for this independent reason.

### V. Relying On Improper Lumping, Plaintiff Has Neither Explained Nor Alleged How Any Of These Defendants Published Defamatory Material With Actual Malice

Underscoring Plaintiff's flawed shotgun pleading approach, the Opposition improperly lumps these Defendants together with the USA Defendants in responding to the argument that the Amended Complaint fails to state a libel claim. Opp. at 49-54. Regarding these Defendants, the Opposition refers only to Mr. Al-Owerde, lumping him together with Ms. Van Rider, Smith, and Schey, and claiming that statements "stating or implying that [Plaintiff] aids and abets terrorism […]" are libelous *per se*.[11] *Id.* at 52. But as alleged in the Amended Complaint, Mr. Al-Owerde

---

[11] Plaintiff cites out-of-circuit authority in support of that proposition. But Courts applying the Restatement (Second) of Torts standard have conversely recognized that statements describing "political, economic or sociological philosophies[,]" akin to calling a media outlet a "platform" of

published no statements regarding the Plaintiff at all. At most, the Amended Complaint's background section claims that he expressed an opinion referring to **Plaintiff's employer** (not named as a party in this lawsuit) as a "platform of terrorism." Am. Compl. ¶ 113. Besides applying to the wrong party, Plaintiff fails to plead or explain how Mr. Al-Owerde's alleged Tweet was false, much less made with actual malice.[12] *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251-52 (2d Cir. 2017) ("The statement did not point to any facts in the complaint showing that NBC's claims regarding connections to 'overseas terrorists' were false."). Indeed, "actual malice" is nowhere mentioned in the Amended Complaint.

Plaintiff fails to address Defendants' argument that her libel claim rests on the alleged dissemination of material hacked from her phone, not Tweets attributed to any of these Defendants. Mot. at 18; *accord* Am. Compl. ¶¶ 282-88. Plaintiff's libel allegations discuss "false narratives" regarding allegedly leaked photographs published by Ms. Van Rider, Mr. Jundi, Ms. Smith, Ms. Schey and Al Arabiya, but not any of these Defendants. *See id.* at ¶¶ 284, 285, 288. There are no allegations that any of these Defendants published such "false narratives," or allegedly leaked material. Accordingly, the Amended Complaint fails to state a libel claim against them.

## VI. No Conduct By Any Of These Defendants Rises To The Level of IIED

In support of Plaintiff's IIED claim, the Opposition claims that "the Recruiting Defendants have mentioned her in approximately 107 tweets[,]" pointing to a table pasted in Amended Complaint ¶ 242 that nowhere mentions Mr. Al Otaibi or Mr. Al Menaia. Opp. at 46. Plaintiff fails to explain how any of those alleged "mentions" rise to the level of extreme and outrageous conduct intended to cause severe emotional distress. Nor does Plaintiff even allege that any of the so-tabulated tweets were actually read by her outside of this lawsuit.

That leaves the Opposition's sole mention of Mr. Al Menaia's alleged "dog" and "surround you" tweet, which is nowhere mentioned in Plaintiff's IIED claim, but incorporated from the Amended Complaint's background section. Am. Compl. ¶ 106. Plaintiff herself invited this type

---

terrorism (as opposed to a terrorist actor *per se*), "are incapable of defamatory meaning." *See, e.g., Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. 2012) ("comments as to [official's] belief that Appellants are 'anarchists,' 'paper terrorists' or 'fellow travelers' of certain anti-government groups" not actionable as defamation). *Accord Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (applying Restatement (Second) of Torts to defamation analysis).

[12] Although the Opposition fails to address them, the same predicate is lacking for Mr. Zeinab's and Mr. Al Menaia's alleged Tweets. *See* Mot. at 18.

9

010-9264-4718/7/AMERICAS

of name-calling by repeatedly referring to her critics as "flies."[13] Such schoolyard taunts are not actionable. Florida Courts have held that "calling a minister a thief in front of his parishioners" and "a supervisor calling an African-American employee the n-word and monkey" are not legally outrageous. *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 955 (Fla. 3d DCA 2017). Surely, then, calling somebody a "dog" or "fly" (as Plaintiff has done), and even proposing to metaphorically "surround" them on Twitter, likewise fails to reach the threshold of a sustainable IIED claim. *Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1279 (S.D. Fla. 2020) ("Liability does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'") (citations omitted).

Plaintiff's attempt at distinguishing her IIED claim from her libel claim is self-defeating. Opp. at 45. She claims that the conduct underlying her IIED "is not the same" as her libel claim, but points to nothing more than Twitter activity and the alleged hacking and leaking of her personal device. *Id.* As discussed above, that is precisely the same conduct she claims constitutes libel. The Opposition certainly offers no independent activity by any of these Defendants giving rise to an IIED claim. *See Rubinson*, 474 F. Supp. 3d at 1279. Plaintiff's IIED claim fails.

## VII. Plaintiff Failed To Plead Conspiracy

For the same reasons explained in Section I, *supra*, Plaintiff's conspiracy claim fails to state a claim against these Defendants, and should, alternatively, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Accord* Mot. at 4-10, 17. Defendants adopt the Crown Prince's argument that Plaintiff failed to sufficiently allege any conspiracy between them and the Crown Prince. *See* [DE 175 at 10].

## VIII. Conclusion

For the foregoing reasons, and as explained in their Motion to Dismiss [DE-163], all claims against Defendants should be dismissed.

---

[13] *See* DE 162 (USA Defendants' Motion to Dismiss) at 4 & Ex. C (DE 162-3).

Dated: October 14, 2021

Respectfully submitted,

*/s/ Andrew R. Kruppa*
Andrew R. Kruppa (Fla. Bar No. 63958)
andrew.kruppa@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 S. Biscayne Boulevard, Ste. 4700
Miami, Florida 33131
(305) 577-7000 (tel)
(305) 577-7001 (fax)

Mitchell R. Berger (pro hac vice)
mitchell.berger@squirepb.com
Benjamin D. Wood (pro hac vice)
benjamin.wood@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street NW
Washington DC 20037
(202) 457-6000 (tel)
(202) 457-6315 (fax)

*Counsel for Faisal Al Menaia, Awwad Al Otaibi, Turki Al Owerde, and Tarek Abou Zeinab*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via the Court's CM/ECF document filing system on October 14, 2021.

*/s/ Andrew R. Kruppa*
Andrew R. Kruppa

010-9264-4718/7/AMERICAS