UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-cv-25022-KMM

GHADA OUEISS,

    Plaintiff,

vs.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

    Defendants.

---

**DEFENDANT DARKMATTER'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.      THIS COURT LACKS PERSONAL JURISDICTION OVER DARKMATTER ................................................................................................1

           A.    The Florida Long-Arm Statute Does Not Supply Jurisdiction ....................1

           B.    Rule 4(k)(2) Does Not Supply Jurisdiction ..................................................4

    II.     PLAINTIFF CANNOT OVERCOME DARKMATTER'S CONDUCT-BASED IMMUNITY ARGUMENT ......................................................................5

    III.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST DARKMATTER ................................................................................................6

           A.    Plaintiff Fails to State a Conspiracy Claim under Florida Law (Count Six) ...................................................................................................6

           B.    Plaintiff's Conclusory Allegations Fail To State a CFAA Claim (Count Two) ..................................................................................................7

           C.    Plaintiff Fails to State an Intentional Infliction of Emotional Distress ("IIED") Claim (Count Three) .......................................................8

           D.    Plaintiff Fails to State a Claim for Intrusion (Count Four) ........................10

CONCLUSION ...................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alderwoods Grp., Inc. v. Garcia*,
  119 So.3d 497 (Fla. 3d DCA 2013)...................................................................................9

*Allstate Ins. Co. v. Ginsberg*,
  863 So. 2d 156 (Fla. 2003) .............................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................7, 8

*Bailey v. Carnival Corp.*,
  369 F. Supp. 3d 1302 (S.D. Fla. 2019)............................................................................4, 5

*Baker v. Lightsey*,
  No. 2:11-CV-14290-KMM, 2012 WL 1574649 (S.D. Fla. May 3, 2012) ................................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................7, 8

*Brown-Criscuolo v. Wolfe*,
  601 F. Supp. 2d 441 (D. Conn. 2009)..................................................................................9

*Brown Jordan International, Inc. v. Carmicle*,
  846 F.3d 1167 (11th Cir. 2017) ............................................................................................8

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .............................................................................................................3

*Butters v. Vance*,
  225 F.3d 462 (4th Cir. 2000)...............................................................................................6

*Coal. for an Airline Passengers' Bill of Rts. v. Delta Air Lines, Inc.*,
  693 F. Supp. 2d 667 (S.D. Tex. 2010)...............................................................................10

*Emerald Asset Advisors, LLC v. Schaffer*,
  895 F. Supp. 2d 418 (E.D.N.Y. 2012)..................................................................................3

*Fraser v. Smith*,
  594 F.3d 842 (11th Cir. 2010)..............................................................................................3

*Frias v. Demings*,
  823 F. Supp. 2d 1279 (M.D. Fla. 2011)................................................................................9

*Hall v. Sargeant*,
    No. 9:18-CV-80748, 2019 WL 1359485 (S.D. Fla. Mar. 26, 2019) ....................................... 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ............................................................................................................ 3

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) .............................................................................................................. 9

*L.O.T.I. Grp. Prods. v. Lund*,
    907 F. Supp. 1528 (S.D. Fla. 1995) (Moore, J.) .................................................................. 2

*Lazette v. Kulmatycki*,
    949 F. Supp. 2d 748 (N.D. Ohio 2013) ............................................................................. 10

*Musiker v. Projectavision, Inc.*,
    960 F. Supp. 292 (S.D. Fla. 1997) ....................................................................................... 2

*Nance v. Maxwell Fed. Credit Union*,
    186 F.3d 1338 (11th Cir. 1999) ........................................................................................... 7

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ........................................................................................... 4

*Parisi v. Kingston*,
    314 So. 3d 656 (Fla. 3d DCA 2021) .............................................................................. 1, 4, 7

*Powell v. Yellow Book USA, Inc.*,
    445 F.3d 1074 (8th Cir. 2006) ........................................................................................... 10

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ............................................................................................................ 5

*Shows v. Morgan*,
    40 F. Supp. 2d 1345 (M.D. Ala. 1999) .............................................................................. 10

