**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 20-CV-25022-KMM**

GHADA OUEISS,

    Plaintiff,

v.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

    Defendants.

_____/

**PRINCE MOHAMMED BIN SALMAN ABDULAZIZ FOUNDATION'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1
ARGUMENT ...................................................................................................................... 1
I.   PLAINTIFF HAS NOT ALLEGED A BASIS FOR PERSONAL JURISDICTION
     OVER THE MISK FOUNDATION ........................................................................ 1
     A.   Plaintiff Has Not Addressed The Unavailability Of Rule 4(k)(2)
          Jurisdiction. ................................................................................................... 1
     B.   Plaintiff Cannot Rely On Al Qahtani's Contacts To Plead Jurisdiction
          Against The Foundation. ............................................................................... 2
     C.   Permitting This Suit Against A Saudi Charitable Organization To Proceed
          In Florida Would Violate Due Process. ........................................................ 5
II.  PLAINTIFF'S IMMUNITY ARGUMENTS FAIL. ................................................ 6
III. PLAINTIFF HAS NOT IDENTIFIED ANY BASIS FOR THE IIED AND CIVIL
     CONSPIRACY CLAIMS AGAINST THE MISK FOUNDATION. ...................... 7
     A.   The Opposition Does Not Rebut The Foundation's IIED Arguments. ........ 7
     B.   The Opposition Does Not Identify Any Allegations Connecting The
          Foundation To The Civil Conspiracy Claim. ............................................... 9
IV.  THE COURT SHOULD DENY PLAINTIFF'S RENEWED REQUEST FOR
     JURISDICTIONAL DISCOVERY. ...................................................................... 10
CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Axess Inc. v. Ochoa*,
 2018 WL 2197693 (M.D. Fla. May 14, 2018) .............................................................. 8

*Bickel v. City of Coral Springs*,
 2017 WL 3336722 (S.D. Fla. Aug. 4, 2017) ............................................................... 9

*Broidy Capital Mgm't v. Muzin*,
 12 F.4th 789 (D.C. Cir. 2021) ..................................................................................... 7

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
 141 S. Ct. 1017 (2021) ................................................................................................ 5

*Genterra Grp., LLC v. Sanitas USA, Inc.*,
 2021 WL 148887 (S.D. Fla. Jan. 15, 2021) ........................................................... 1–2, 8

*GolTV, Inc. v. Fox Sports Latin Am. Ltd.*,
 277 F. Supp. 3d 1301 (S.D. Fla. 2017) ...................................................................... 4

*Henriquez v. El Pais Q'Hubocali.com*,
 500 F. App'x 824 (11th Cir. 2012) ............................................................................. 1

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
 2021 WL 3054908 (S.D. Fla. July 20, 2021) ............................................................ 10

*Hernandez v. Oliphant Fin., LLC*,
 2021 WL 3602808 (M.D. Fla. Aug. 13, 2021) ........................................................... 8

*Ideal Foods, Inc. v. Action Leasing Corp.*,
 413 So. 2d 416 (Fla. Dist. Ct. App. 1982) ................................................................. 5

*Kim v. Jung Hyun Chang*,
 249 So. 3d 1300 (Fla. Dist. Ct. App. 2018) ............................................................... 8

*Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*,
 765 So. 2d 296 (Fla. Dist. Ct. App. 2000) ................................................................. 5

*Louis Vuitton Malletier, S.A. v. Mosseri*,
 736 F.3d 1339 (11th Cir. 2013) .................................................................................. 6

*Rincon v. Miami-Dade Cty.*,
 2020 WL 7344633 (S.D. Fla. Mar. 31, 2020) ............................................................ 9

*State v. Justice*,
 624 So. 2d 402 (Fla. Dist. Ct. App. 1993) ................................................................. 5

*Thompson v. Carnival Corp.*,
  174 F. Supp. 3d 1327 (S.D. Fla. 2016) ................................................................................... 10

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2000) ............................................................................................. 10

**STATUTES**
Fla. Stat. Ann. § 48.193 ................................................................................................................ 2

**RULES**
Fed. R. Civ. P. 4 ............................................................................................................................ 1