*Stirling International Realty, Inc. v. Soderstrom*,
    No. 6:14-cv-1109-ORL-40T, 2015 WL 403318 (M.D. Fla. Jan. 28, 2015) ....................... 10

*St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*,
    347 F. Supp. 3d 1047 (M.D. Fla. 2018) .............................................................................. 8

*In re Takata Airbag Prods. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ................................................................................ 4

*Tavakoli v. Doronin*,
    No. 18-cv-21592, 2019 WL 1242669 (S.D. Fla. Mar. 18, 2019) ........................................ 1

*Vernars v. Young*,
    539 F.2d 966 (3d Cir. 1976) .................................................................................................. 10

*Ward v. Casual Restaurant Concepts Inc.*,
    No. 8:10-CV-2640-T-17TGW, 2011 WL 2600511 (M.D. Fla. June 29, 2011) ...................... 10

*Watts v. City of Hollywood, Fla.*,
    146 F. Supp. 3d 1254 (S.D. Fla. 2015) .................................................................................. 10

*Watts v. Haun*,
    393 So. 2d 54 (Fla. 2d DCA 1981) .......................................................................................... 2

*Wilcox v. Stout*,
    637 So. 2d 335 (Fla. 2d DCA 1994) ........................................................................................ 3

**Statutes**

18 U.S.C. § 951 .............................................................................................................................. 5

18 U.S.C. § 1030(c)(4)(A)(i)(I) ...................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P.
    4(k)(2) ............................................................................................................................. 1, 4, 5
    12(b)(6) ................................................................................................................................ 4, 8

## INTRODUCTION

Plaintiff's Opposition confirms that there is no basis for her state-law or CFAA claims against DarkMatter—a UAE company with *zero* alleged ties to the United States generally or Florida specifically—to proceed in this Court. Plaintiff apparently believes that she need merely make conclusory allegations of a sprawling, multi-stage conspiracy with a tenuous Florida connection in order to hale any alleged "conspirator" to this court from around the globe. That is not how personal jurisdiction works. Fundamental principles of due process protect defendants from being forced to defend lawsuits in far-flung courts based on the unilateral activity of third parties. And where, as here, a Plaintiff fails to make the "clear, positive and specific allegations" of conspiracy necessary to state a claim under Florida law, "the trial court must dismiss the complaint against a nonresident defendant for lack of personal jurisdiction." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). For that reason, and for those stated below, Plaintiff's claims against DarkMatter should be dismissed.

## ARGUMENT

### I.  THIS COURT LACKS PERSONAL JURISDICTION OVER DARKMATTER

Plaintiff's Opposition fails to demonstrate any basis in either the Florida long-arm statute or Fed. R. Civ. P. 4(k)(2) for this Court to exercise personal jurisdiction over DarkMatter consistent with due process with respect to any of her claims.

#### A.  The Florida Long-Arm Statute Does Not Supply Jurisdiction

To establish personal jurisdiction over DarkMatter under Florida's long-arm statute (Fla. St. § 48.193(1)(a)(2)) for her state-law claims, Plaintiff acknowledges she must establish that DarkMatter "committed a substantial aspect of the alleged tort in Florida," either personally or through an agent. Opp'n 27 (quoting *Tavakoli v. Doronin*, No. 18-cv-21592, 2019 WL 1242669, at *5 (S.D. Fla. Mar. 18, 2019)). Unable to allege any direct connection between DarkMatter and Florida, Plaintiff instead relies exclusively on an indirect, "conspiracy" theory of jurisdiction.

But a conspiracy requires an agreement "to do an unlawful act or to do a lawful act by unlawful means." *Parisi*, 314 So. 3d at 661. And Plaintiff never alleges that DarkMatter agreed with anyone else to disseminate materials or defame her—*i.e.*, the only aspect of the tort that supposedly took place in Florida. Plaintiff attributes those acts to other defendants. Am. Compl. ¶¶ 125, 282-83. Indeed, Plaintiff does not allege that DarkMatter played any role in the "tweeting"