## INTRODUCTION

Plaintiff's Opposition makes nary a mention of the Saudi charitable organization the Prince Mohammed Bin Salman Abdulaziz Foundation ("the MiSK Foundation" or "Foundation") and effectively ignores the arguments the Foundation made in its motion to dismiss. For the reasons discussed below and in the Foundation's motion, the Foundation should be dismissed from this case. First, Plaintiff cannot establish that this Court has personal jurisdiction over the Foundation. The Opposition's glancing mentions of the Foundation say nothing about the applicability of Rule 4(k)(2) and fail to provide any factual support justifying use of the Florida long-arm statute against this Saudi charitable organization. Nor does Plaintiff show that exercising jurisdiction would be consistent with the Due Process Clause. Second, the Opposition fails to rebut the Foundation's arguments that it is immune. Third, the Opposition does not respond to the Foundation's arguments that the Amended Complaint contains no factual allegations establishing intentional infliction of emotional distress (IIED) and civil conspiracy claims against the Foundation. Thus, the Court should dismiss the two claims against the Foundation.

## ARGUMENT

I. **PLAINTIFF HAS NOT ALLEGED A BASIS FOR PERSONAL JURISDICTION OVER THE MISK FOUNDATION.**

   A. **Plaintiff Has Not Addressed The Unavailability Of Rule 4(k)(2) Jurisdiction.**

The Opposition makes no effort to demonstrate how personal jurisdiction over the Foundation would be appropriate under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) applies only where a defendant is the subject of a federal law claim. Mot. 2–3. Because Plaintiff has brought only state law claims against the Foundation for IIED and civil conspiracy, Am. Compl. ¶¶ 269–74, 292–311, the Rule does not provide for jurisdiction over the Foundation. Fed. R. Civ. P. 4(k)(2); *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012).

Plaintiff does not respond to this argument. Opp'n 34–35. Instead, Plaintiff maintains that the Court has Rule 4(k)(2) jurisdiction over the "Foreign Defendants"—a term not used in the Amended Complaint and not defined in the Opposition despite Plaintiff's inclusion of a glossary— because she "pleads two causes of action under federal law" against them. Opp'n 34. To the extent the term "Foreign Defendants" includes the Foundation, this contention is not true. There are no federal law claims against the Foundation. Accordingly, there is no basis for Rule 4(k)(2) jurisdiction and the Court should treat this issue as conceded. *See, e.g.*, *Genterra Grp., LLC v.*

*Sanitas USA, Inc.*, 2021 WL 148887, at *7 (S.D. Fla. Jan. 15, 2021) ("Failing to respond to an argument in a motion to dismiss is equal to conceding that argument.").

### B. Plaintiff Cannot Rely On Al Qahtani's Contacts To Plead Jurisdiction Against The Foundation.

Plaintiff proffers only one other basis for personal jurisdiction over the Foundation: conspiracy jurisdiction under the Florida long-arm statute, Fla. Stat. Ann. § 48.193. Opp'n 27–30. As to the Foundation, Plaintiff's only argument in support of conspiracy jurisdiction relies on the alleged conduct of Defendant Saud Al Qahtani. *Id.* at 29. The Opposition offers no response to the following jurisdictional deficiencies identified by the Foundation's motion to dismiss:

- "[N]either the Foundation nor an agent for the Foundation is alleged to have had any contacts with Florida," Mot. 4;
- Plaintiff's alter ego theory cannot support jurisdiction, *id.* at 9–10;
- Plaintiff does not identify which of the four U.S. Defendants were recruited "through" the Foundation, *id.* at 8;
- The sole allegation of recruiting regarding Al Otaibi lacks factual support, *id.* at 7–8; and
- The generic allegations that the "Crown Prince, Al-Asaker and Al Qahtani" used the Foundation to recruit the U.S. Defendants are inconsistent with allegations that the Recruiting Defendants recruited the U.S. Defendants, *id*.

The Opposition also does not identify any conduct by the Foundation, whether in Florida or elsewhere, taken in support of the purported conspiracy. Accordingly, the Court should treat these points as conceded.