1

by the two Florida defendants, ever communicated with them, or even (until this suit) was aware that they existed. Likewise, Plaintiff never alleges that the two American defendants who retweeted the allegedly hacked material knew the materials were hacked, much less knew that DarkMatter was one of the alleged hackers. She cannot show that their meager, isolated activities—even if true—constitute a "substantial aspect" of the tort for purposes of the Florida long-arm statute. *See L.O.T.I. Grp. Prods. v. Lund*, 907 F. Supp. 1528, 1532 (S.D. Fla. 1995) (Moore, J.) (where suit alleged that defendant sold copies of plaintiff's films primarily within Europe, defendant's sale of three copies within Florida was not a substantial aspect of the alleged tort); *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 297 (S.D. Fla. 1997) ("Two telephone calls out of six months of allegedly continuous contact could not be described as the requisite 'substantial aspect of the alleged tort.'"); *contra Watts v. Haun*, 393 So. 2d 54, 56 (Fla. 2d DCA 1981) (acts "essential to the success of the tort" constituted a substantial aspect of the alleged tort).

Beyond that, Plaintiff acknowledges that "personal jurisdiction is only proper if it complies with the Due Process Clause[.]" Opp'n 30. That means that, to establish jurisdiction under her "conspiracy" theory, she must show that (1) DarkMatter purposely availed itself of Florida law, and (2) exercising jurisdiction over DarkMatter would comport with traditional notions of fair play and substantial justice. *Id.* 30-31. But Plaintiff cannot meet either element.

*First*, Plaintiff cannot identify a single act DarkMatter took to avail itself of Florida law. Plaintiff attempts to lump DarkMatter in with *other* Defendants, alleging that the foreign defendants "personally interacted with their Florida co-conspirators," "recruit[ed]" two Florida residents to join the alleged conspiracy, or "helped disseminate misinformation throughout Florida," Opp'n 31-32. But she never alleges that *DarkMatter* did any of these things. Indeed, the Opposition's multi-page discussion of due process requirements neglects to mention DarkMatter even once. *Id.* 30-33. The reason for this is evident: the only act DarkMatter is alleged to have committed—a hack that supposedly occurred on April 14, 2020—has no connection to Florida (or to the United States). DarkMatter Mem. 10. Oueiss was not in Florida at the time of the alleged hack. Am. Compl. ¶ 36 (conceding that the last time Plaintiff was in the United States was "the fall of 2019"). And there is no allegation that the hack was accomplished by accessing data in the United States.[1] Instead, Plaintiff alleges that DarkMatter conspired with three Saudi individuals,

---

[1] Oueiss's original complaint alleged that the hack was accomplished by accessing servers in the United States, and by accessing Plaintiff's phone while "Plaintiff and her mobile device

who in turn conspired with the Recruiting Defendants, who in turn conspired with Florida defendants, who in turn tweeted allegedly hacked materials or defamatory statements while in Florida. Am. Compl. ¶¶ 123 (alleging that DarkMatter conspired with MBS, Al Qahtani, and Al-Asaker); 125, 299, 300(a) and (b), 304(f) (alleging that it was the Recruiting Defendants who recruited Van Rider and Al Jundi into the alleged conspiracy and instructed them to defame Oueiss or to disseminate her materials). Even taking that speculative, conclusory chain of connections at face value, it fails to show that *DarkMatter* conspired with any Florida residents to commit a tort, or that it otherwise purposefully availed itself of Florida law.

 Simply put, a court "may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction," *Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010), and it cannot premise jurisdiction on the "unilateral activity of another party or a third person," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). The lone case Plaintiff cites for the ostensibly contrary proposition involves two out-of-state conspirators who conspired *directly* with a Florida co-conspirator. *Wilcox v. Stout*, 637 So. 2d 335, 336 (Fla. 2d DCA 1994) (accepting "appellant's allegations that [out-of-state defendants] engaged in a conspiracy with" a Florida defendant). Thus, the out-of-state-defendants who "conspired to commit tortious acts in Florida" necessarily knew that the conspiracy touched Florida. *Id*. Plaintiff ignores the numerous cases DarkMatter cited holding that, to find personal jurisdiction under a conspiracy theory, the alleged foreign co-conspirator must at least be *aware* that the conspiracy will touch Florida. *See* DarkMatter Mem. 14-15 (citing cases); *see, e.g., Emerald Asset Advisors, LLC v. Schaffer,* 895 F. Supp. 2d 418, 431 (E.D.N.Y. 2012) (court must consider whether "the out-of-state coconspirator had an awareness of the effects of the activity in New York"). The Amended Complaint makes no such allegation about DarkMatter.