Instead, Plaintiff states that the "plausible allegations" establishing jurisdiction as to the Foundation under the Florida long-arm statute are as follows:

> <u>Al Qahtani and the MiSK Foundation</u>: Al Qahtani has had 1,691 interactions with Florida co-conspirator Van Rider and 186 interactions with Florida co-conspirator Jundi on Twitter. *Id.* ¶¶ 42, 51. He "has been instrumental in facilitating and overseeing hack and leak campaigns at the behest of" MBS. *Id.* ¶ 78. *His actions in furtherance of the Conspiracy were "through his position as a board member of the MiSK Foundation." Id. ¶ 83.*

Opp'n 29 (emphasis added). In other words, Plaintiff asserts that the Foundation has jurisdictional contacts in Florida by virtue of *Al Qahtani*'s board position at the Foundation and alleged

2

"recruiting" of others. *See* Am. Compl. ¶ 83 ("through his position as a board member of the MiSK Foundation, [Al Qahtani] also led the recruitment and establishment of the Network which was organized at the behest of Defendant MBS").

This theory confirms that the Florida long-arm statute is inapplicable. The Amended Complaint contains no factual allegations connecting Al Qahtani's actions to the Foundation. The eight-paragraph description of Al Qahtani has only one mention of the Foundation—the same allegation cited above that Al Qahtani "led" the recruiting of individuals "through his position as a board member" of the Foundation. Am. Compl. ¶¶ 77–84. That is insufficient to sustain personal jurisdiction.

Elsewhere, the Amended Complaint contains a few similar conclusory allegations—which the Opposition does not even rely on for personal jurisdiction. These allegations include that the Foundation is "a front for Defendants MBS, Al Qahtani, and Al-Asaker's objectives in creating a network," *id.* ¶ 94, and that "Defendants MBS, Al Qahtani, and Al-Asaker through their roles at MiSK recruited several of the named U.S. Defendants," *id.* ¶ 126. And with regard to other conduct Plaintiff alleges that Al Qahtani engaged in—such as procuring Pegasus software and managing a Twitter handle—none of that is alleged to have been undertaken "through" the Foundation. *See id.* ¶¶ 78, 84. The Opposition makes no mention of Plaintiff's allegations that Al Qahtani held other positions, including being the former "Chairman of the Saudi Federation for Cybersecurity Programming and Drones," and "General Supervisor of the Center for Studies and Media Affairs." *Id.* ¶ 77. In short, although the allegation that Al Qahtani's "recruiting" of individuals in 2018 was "through" the MiSK Foundation is a convenient one for personal jurisdiction, it is implausible and conclusory.

The factual allegations necessary to sustain personal jurisdiction over the Foundation are absent from the Amended Complaint. And so is the legal support for Plaintiff's approach. The Amended Complaint and Opposition do not explain why this Court may impute Al Qahtani's alleged conduct to the Foundation.[1] The Opposition does not argue that the Foundation is vicariously liable for the acts of Al Qahtani; or that Al Qahtani is an agent or alter ego of the

---

[1] Because Plaintiff has premised personal jurisdiction as to the Foundation on the alleged connections between Al Qahtani and Florida, the Court should find that it lacks personal jurisdiction over the Foundation if it finds that Plaintiff has not adequately pleaded personal jurisdiction as to Al Qahtani.

3

Foundation. These theories are also absent from the Amended Complaint. Plaintiff makes no argument about why the "plausible allegation" she cited (Opp'n 29) establishes jurisdiction over the Foundation.

Even assuming Plaintiff had developed some argument on this issue, it would fail. The District Court's decision in *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301 (S.D. Fla. 2017), which addressed an analogous jurisdictional issue, is instructive. The *GolTV* plaintiffs alleged a scheme against the defendants, including the South American soccer confederation Conmebol, related to the payment of bribes. *Id.* at 1308–10. As to Conmebol, like the MiSK Foundation, the plaintiffs did not allege any contacts between Conmebol and Florida. *Id.* at 1314. Instead, the plaintiffs argued that they could attribute to Conmebol the acts of high-ranking Conmebol officials in Florida based on an agency and conspiracy theory under Florida's long-arm statute. *Id.* The plaintiffs argued that these officials allegedly engaged in transactions in Florida in connection with accepting bribe payments. *Id.* at 1313. The District Court explained that "Conmebol's liability for the tortious actions of its agents, and therefore its ability to be subjected to specific personal jurisdiction for their acts, depends on whether the agents acted with apparent authority." *Id.* at 1314. "Apparent authority" was adequately alleged if Conmebol "allow[ed] or cause[d] others to believe the agent possesses . . . authority" to act for Conmebol in accepting bribes. *Id.* (citation omitted).