 *Second*, Plaintiff cannot show that exercising jurisdiction comports with traditional notions of fair play and substantial justice. Whatever claim Plaintiff may have vis-à-vis other Defendants with regard to interests of Florida and convenience of this forum, she has identified none vis-à-vis DarkMatter. Plaintiff does not even dispute the burden to DarkMatter, a UAE entity, of defending itself in this forum. Plaintiff suggests that traditional notions of fair play and substantial justice

---

were physically present in California." ECF 1 ¶¶ 170, 266. Such allegations are conspicuously absent from the Amended Complaint.

must be satisfied here because DarkMatter has not identified another forum where DarkMatter would be amenable to suit. Opp'n 33. There is no such rule. The language Plaintiff quotes from *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 n.18 (11th Cir. 2009) discusses a requirement for jurisdiction under Federal Rule of Civil Procedure 4(k)(2), not a feature of traditional notions of fair play and substantial justice.[2]

In any event, Florida courts will not invoke the conspiracy theory of jurisdiction where a plaintiff cannot properly allege a conspiracy in "clear, positive and specific" terms. *Parisi*, 314 So. 3d at 661; DarkMatter Mem. 12-13. As explained in more detail in section III.A, *infra*, the Amended Complaint does not adequately allege that DarkMatter entered into a conspiracy.

### B. Rule 4(k)(2) Does Not Supply Jurisdiction

Plaintiff's Opposition fails to show that this is the "rare occurrence" where Rule 4(k)(2) jurisdiction is warranted. *In re Takata Airbag Prods. Litig.*, 396 F. Supp. 3d 1101, 1150 (S.D. Fla. 2019). For the reasons explained below, the sole federal claim she asserts against the company (under the CFAA) fails under Rule 12(b)(6) and thereby precludes application of Rule 4(k)(2).[3] But Plaintiff does not show that exercising jurisdiction over DarkMatter would comport with due process in any event. Just as the Amended Complaint does not allege that DarkMatter availed itself of Florida law, it does not allege that DarkMatter availed itself of U.S. law, either. Plaintiff refers only to American news outlets reporting on the alleged overseas murder of a foreign journalist, and the alleged hack of non-defendant Jeff Bezos. Opp'n 34-35. But those events are outside the scope of the torts alleged in this case; they cannot create specific jurisdiction here. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 (jurisdictional allegations must show "requisite connection between the forum and the specific claims at issue"). Plaintiff likewise relies on "the relationship that the Foreign Defendants have with the two USA Defendants not based in Florida." Opp. 34-35. But again, the Amended Complaint does not allege that *DarkMatter* has any relationship with any of the USA Defendants. Just as the relationships between other foreign defendants and the two

---

[2] This Court already has denied Plaintiff's request for jurisdictional discovery. ECF 131. Her half-hearted renewal of that request in a footnote of her opposition brief, Opp'n 36 n.9, raises no new arguments, and likewise should be denied.

[3] Plaintiff does not respond to DarkMatter's argument that because the only federal claim against it fails, the Court should not exercise supplemental subject matter jurisdiction over the state-law claims against DarkMatter. DarkMatter Mem. 11. The Court therefore should treat that argument as conceded. *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1311 (S.D. Fla. 2019).