The District Court declined to exercise jurisdiction over Conmebol. It concluded that Conmebol's agents "were not authorized, and could not have been held out by Conmebol as authorized, to self-deal." *Id.* Since the "agents with apparent authority [were] acting contrary to the interests of their principal," a reasonable person was on notice to inquire as to the authority of the agent and could not believe "the agent possessed apparent authority." *Id.* at 1315. Thus, the court concluded—as this Court should with respect to the acts of Al Qahtani and the Foundation— that "the alleged tortious acts of Conmebol's agents cannot serve as a jurisdictional hook for Conmebol." *Id.* The District Court also rejected the plaintiffs' conspiracy jurisdiction theory. It held that the acts of the alleged co-conspirator officials could not be attributed to Conmebol even though the plaintiffs may have adequately pleaded the elements of conspiracy. *Id.* The District Court noted that the *GolTV* plaintiffs—like Plaintiff here with respect to the Foundation—did not "allege[] how Conmebol itself, separate from the acts of its officials, participated in the alleged conspiracy." *Id.*

4

*GolTV* and the apparent authority doctrine—which the Opposition did not discuss—demonstrate why Plaintiff's jurisdictional theory fails. Plaintiff has not identified any facts, nor are there any in the Amended Complaint, giving rise to Al Qahtani's "apparent authority" with respect to the Foundation. *See Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296, 298 (Fla. Dist. Ct. App. 2000) (apparent authority requires alleging "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation"). Other than the allegation that Al Qahtani was a board member of the Foundation during some unspecified time period, Am. Compl. ¶¶ 83, 94, there are no allegations about his position with the Foundation. The Amended Complaint has no allegations about the responsibilities or authority of board members. Plaintiff did not allege that the Foundation held out Al Qahtani as having authority for the Foundation, or that Al Qahtani had the right to engage in any business or bind the Foundation. There are no allegations that the relevant third parties—individuals supposedly "recruited" through Al Qahtani's board position—relied on any representation that Al Qahtani was working on behalf of the Foundation or that these "recruited" individuals were induced to participate in the Network because of that representation. In short, the allegation that Al Qahtani acted "through" his board position is not sufficient to allege that he had apparent or actual authority to act for the Foundation. *See Ideal Foods, Inc. v. Action Leasing Corp.*, 413 So. 2d 416, 417 (Fla. Dist. Ct. App. 1982) (holding that a secretary-treasurer had neither inherent authority nor apparent authority to bind the corporation in dealings with third parties); *State v. Justice*, 624 So. 2d 402, 405 (Fla. Dist. Ct. App. 1993) (finding that majority of a board of directors had "apparent authority" to vote to permit police search of organization's offices where board had authority to inspect records, believed they had the authority to grant permission to the police, and police believed that board had such authority).

Thus, the Court should find that Plaintiff has not established Florida long-arm jurisdiction over the Foundation.

### C. Permitting This Suit Against A Saudi Charitable Organization To Proceed In Florida Would Violate Due Process.

The Opposition also fails to support jurisdiction under the Due Process Clause. The first due process prong requires either a causal or "strong" relationship between the Foundation, Florida, and Plaintiff's claims. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026–28 (2021). The Opposition argues that a "direct causal relationship" exists

5

between Florida and the "Defendants." Opp'n 31. But the Opposition does not satisfy this requirement as to the Foundation. The sole mention of the Foundation is that "Al Qahtani (a Misk Foundation board member)" and others "all personally interacted with their Florida co-conspirators." *Id.* There is no basis to attribute Al Qahtani's acts to the Foundation, nor are there any allegations that the Foundation "personally" interacted with Jundi and Van Rider or had any contacts in Florida. *See supra* § I.B. Because Plaintiff has no other explanation as to how there is a "direct causal relationship" between the Foundation, Florida, and this case, her due process argument fails.