Florida defendants cannot confer jurisdiction over DarkMatter, the purported relationships between other foreign defendants and American defendants cannot do so either.[4]

## II. PLAINTIFF CANNOT OVERCOME DARKMATTER'S CONDUCT-BASED IMMUNITY ARGUMENT

Plaintiff's Opposition argues at length that the actions of MBS she alleges were in his personal capacity and, therefore, the Defendants who she alleges acted as his agents are not entitled to conduct-based immunity. That argument is contradicted by her specific allegations that MBS's goals were geopolitical in nature and in furtherance of Saudi interests—specifically, to target "perceived critics of the Saudi and UAE regimes," *id.* ¶ 76, and to further Saudi Arabia's (and other states') severance of ties with Qatar, *id.* ¶ 148; *see, e.g., id.* ¶ 150 (alleging that "Project Raven has been (and continues to be) used to target dissidents and individuals that speak out against joint UAE and Saudi interests"). Proving the point, she claims that the U.S. Defendants' alleged actions on behalf of MBS required them to notify the Attorney General under a provision that applies by its terms only to "an agent of a *foreign government*." 18 U.S.C. § 951; *see* Am. Compl. ¶ 248. Plaintiff's allegations that MBS *also* had personal interests in discrediting her does not alter the key allegations for purposes of conduct-based immunity: that DarkMatter supposedly acted as MBS's agent, at his direction, and in furtherance of Saudi geopolitical interests. *See Samantar v. Yousuf*, 560 U.S. 305, 321 (2010) (recognizing conduct-based immunity is afforded to an "agent of [a foreign] state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state").

Plaintiff also argues that conduct-based immunity is unavailable to corporate entities like DarkMatter. But the conduct-based immunity inquiry sensibly focuses on *conduct*, not corporate structure. *See* Amicus Br. of the U.S. in Supp. of Pet. for Cert., *Lewis v. Mutond*, No. 19-185, 2020 WL 2866592, *10 (May 2020) (emphasis in original) (recognizing that it is a "common-sense rule" that conduct-based immunity "generally turns on whether the challenged action was taken in an official capacity"); *see also Samantar*, 560 U.S. at 312 (noting that courts give great weight to the views of the Executive Branch in matters of immunity). Consistent with this principle, the Fourth Circuit has held that a corporate entity—specifically, a government contractor—enjoyed derivative

---

[4] Plaintiff offers no response to DarkMatter's point that Rule 4(k)(2) jurisdiction cannot be based on an alleged conspiracy, DarkMatter Mem. 13 n.4, so the Court should treat the point as conceded. *Bailey*, 369 F. Supp. 3d at 1311.

sovereign immunity from suit because it was carrying out official activities as an agent of that state. *Butters v. Vance*, 225 F.3d 462, 466 (4th Cir. 2000). There is no reason why DarkMatter—which Plaintiff similarly alleges acted as an official "agent of a foreign government" to further Saudi interests—should not be entitled to conduct-based immunity under the same rationale.

### III.  PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST DARKMATTER

#### A.  Plaintiff Fails to State a Conspiracy Claim under Florida Law (Count Six)

Plaintiff's Opposition fails to save her conspiracy claim against DarkMatter, because she does not adequately allege that DarkMatter took any action in furtherance of a conspiracy or agreed to commit any unlawful act, and because she concedes that she cannot maintain a claim for conspiracy to violate the CFAA.

*First*, Plaintiff failed to plead that DarkMatter took actions in furtherance of the alleged conspiracy. The bulk of her conspiracy argument concerns Defendants other than DarkMatter (as well as non-parties), and much of it concerns dissemination and defamation activities in which DarkMatter is not accused of participating. Opp'n 5-10; 54-58. Even with regard to the alleged hacking, according to the paragraphs of the Amended Complaint cited in the Opposition, three of the four hacks were carried out by a "threat actor group operating within Saudi Arabia (and at the behest of Defendants MBS, Al Qahtani and Al-Asaker)"—not DarkMatter. Am. Compl. ¶¶ 160-65 (cited in Opp'n 7, 55).