Plaintiff's attempt to satisfy the purposeful availment prong fares no better. The Opposition's discussion of this requirement does not mention the Foundation. It argues that "the Foreign Defendants actively sought the participation of Florida residents in their scheme, either directly or through other Defendants," citing paragraphs 204 and 216 of the Amended Complaint. Opp'n 31–32. Neither paragraph mentions the Foundation. The Opposition acknowledges that there are no allegations—conclusory or otherwise—suggesting that the Foundation "purposefully availed [it]self of the privileges of doing business" in Florida. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013).

The final due process prong examines whether it would offend traditional notions of fair play and substantial justice to hale this Saudi charitable foundation into a Florida court. Again, the Opposition offers no specific response to the MiSK Foundation's arguments. Nothing in the Opposition disputes that it would be a "significant" burden for the Foundation to litigate in Florida. Mot. 13. Nor does the Opposition disagree that "the Foundation is not alleged to have played any role in the tweets posted by [the Florida Defendants], and is not alleged to have played a role in any part of the hacking of Plaintiff's phone or dissemination of information about Plaintiff." *Id.* Plaintiff asserts that the Crown Prince would be "able to easily navigate the American legal system," Opp'n 33, but says nothing about the Foundation. The Foundation also adopts and incorporates by reference the arguments in the brief for Bader Al-Asaker regarding the substantial-justice prong. *See* Al-Asaker Reply Br. § I.A.2.

Accordingly, exercising jurisdiction over the Foundation would violate due process.

## II.   PLAINTIFF'S IMMUNITY ARGUMENTS FAIL.

The Opposition confirms the Foundation's immunity. It argues—just as the Amended Complaint alleged—that the Foundation operated as an "alter ego" for the Crown Prince of Saudi

6

Arabia. Opp'n 46; *see* Am. Compl. ¶¶ 95, 133, 137. These arguments and allegations (although conclusory) show that the Foundation acted in an official capacity.

The Opposition also fails to establish that "corporations are not entitled to common-law conduct-based immunity." Opp'n 24–25. Plaintiff cites no case holding that corporations cannot obtain common-law immunity. And the recent D.C. Circuit decision relied on by the Opposition supports the Foundation's position. *See Broidy Capital Mgm't v. Muzin*, 12 F.4th 789 (D.C. Cir. 2021). *Broidy* explained that "the FSIA applies only to states and their 'agenc[ies] or instrumentalit[ies],' excluding *private entities* or individuals," and, as a result, the "residual law and practice that the FSIA did not displace" applies. *Id.* at 802 (emphasis added) (citation omitted). Indeed, in *Broidy*, the court did not distinguish between the individual defendants and the corporate defendant in reaching its immunity decision. Accordingly, the Foundation can obtain common-law immunity.

The Foundation also adopts and incorporates by reference the arguments made in the Al Menaia Brief that if the Court grants immunity to the Crown Prince, the Foundation is entitled to derivative immunity as an alleged agent of the Crown Prince. *See* Al Menaia Reply Br. § IV.B. The Foundation also adopts and incorporates by reference the arguments in the Crown Prince's Reply Brief at pages 5 through 7.

**III. PLAINTIFF HAS NOT IDENTIFIED ANY BASIS FOR THE IIED AND CIVIL CONSPIRACY CLAIMS AGAINST THE MISK FOUNDATION.**

**A. The Opposition Does Not Rebut The Foundation's IIED Arguments.**

The Foundation's motion to dismiss pointed out three fatal pleading deficiencies in the IIED claim. First, the IIED claim did not mention the Foundation specifically, and thus did not inform the Foundation about what "outrageous conduct" it supposedly undertook or how it caused emotional distress. *See* Am. Compl. ¶¶ 269–74; Mot. 15. Second, the Amended Complaint premised the IIED claim on the "intentional access" of Plaintiff's mobile device but did not allege that any of the conduct underlying the IIED claim was undertaken by the Foundation. Mot. 15–16. Third, Plaintiff failed to allege "severe emotional distress." *Id.* at 16–17.