With respect to the meager allegations actually related to DarkMatter, Plaintiff points to no specific facts that connect DarkMatter to the alleged hacking of Plaintiff's phone. Instead, she relies on a conclusory "information and belief" allegation that "Defendant DarkMatter, in furtherance of the Conspiracy, carried out [a] separate attack on Ms. Oueiss' mobile device." *Id.* ¶ 167. Her additional cited allegations are that, based on media reports, DarkMatter controls a "secret Emirati intelligence program" called Project Raven that "hack[ed] and sp[ied] on perceived critics of the Saudi and UAE regimes," that the Israeli government sold to the UAE the Pegasus spyware Plaintiff claims was used to access her phone, and that the alleged secret Emirati intelligence program utilizes that spyware. Am. Compl. ¶¶ 76, 147-48, 151-52 (cited in Opp'n 7, 58). Such colorful allegations that DarkMatter conducts hacking operations on behalf of a non-party, however, hardly support the conclusion that DarkMatter was part of the operation at issue in this lawsuit. Notably, DarkMatter is not even referenced in the cited paragraph drawing a parallel between other Defendants' (and non-parties') alleged "tactics used in previous hack and leak

attacks against dissidents and critics of Defendant MBS," and the alleged hacking of Plaintiff's phone. *Id.* ¶ 30 (cited in Opp'n 7). Other paragraphs detailing the alleged method of the hacking similarly do not reference DarkMatter. *Id.* ¶¶ 140-45, 166-74 (cited in Opp'n 7, 8, 55, 58). Removing the conclusory allegations, no "clear, positive and specific allegations" of conspiracy remain. *Parisi,* 314 So. 3d at 661.

*Second*, Plaintiff's allegations regarding a supposed "agreement" to commit unlawful activities are insufficient. As noted, Plaintiff fails to allege that DarkMatter agreed with anyone else to disseminate materials or defame her. And even the allegations relating to a supposed agreement to hack are simply conclusory assertions of coordination with MBS, which are insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For example, Plaintiff alleges (without factual support) that MBS and DarkMatter in the past collaborated in "offensive cyber effects operations." Am. Compl. ¶¶ 30, 152-53 (quoted in Opp'n 7). She also speculates "[u]pon information and belief" that MBS and DarkMatter jointly coordinated the hacking of Plaintiff's phone. *Id.* ¶ 152 (quoted in Opp'n 7), *see also id.* ¶¶ 158-59 (alleging that DarkMatter and other Defendants were responsible for the alleged hackings) (cited in Opp'n 7, 55, 58); *id.* ¶¶ 167-68 (alleging that on April 14, 2020, MBS and DarkMatter "coordinated" to access Plaintiff's phone) (cited in Opp'n 7-8, 55, 58). Such conclusory and undisputedly speculative allegations of a secret "agreement" between a private Emirati security company and the Saudi Crown Prince are insufficient to state a conspiracy claim.

*Finally*, Plaintiff does not dispute that a common-law conspiracy claim cannot make an "end run" around the CFAA's remedy for conspiracy to violate that Act. Opp'n 59 (citing *Nance v. Maxwell Fed. Credit Union*, 186 F.3d 1338, 1342-43 (11th Cir. 1999)). She makes clear that she "does not allege a state law conspiracy claim to violate the CFAA." *Id.* Accordingly, the Amended Complaint's common-law conspiracy claim at a minimum should be dismissed insofar as it alleges conspiracy to violate the CFAA. *See Nance*, 186 F.3d at 1342-43 (dismissing state-law claim for conspiracy to violate federal statute that provided its own conspiracy claim).

### B.  Plaintiff's Conclusory Allegations Fail To State a CFAA Claim (Count Two)

As noted, Plaintiff fails to plead specific facts that tie DarkMatter to the alleged hacking of Plaintiff's phone; instead, she merely points to allegations about unrelated events involving non-parties, Opp'n 41 (citing Am. Compl. ¶¶ 76, 147-48, 151), and conclusory "information and belief"

7

allegations about DarkMatter's involvement in the alleged hacking, *e.g.*, *id.* 40 (citing Am. Compl. ¶¶ 29, 158). Nor does Plaintiff identify any specific allegation that DarkMatter agreed with other Defendants to hack her phone (or indeed, to take any action concerning her). The Amended Complaint alleges no facts that demonstrate that DarkMatter agreed with others "to engage in pattern of hacking operations." Opp'n 42 (citing Am. Compl. ¶¶ 71, 157). Of the two paragraphs Plaintiff cites for support, the first makes no mention of DarkMatter, Am. Compl. ¶ 71, and the second only speculates "upon information and belief" that DarkMatter hacked Plaintiff's phone based on its alleged role in unrelated hackings *not involving Plaintiff*, *id.* ¶ 157.