The Opposition does not address the Foundation's first two arguments. It does not identify any allegation or conduct involving the Foundation that supports the IIED claim. Opp'n 45–46. It does not explain how the Foundation participated in the hacking of Plaintiff's mobile device. *Id.* Nor does it dispute that the IIED claim failed to mention the Foundation specifically. Instead, the

Opposition argues that the Foundation is liable for IIED because it is an "alter ego and mere instrumentality of MBS, specifically employed to execute schemes in the United States, including the campaign intended at promoting disinformation and attacking MBS's critics, such as Ms. Oueiss." Opp'n 46 (citing Am. Compl. ¶¶ 133–40).

That argument fails. Plaintiff excluded her alter ego allegations in paragraphs 133–40 of the Amended Complaint from the IIED claim. *See* Am. Compl. ¶¶ 269–74. Plaintiff only "incorporate[d] and adopt[ed] by reference all the allegations contained in Paragraphs 1 through 5, 35 through 132, and 156 through 248." *Id.* ¶ 269. Having excluded the alter ego allegations from the IIED claim, Plaintiff cannot now claim that the Foundation's IIED liability is premised on those exact allegations. *See Am. Axess Inc. v. Ochoa*, 2018 WL 2197693, at *2 (M.D. Fla. May 14, 2018) (holding that where "allegations . . . were not incorporated into Count VIII," plaintiff "cannot rely upon them to satisfy Rule 8"); *Hernandez v. Oliphant Fin., LLC*, 2021 WL 3602808, at *5 (M.D. Fla. Aug. 13, 2021) (similar). Moreover, the other allegations in the IIED cause of action (Am. Compl. ¶¶ 270–74) say nothing about the Foundation or alter ego liability.

Even if the alter ego theory were available, Plaintiff has not adequately alleged that the Foundation is the "alter ego" of the Crown Prince. *See* Mot. 9–10. The Opposition does not respond to the Foundation's arguments or attempt to show that Plaintiff has adequately alleged an alter ego theory for the Foundation. *See* Opp'n 46. The Court should treat as conceded the Foundation's argument that the alter ego allegations are deficient. *See Genterra*, 2021 WL 148887, at *7.

With regard to the third deficiency in the IIED claim, Plaintiff asserts that she has made "specific allegations concerning mental suffering," and cites the "specific allegation" that she is afraid to travel to Florida to visit her family. Opp'n 47. This alleged fear of visiting Florida is insufficient to sustain the IIED claim. As one Florida court explained, "significant feelings of fright, shame, worry, and humiliation—and others besides—occasioned by the acts of others are, even if regrettable, an unavoidable part of living in society. They are experienced by all of us." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1306 (Fla. Dist. Ct. App. 2018) (reversing trial judgment on IIED claim). Florida law requires more. "Severe emotional distress" means "emotional distress of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it." *Id.* at 1305 (citation omitted).

Plaintiff's allegation that she is afraid to visit family in Florida does not meet that standard. The Amended Complaint does not provide any additional detail regarding the nature of her fear.

8

For example, Plaintiff did not allege that this fear caused her psychological or physical problems or led her to seek medical attention. She also did not allege any context concerning her relationship with her family in Florida, such as how frequently she visited them in the past and why it would cause her severe emotional distress not to visit them now. Notably, Plaintiff identifies only one prior visit to Florida to see family—in 2014. Am. Compl. ¶¶ 36, 245. She does not allege that she visited Florida in the *five* years between 2014 and the instant conduct, further belying her argument that the Court should find this generalized fear as meeting the high bar for "severe emotional distress" under Florida law. The Amended Complaint's deficiencies are only further supported by the two cases Plaintiff cites. *See Rincon v. Miami-Dade Cty.*, 2020 WL 7344633, at *11 (S.D. Fla. Mar. 31, 2020) (dismissing IIED claims where allegations that plaintiffs "experienced and continue to experience severe emotional distress" and "severe physical, mental and emotional injuries, and loss of enjoyment of life" did not adequately plead "severe emotional distress") (citation omitted); *Bickel v. City of Coral Springs*, 2017 WL 3336722, at *3 (S.D. Fla. Aug. 4, 2017) (denying motion to dismiss where amended complaint included factual, non-conclusory details that plaintiff suffered " 'great embarrassment and extreme shame;' . . . 'is now and will continue to be grief stricken;' . . . 'developed an acute fright and paranoia when he sees the police,' and . . . suffers and 'will continue to suffer from nightmares and daily extreme anxiety'"). The IIED claim should be dismissed.