Plaintiff likewise fails to overcome the absence of facts in the Amended Complaint that would establish the statutory minimum $5,000 threshold for a civil claim, 18 U.S.C. § 1030(c)(4)(A)(i)(I), with respect to DarkMatter. DarkMatter has hardly "disregard[ed]" any such allegations, Opp'n 43, as there are none. The Amended Complaint paragraphs Plaintiff cites describe how the alleged hackings were executed, again making no mention of DarkMatter in describing three of the four alleged hacks. Am. Compl. ¶¶ 160-72 (cited in Opp'n 43). The paragraphs do not quantify any alleged losses, let alone any losses from the single alleged hack that is attributed in conclusory terms to DarkMatter. *See id.* Although Plaintiff cites one case from another district that accepted conclusory allegations of loss as sufficient, *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1062 (M.D. Fla. 2018), the cases cited in DarkMatter's motion (at 22) are more faithful to the fundamental pleading requirement that a plaintiff allege more than "[t]hreadbare recitals" of the relevant statutory elements. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).[5] Plaintiff's failure to allege facts indicating that the lone hack attributed to DarkMatter caused losses meeting the CFAA's minimum dooms her claim.

### C. Plaintiff Fails to State an Intentional Infliction of Emotional Distress ("IIED") Claim (Count Three)

The Amended Complaint fails to plead any of the four elements of a claim for IIED against DarkMatter. To support her IIED claim, Plaintiff was required to plead, among other things, (1) "severe" emotional distress, (2) that resulted from DarkMatter's "extreme and outrageous"

---

[5] The passage from *Brown Jordan International, Inc. v. Carmicle*, on which Plaintiff also relies, does not help her either; it reviewed the trial court's finding of compensable damages, not sufficiency of a complaint's allegations under Rule 12(b)(6). 846 F.3d 1167, 1174-75 (11th Cir. 2017) (quoted in Opp'n 43-44).

conduct, and (3) actual malice. *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-57 (1988). She pleaded none of those elements.

*First*, Plaintiff does not allege the kind of "severe" emotional distress required to support an IIED claim, which requires that the "distress inflicted [be] so severe that no reasonable man could be expected to endure it." *Frias*, 823 F. Supp. 2d at 1289 (citation omitted). Plaintiff points to only one "specific allegation[] concerning any mental suffering that the plaintiff has sustained": that Plaintiff is "scared to visit her family in Florida." Am. Compl. ¶ 245. This hardly rises to the "incredibly high standard" of severity required to support an IIED claim. *Baker v. Lightsey*, No. 2:11-CV-14290-KMM, 2012 WL 1574649, at *5 (S.D. Fla. May 3, 2012) (holding allegations of bad dreams do not meet "incredibly high standard"). Moreover, Plaintiff attributes her alleged distress to the dissemination of her materials, not to the hacking of her phone. DarkMatter Mem. 23-24 (citing Am. Compl. ¶ 273). But as noted, Plaintiff concedes that DarkMatter was not involved in the dissemination of her materials, and that the "tortious conduct alleged against it is an act in a conspiracy where *others made false statements*." Opp'n at 48 (emphasis added); *see id.* at 22-23, 45-46, 55-56; *see also* DarkMatter Mem. 22 (citing Am. Compl. ¶¶ 125, 282-83).

*Second*, Plaintiff fails to point to any case law suggesting that the alleged conduct is "outrageous" under Florida law. Opp'n 46. The only authority she cites is a District of Connecticut case that in no way helps Plaintiff (even assuming Connecticut applies Florida's same "outrageousness" standard). There, in addition to hacking the plaintiff's e-mail account, the defendant had "threatened and intimidated" the plaintiff, "publicly accused her of illegal activity," and read and forwarded communications she had sent her lawyer. *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 455 (D. Conn. 2009) (cited in Opp'n 46). Plaintiff alleges nothing comparable with regard to DarkMatter.