### B. The Opposition Does Not Identify Any Allegations Connecting The Foundation To The Civil Conspiracy Claim.

The Opposition offers no real rebuttal to the absence of factual allegations regarding the Foundation's involvement in the "hack and leak" conspiracy. *See* Mot. 5–9; *see also supra* § I.B. The Opposition (at 54–58) cannot come up with a single allegation supporting the Foundation's participation in the conspiracy. For example, the Opposition purports to list "[e]ach of the Defendants' overt acts," organizing them by defendant. Opp'n 55. But the Opposition fails to include the Foundation in that list. *See id.* Similarly, Plaintiff's recitation of the "strong circumstantial evidence of the Conspiracy," also fails to mention the Foundation. *Id.* at 55–59.

The failure to identify any involvement by the Foundation in this discussion confirms the absence of facts pleading the Foundation's involvement in a conspiracy. This is not merely a situation where Plaintiff has failed to plead the terms, timing, and benefit of the conspiracy, *see Id.* at 57. Rather, Plaintiff has failed to plead the necessary facts to establish that this Saudi

9

charitable organization was a participant in the conspiracy to hack and disseminate information from Plaintiff's cellphone.

The Foundation also adopts and incorporates by reference the arguments by Mr. Al-Asaker that Plaintiff has failed to plead an alternative "peculiar power of coercion" civil conspiracy theory. *See* Al-Asaker Reply Br. § III.E. Not only are there no facts connecting the Foundation to that theory, *see supra*, but that alternative theory also has no applicability here.

The civil conspiracy count against the Foundation must be dismissed.

## IV. THE COURT SHOULD DENY PLAINTIFF'S RENEWED REQUEST FOR JURISDICTIONAL DISCOVERY.

Plaintiff buries a renewed request for jurisdictional discovery in a footnote in her Opposition. Opp'n 36 n.9. The Court should deny that request, which is not made in a motion for jurisdictional discovery. As this Court has explained, such a "request is procedurally improper." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (Moore, J.); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2000) (denying jurisdictional discovery where plaintiff "never formally moved the district court for jurisdictional discovery, but, instead, buried such requests in its briefs as a proposed alternative to dismissing defendant on the state of the current record").

Plaintiff does not identify any new reason for the Court to grant jurisdictional discovery in this case. *See* ECF No. 130 (Order, Apr. 5, 2021). Nor is there any. Courts permit jurisdictional discovery "to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction." *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 2021 WL 3054908, at *3 (S.D. Fla. July 20, 2021), *appeal filed* (Aug. 18, 2021). But they deny such discovery where a plaintiff seeks to use it as "a vehicle for a 'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." *Id.* Because Plaintiff's "amended complaint did not allege any facts supporting personal jurisdiction," there is no basis for jurisdictional discovery. *See id.*; *Thompson*, 174 F. Supp. 3d at 1339 (holding that plaintiff was *"*foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he should have had—but did not— before coming through the courthouse doors" (citation omitted)).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the claims against the Foundation.

Dated: October 14, 2021          Respectfully submitted,

/s/ *Justin R. Cochran*
Justin R. Cochran, Esq.
Fla. Bar No. 110342
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard
Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
jcochran@zuckerman.com

William W. Taylor, III, Esq. (*pro hac vice*)
Ivano M. Ventresca, Esq. (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
iventresca@zuckerman.com

*Attorneys for Defendant the Prince Mohammed Bin Salman Abdulaziz Foundation*