*Third*, Plaintiff acknowledges her "status as a public figure," Opp'n 48, so she must establish actual malice to state an IIED claim. *Hustler Magazine*, 485 U.S. at 55-57. Yet she points to no allegation that gives rise to a reasonable inference that DarkMatter acted with the requisite level of intent. Nor does she identify authority to support her position that actual malice by DarkMatter is not required simply because she alleges a conspiracy. Opp'n 48. On the contrary, whether a defendant's conduct caused severe emotional distress involves "highly individualized determinations which cannot be established through common proof." *Alderwoods Grp., Inc. v. Garcia*, 119 So.3d 497, 506 (Fla. 3d DCA 2013).

9

### D. Plaintiff Fails to State a Claim for Intrusion (Count Four)

Plaintiff fails to establish that her phone's files are a "place" that can be a basis for an intrusion claim. A court in this District has recognized that invasion of privacy by intrusion requires "'physically or electronically intruding into one's private quarters,'" and that "Florida courts have not adopted a broader common law definition of invasion of privacy by intrusion that other state courts have." *Hall v. Sargeant*, No. 9:18-CV-80748, 2019 WL 1359485, at *7-8 (S.D. Fla. Mar. 26, 2019) (quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156 (Fla. 2003)). *Hall* thus recognized that an email account and digital files containing emails and attachments were not "the kind of 'private quarter' or 'place' that can be the basis for invasion of privacy by intrusion under Florida law." *Id.* at *8. Plaintiff's phone files and storage are thus not a "private quarter" or "place," either.

None of Plaintiff's out-of-district authority shows that a virtual place like a phone's file system or storage is a "place" for purposes of a common law intrusion claim. Opp'n 49. *Stirling International Realty, Inc. v. Soderstrom* addressed only whether an electronic intrusion can satisfy the outrageousness prong of an intrusion claim. No. 6:14-cv-1109-ORL-40T, 2015 WL 403318, at *6 (M.D. Fla. Jan. 28, 2015). The single paragraph that *Ward v. Casual Restaurant Concepts Inc.* devotes to the intrusion claim likewise does not consider whether a phone is a "place" for purposes of Florida intrusion law. No. 8:10-CV-2640-T-17TGW, 2011 WL 2600511, at *4 (M.D. Fla. June 29, 2011). The other cases Plaintiff cites (i) involve accessing physical mail or files rather than electronic materials, *see Shows v. Morgan*, 40 F. Supp. 2d 1345, 1363 (M.D. Ala. 1999) & *Vernars v. Young*, 539 F.2d 966, 968 (3d Cir. 1976); (ii) dismissed the intrusion claim on a different ground, and so never consider the question of whether a phone is a physical place, *see Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1080 (8th Cir. 2006); and/or (iii) did not interpret Florida law, *see Coal. for an Airline Passengers' Bill of Rts. v. Delta Air Lines, Inc.*, 693 F. Supp. 2d 667, 675 (S.D. Tex. 2010); *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 760 (N.D. Ohio 2013).

Regardless, as explained above, Plaintiff's failure to point to "outrageous" conduct by DarkMatter that meets Florida's "extremely high" standard, Opp'n 49, dooms her intrusion claim as well. *See Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1268 (S.D. Fla. 2015).

### CONCLUSION

For the foregoing reasons, and those stated in DarkMatter's opening memorandum, Plaintiff's claims against DarkMatter should be dismissed.

Dated: October 14, 2021                        Respectfully submitted,

                                                           /s/ Stephen J. Binhak
Stephen J. Binhak
Fla. Bar No. 736491
binhaks@binhaklaw.com
The Law Office of Stephen James Binhak, P.L.L.C.
1 SE 3rd Avenue, Suite 2600
Miami, Florida 33131
Tel: (305) 361-5500/Fax: (305) 428-9532

Anthony T. Pierce (*pro hac vice*)
James E. Tysse (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street N.W.
Washington, D.C. 20006
Tel: (202) 887-4000/Fax: (202) 887-4288
apierce@akingump.com

Natasha G. Kohne (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA 94104
Tel: (415) 765-9500/Fax: (415) 765-9501

*Attorneys for Defendant DarkMatter*