**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 20-CV-25022-KMM**

GHADA OUEISS,

     Plaintiff,

v.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,

     Defendants.

_____ /

**BADER AL-ASAKER'S**
**REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.  THE COURT LACKS PERSONAL JURISDICTION OVER MR. AL-ASAKER ................................................................................................................... 2

    A.  Plaintiff's Florida Long-Arm Conspiracy Jurisdiction Theory Fails ..................... 2

        1.  The Opposition Ignores Mr. Al-Asaker's Motion To Dismiss And Identifies No Facts Supporting Conspiracy Jurisdiction. .......................... 2

        2.  The Conspiracy Jurisdiction Theory Violates Due Process ....................... 4

    B.  Plaintiff's Rule 4(k)(2) Jurisdiction Theory Fails ............................................... 6

    C.  Plaintiff's Renewed Request For Jurisdictional Discovery Should Be Denied. ................................................................................................................ 7

II.  THE OPPOSITION DOES NOT REBUT MR. AL-ASAKER'S IMMUNITY ARGUMENTS ........................................................................................................ 7

III.  THE COURT SHOULD DISMISS ALL THE CLAIMS UNDER RULE 12(B)(6) .............................................................................................................. 7

    A.  The Opposition Does Not Establish The Existence Of An ATS Claim. ............... 7

    B.  The CFAA Claim Is Based On Conclusory Allegations. ...................................... 8

    C.  The IIED Claim Is Based On Conclusory Allegations. ........................................ 9

    D.  The Intrusion Claim Is Based On Conclusory Allegations .................................. 9

    E.  The Civil Conspiracy Claim Is Based On Conclusory Allegations ...................... 9

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009) ...................................................................... 3, 6, 8

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773 (2017) ................................................................................ 4

*Carruth v. Bentley,*
  942 F.3d 1047 (11th Cir. 2019) ................................................................... 3

*Churruca v. Miami Jai-Alai, Inc.,*
  353 So. 2d 547 (Fla. 1977) ........................................................................ 10

*Espana Informatica, S.A. v. Top Cargo, Inc.,*
  2008 WL 11331683 (S.D. Fla. Apr. 28, 2008) ......................................... 10

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,*
  141 S. Ct. 1017 (2021) ............................................................................. 4–5

*GolTV, Inc. v. Fox Sports Latin Am. Ltd.,*
  277 F. Supp. 3d 1301 (S.D. Fla. 2017) ................................................. 2–3, 4

*Grayson v. No Labels, Inc.,*
  2021 WL 2869870 (M.D. Fla. Jan. 26, 2021) ........................................... 10

*International Underwriters AG & Liberty Re-insurance Corp., S.A. v. Triple I: Int'l Invs., Inc.,*
  2007 WL 9701852 (S.D. Fla. May 30, 2007) .............................................. 6

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.,*
  2016 WL 11501768 (S.D. Fla. Sept. 14, 2016) ........................................... 4

*Martin v. Marlin,*
  529 So. 2d 1174 (Fla. Dist. Ct. App. 1988) ............................................. 10

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
  558 F.3d 1210 (11th Cir. 2009) ................................................................... 6

*Parisi v. Kingston,*
  314 So. 3d 656 (Fla. Dist. Ct. App. 2021) ................................................. 4

*Thompson v. Carnival Corp.,*
  174 F. Supp. 3d 1327 (S.D. Fla. 2016) ....................................................... 7

*Walden v. Fiore,*
  571 U.S. 277 (2014) ...................................................................................... 5

*Westley v. Alberto*,
    703 F. App'x 727 (11th Cir. 2017) ............................................................................................ 3

## INTRODUCTION

Defendant Bader Al-Asaker submits this Reply to the Opposition to his Motion to Dismiss the Amended Complaint. The Opposition does not respond to the legal arguments in the motion to dismiss nor change the fatal insufficiency of the Amended Complaint. It asks the Court to substitute its expansive "Factual Narrative" for the text of the Amended Complaint, as if the language in the pleading were irrelevant to its sufficiency.

The "Factual Narrative" in Plaintiff's Opposition confirms that none of the Amended Complaint's allegations about the three stages in Plaintiff's purported conspiracy—recruiting, hacking, and dissemination—contained any accusations against Mr. Al-Asaker. Mot. 6–10.[1] Despite claiming that "forensic evidence," "publicly available communications" among the Defendants, and "the social media history" and "attacks on social media" of the Defendants establish their involvement in this conspiracy, Opp'n 2, Plaintiff identifies *no* forensic data connecting the hack of Plaintiff's mobile device to Mr. Al-Asaker (*id.* at 6–7), *no* communications between Mr. Al-Asaker and any other Defendant (*id.* at 11–12), and *no* social media from Mr. Al-Asaker (*id.* at 12–16). As for the "pre-existing relationships" alleged in support of the conspiracy, Plaintiff proffers only that Mr. Al-Asaker was the Secretary General of a Saudi charitable organization and head of the Private Office of the Crown Prince of the Kingdom of Saudi Arabia. *Id.* at 2, 5.

The legal arguments in the Opposition mirror these deficiencies. First, the Opposition does not identify factual allegations giving rise to conspiracy jurisdiction over Mr. Al-Asaker or permitting the rare use of Rule 4(k)(2) jurisdiction. Moreover, both forms of jurisdiction would conflict with the Due Process Clause. Given these deficiencies, there is no basis for Plaintiff's renewed request for jurisdictional discovery. Second, the Opposition fails to rebut Mr. Al-Asaker's arguments that he is immune given Plaintiff's framing of her claims. Third, the Opposition does not identify non-conclusory allegations supporting the federal law and common-law claims against

---

[1] The Opposition makes multiple misstatements reflecting Plaintiff's strained attempt to fit Mr. Al-Asaker into this case. The "Citation Conventions" section of the Opposition misidentifies Mr. Al-Asaker as a "Recruiting Defendant[]." Opp'n i. But the Amended Complaint does not identify him as part of that group and neither does the remainder of the Opposition. *See, e.g.*, Opp'n 10. The Opposition also identifies Mr. Al-Asaker as a purported "Leader of the Conspiracy" (at 5), but does not include Mr. Al-Asaker as a "Leader" in the Citation Conventions section (at ii). These conflicted and unsupported groupings demonstrate that Mr. Al-Asaker does not belong in this case.

Mr. Al-Asaker. Nor can the Opposition demonstrate that the key claim against the Defendants—the Alien Tort Statute claim—has any basis in the law. The Amended Complaint should be dismissed.

**ARGUMENT**

**I.      THE COURT LACKS PERSONAL JURISDICTION OVER MR. AL-ASAKER.**

Neither of the Opposition's two jurisdictional theories provides a basis for personal jurisdiction over Mr. Al-Asaker. Plaintiff's conspiracy theory under the Florida long-arm statute fails because Mr. Al-Asaker has no contacts with Florida, and there are no facts connecting him with any Florida defendant. Plaintiff's Rule 4(k)(2) argument fails because there are no facts which if true establish a relationship between Mr. Al-Asaker, the United States, and this case. And although Plaintiff renews her request for jurisdictional discovery in a footnote, nothing in the Opposition justifies it.

**A.      Plaintiff's Florida Long-Arm Conspiracy Jurisdiction Theory Fails.**

**1.      The Opposition Ignores Mr. Al-Asaker's Motion To Dismiss And Identifies No Facts Supporting Conspiracy Jurisdiction.**

According to the Opposition, personal jurisdiction is appropriate because "the USA Defendants each 'committed a tortious act within this state' while part of the Conspiracy with the Foreign Defendants." Opp'n 28. The Opposition does not, however, respond to the deficiencies Mr. Al-Asaker's motion addresses regarding conspiracy jurisdiction, including that:

- Plaintiff's group pleading against Mr. Al-Asaker is improper (Mot. 6);
- "Plaintiff does not allege a *single* connection between Mr. Al-Asaker and Defendants Van Rider, Schey, Jundi, and Smith, much less any facts about their recruitment" (*id.* at 7);
- Mr. Al-Asaker never visited Florida, conducted business in Florida, or communicated with anyone in Florida (whether about this case or otherwise) (*id.* at 11);
- Plaintiff does not allege that Mr. Al-Asaker "knew who Plaintiff was" (*id.* at 8); and
- "[T]he Amended Complaint contains no allegation that Mr. Al-Asaker created or used any of the social media accounts identified in the Amended Complaint or directed anyone to disseminate information about Plaintiff" (*id.* at 10).

All these points are conceded. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a

2

responsive brief, such argument or claim can be deemed abandoned.").

The Opposition claims to identify the "plausible allegations" that support jurisdiction over Mr. Al-Asaker. In doing so, the Opposition relies on only three allegations concerning Mr. Al-Asaker. First, that "Van Rider and Jundi, while present in Florida, acted at the behest of Defendants MBS, Al Qahtani and Al-Asaker (among others) in posting stolen photographs of, and defamatory narratives about, Ms. Oueiss on Twitter." Opp'n 29 (citing Am. Compl. ¶ 129).[2] Second, that Mr. Al-Asaker "is the head of MBS's Private Office." *Id.* Third, that he "has been implicated in illicitly using Twitter in connection with that title previously." *Id.* Those allegations cannot support jurisdiction.[3]

The allegation that Van Rider and Jundi "acted at the behest" of Mr. Al-Asaker and "others" is a textbook conclusory allegation that the Court should disregard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680–01 (2009). Plaintiff failed to allege any communications or contacts between Mr. Al-Asaker and Van Rider and Jundi. *See* Mot. 6–7. Plaintiff does not even allege any Twitter interactions between them. Plaintiff also fails to grapple with Eleventh Circuit precedent emphasizing that allegations like this one are conclusory. *See Carruth v. Bentley*, 942 F.3d 1047, 1056-57 (11th Cir. 2019) (holding that "allegation that [an individual] was acting at the direction of [the defendants]" in firing the plaintiff was "conclusory" and "must be disregarded under *Iqbal*"); Mot. 8–11.

This allegation is also insufficient because Plaintiff does not distinguish what act Mr. Al-Asaker took, as opposed to "others." *See* Mot. 6. The Opposition's reliance on the group pleading that predominates the allegations against Mr. Al-Asaker fails to identify a specific act by Mr. Al-Asaker. *See Westley v. Alberto*, 703 F. App'x 727, 732 (11th Cir. 2017) (dismissing conspiracy claim where plaintiff alleged "that a number of defendants conspired to sell a piece of real property

---

[2] Plaintiff states that these allegations are merely "examples" of her non-conclusory allegations and asks the Court to "*see generally*" the entire Amended Complaint. *See* Opp'n 28 n.6. The Court should decline Plaintiff's invitation to peruse the Amended Complaint for additional factual allegations that support her jurisdictional theory as to Mr. Al-Asaker. It is Plaintiff's responsibility to identify these allegations. And there are none.

[3] Plaintiff claims that the Court has personal jurisdiction over *DarkMatter* because it worked "in concert" with Mr. Al-Asaker, Al-Qahtani, and the Crown Prince. Opp'n 29. That conclusory allegation distorts the Amended Complaint. The Amended Complaint does not allege that Mr. Al-Asaker had any involvement with the alleged hacking by DarkMatter of Plaintiff's cellphone in April 2020. *See* Am. Compl. ¶¶ 167–71, 264 (allegations regarding DarkMatter's role in the April 2020 hacking).

to another defendant 'through unlawful publically corrupt acts, bribes and influence peddling,' again without identifying any specific acts by any defendant").

The assertion that Mr. Al-Asaker is the head of the Private Office "and has been implicated in illicitly using Twitter," Opp'n 29, is irrelevant to jurisdiction. That a defendant "has been implicated" in a case in California (*United States v. Abouammo*, No. 3:19-cr-621 (N.D. Cal.)) is an almost frivolous basis to claim jurisdiction over him in Florida. Whatever the "implications," they do not relate to acts by Mr. Al-Asaker in Florida. Nor do they make up for the conspicuous absence of any fact connecting Mr. Al-Asaker to a conspiracy in Florida in this case. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) (defendant's similar conduct in forum state insufficient for jurisdiction over nonresidents); *GolTV*, 277 F. Supp. 3d at 1317–18 (declining to find personal jurisdiction based on indictment concerning the issues in the case even where it "identif[ied] fraudulent activity conducted by the Jinkises on behalf of Full Play" because "this activity is either unrelated to the tortious activity Plaintiffs complain of . . . or the activity lacks contacts with Florida").

As to Mr. Al-Asaker's employment, the Opposition never explains why being the head of the Crown Prince's Private Office is a factual allegation establishing jurisdiction in Florida. The Opposition never explains the nature of Mr. Al-Asaker's duties, and it cites no allegation connecting those unidentified duties to this case.

For these reasons, the Court should find that Plaintiff has not sufficiently pleaded a civil conspiracy giving rise to jurisdiction in Florida. *See Parisi v. Kingston*, 314 So. 3d 656, 662–63 (Fla. Dist. Ct. App. 2021) (claim of conspiracy jurisdiction is "deficient" where "it fails to allege, with any specificity, any facts evidencing how [one defendant] conspired with [the others]"); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016) (dismissing conspiracy-jurisdiction argument where "the Complaint offers only the conclusory statement that Pliteq gave 'specific instructions to [U]RB to mislabel the products'" and that the other party complied with those instructions, "without any reference to what the statements were, who made them, or when they were made").

## 2.    The Conspiracy Jurisdiction Theory Violates Due Process.

Plaintiff's due process arguments fare no better than her statutory ones. According to Plaintiff, there is a " 'direct causal relationship' between Florida and the Defendants," and, therefore, her claim satisfies the relationship inquiry. *See Ford Motor Co. v. Mont. Eighth Judicial*

*Dist. Court*, 141 S. Ct. 1017, 1028 (2021) (requiring a "strong 'relationship among the defendant, the forum, and the litigation'" (citation omitted)). But Plaintiff fails to make this required showing as to Mr. Al-Asaker. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) (explaining that personal jurisdiction requirements "must be met as to each defendant").

The Opposition argues only that "Defendants MBS, Al Qahtani [and] Al-Asaker . . . intended to recruit members to the Network who were from major U.S. cities such as Miami, Florida to disseminate disinformation." Opp'n 31 (quoting Am. Compl. ¶ 208) (ellipsis in original).[4] This argument reveals the fatal problem with the claims against Mr. Al-Asaker. The Amended Complaint provides no factual allegations that Mr. Al-Asaker recruited Jundi and Van Rider (or anyone else). There are no factual allegations showing that Mr. Al-Asaker "intended" to recruit individuals from Miami (or any other major city). And all of these allegations relate to the establishment of the amorphous "Network" in *2018*, which predated the scheme against Plaintiff that was "hatched" in September 2019. Mot. 7. Moreover, Plaintiff fails to respond to the argument that she alleged that it was the Recruiting Defendants, not Mr. Al-Asaker, who recruited Jundi, Van Rider, and the other U.S. Defendants. *See id.* (citing Am. Compl. ¶ 300). And although Plaintiff alleged, in conclusory fashion, that Mr. Al-Asaker and the Crown Prince recruited Al Otaibi, Am. Compl. ¶ 114, Plaintiff does not rely on that allegation in support of personal jurisdiction over Mr. Al-Asaker—nor could she, given the weakness of that theory. *See* Mot. 7. Accordingly, Plaintiff's recruiting argument does not establish the necessary relationship between Florida, the litigation, and Mr. Al-Asaker.

On purposeful availment, Plaintiff again does not make any specific argument regarding Mr. Al-Asaker. Opp'n 31–32. Instead, she contends that "the Foreign Defendants actively sought the participation of Florida residents in their scheme, either directly or through other Defendants, and knowingly helped disseminate misinformation throughout Florida." *Id.* (citing Am. Compl. ¶¶ 204, 216). The paragraphs cited by Plaintiff say nothing factual about Mr. Al-Asaker. They state that Defendants Van Rider and Jundi were "instructed by the Recruiting Defendants . . . , operating under the directed strategy of Defendants MBS, Al Qahtani and Al-Asaker, to personally

---

[4] Plaintiff's ellipsis hides that she has left out an entire group of Defendants from the statement as alleged in the Amended Complaint. Paragraph 208 groups "Defendants MBS, Al Qahtani, Al-Asaker, *and the Recruiting Defendants*" together. This allegation is one of the many improper group-pleading allegations in the Amended Complaint, and Plaintiff cannot correct those flaws through ellipses in her Opposition.

attack Ms. Oueiss on Twitter." Am. Compl. ¶ 204; *see also id.* ¶ 216. These two group-pleading allegations are as conclusory as those in *Iqbal*, 556 U.S. at 680–01 (rejecting allegations that defendants were "principal architect" and "instrumental" in adopting and implementing a policy).

On the final due process prong, Plaintiff offers no specific responses to Mr. Al-Asaker's arguments that haling him into a Florida court would violate traditional notions of fair play and substantial justice. She contends only that the Crown Prince—not Mr. Al-Asaker—would be "able to easily navigate the American legal system." *But see* Crown Prince Reply Br. § I.B. Plaintiff's reliance on a footnote in *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 n.18 (11th Cir. 2009) is also unavailing. Opp'n 33 (citing *Oldfield* for the proposition that Defendants have "failed to identify any other [forum] where it would be amenable to suit"). That footnote has nothing to do with the substantial-justice inquiry. The court was summarizing the district court's Rule 4(k)(2) decision, noting that the defendant had not identified another forum in which it was subject to jurisdiction for purposes of that Rule. Plaintiff also cites *International Underwriters AG & Liberty Re-insurance Corp., S.A. v. Triple I: Int'l Invs., Inc.*, 2007 WL 9701852 (S.D. Fla. May 30, 2007), as supporting Florida's interest here, but that case did not involve jurisdiction over an international defendant. Accordingly, nothing in the Opposition rebuts Mr. Al-Asaker's showing that exercising personal jurisdiction over him would offend notions of fair play and substantial justice.

## B.    Plaintiff's Rule 4(k)(2) Jurisdiction Theory Fails.

The Opposition's Rule 4(k)(2) argument reiterates the same arguments it marshals in support of jurisdiction under Florida law. Opp'n 34. It therefore fails for the same reasons discussed in section I.A.

In addition, the Opposition attempts to create Rule 4(k)(2) jurisdiction using allegations that do not concern this case or Mr. Al-Asaker, invoking Jamal Khashoggi and Jeff Bezos. *See id.* at 34–35. The Khashoggi and Bezos allegations do not implicate Mr. Al-Asaker. Am. Compl. ¶¶ 6–14, 25, 30, 65, 70–75, 144–45. Similarly, Plaintiff alleges that there is a sufficient connection to the United States because the non-Florida U.S. Defendants acted at the "behest" of Mr. Al-Asaker (and the Crown Prince and Al Qahtani). Opp'n 35. But Plaintiff has not alleged any factual connection between Mr. Al-Asaker and any of the four U.S. Defendants. *See supra* § I.A; Mot. 7. Plaintiff cannot justify the rare use of Rule 4(k)(2) jurisdiction with these irrelevant and inadequate allegations.

C.     **Plaintiff's Renewed Request For Jurisdictional Discovery Should Be Denied.**

In a footnote, Plaintiff again asks for jurisdictional discovery. Opp'n 36 n.9. Mr. Al-Asaker adopts and incorporates by reference the arguments in the MiSK Foundation brief explaining why the Court should reject this argument. MiSK Reply Br. § IV. And as to Mr. Al-Asaker, Plaintiff has not identified any relevant factual allegations connecting him to Florida or the United States that could support jurisdictional discovery. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (Moore, J.) (holding that plaintiff was "foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he should have had—but did not—before coming through the courthouse doors" (citation omitted)).

## II.     THE OPPOSITION DOES NOT REBUT MR. AL-ASAKER'S IMMUNITY ARGUMENTS.

The Opposition does not dispute that Mr. Al-Asaker is a Saudi government official. It nonetheless contends that he is not immune because he did not act in his official capacity. To the contrary, the Opposition and Amended Complaint demonstrate that the allegations (although conclusory) involve official-capacity conduct. Indeed, the Opposition relies on Mr. Al-Asaker's government role as support for his purported participation in the conspiracy. Opp'n 29, 41. The Amended Complaint alleges (in conclusory fashion) that Mr. Al-Asaker was "directed" by or was the "agent" of the Crown Prince of Saudi Arabia. Am. Compl. ¶¶ 86, 88. Furthermore, Mr. Al-Asaker's motion to dismiss detailed the allegations involving government conduct, to which Plaintiff has no rebuttal. *See* Mot. 17–18 (citing Am. Compl. ¶¶ 144, 160, 165). Although Plaintiff contends that she is not seeking to enforce a rule of law against Saudi Arabia (Opp'n 23–24), her claim for relief asks for relief not just against the Defendants, but their "employees" and "agents," which would include government officials. Mr. Al-Asaker also adopts and incorporates by reference the arguments in the Crown Prince's Reply Brief at pages 5 through 7. Mr. Al-Asaker also adopts and incorporates by reference the argument that he is entitled to derivative immunity as an alleged agent of the Crown Prince. Al Menaia Reply Br. § IV.B.

## III.     THE COURT SHOULD DISMISS ALL THE CLAIMS UNDER RULE 12(B)(6).

A.     **The Opposition Does Not Establish The Existence Of An ATS Claim.**

The Opposition does not demonstrate that the ATS provides a cause of action for Plaintiff's novel and expansive "cybercrime" tort theory. Opp'n 36–39. In this respect, Mr. Al-Asaker adopts and incorporates by reference the Crown Prince's arguments. *See* Crown Prince Reply Br. § III.B.

Plaintiff's Opposition (at 36–39) also does not address Mr. Al-Asaker's arguments that her

allegations in support of the ATS claim are conclusory. Mot. 19. There is no mention of the elements of her underlying tort claim (even if one existed) or what allegations about Mr. Al-Asaker support those claims. Opp'n 36–39. Plaintiff's failure to identify any factual allegations showing Mr. Al-Asaker's involvement in an ATS violation requires dismissal. To the extent the Court attributes Plaintiff's arguments under the CFAA to her ATS claim, those arguments fail for the reasons as discussed in the CFAA section, *infra* § III.B.

### B.    The CFAA Claim Is Based On Conclusory Allegations.

Mr. Al-Asaker demonstrated why the allegations that "Defendants MBS, Al Qahtani, and Al-Asaker *themselves* "sifted" through and "extracted" data from Plaintiff's phone were conclusory and failed to establish a violation of the CFAA. Mot. 8–9. The Opposition abandons that theory. Plaintiff now argues that the CFAA claim is justified because "MBS, Al Qahtani, Al-Asaker and Dark Matter" "knowingly instigated and conspired" with one another to gain unauthorized access to Plaintiff's mobile device. Opp'n 40.

That theory fails because there are no factual allegations that Mr. Al-Asaker was involved in the hacking of Plaintiff's mobile device. Mot. 8–9. The Opposition only underscores the absence of this necessary support. Plaintiff purports to identify "facts in support of each of the Defendants' participation in the hacking." Opp'n 40–41. None of these "facts" are factual allegations regarding Mr. Al-Asaker that support Plaintiff's direct and conspiracy theories of liability. *First*, Plaintiff argues that "forensic evidence" "reveals that the Defendants were responsible for the hacking." *Id.* at 40 (citing Am. Compl. ¶¶ 29, 158). Nothing in the Amended Complaint identifies "forensic evidence" tying Mr. Al-Asaker to the hacking, including the two paragraphs cited by Plaintiff. *See* Mot. 9.[5] *Second*, the Court should disregard the conclusory allegation that Mr. "Al-Asaker assisted in the coordination of the various (successful) campaigns (with Al Qahtani) to unlawfully hack Ms. Oueiss's mobile device." Opp'n 41 (citing Am. Compl. ¶ 88). This argument, which quotes paragraph 88, is a conclusory recitation of Plaintiff's legal theory. *See Iqbal*, 556 U.S. at 678.

*Third*, Plaintiff argues that the alleged "hack follows the same pattern and tactics used in

---

[5] Paragraph 29 does not mention Mr. Al-Asaker, and does not describe specific "forensic evidence." Paragraph 158 recites the conclusory statement that "Defendants MBS, Al Qahtani and Al-Asaker (as well as DarkMatter, . . .), attempted to, and did in fact, gain unauthorized access to the contents of Ms. Oueiss' mobile device using multiple attack vectors." That allegation should be disregarded. *See Iqbal*, 556 U.S. at 678.

other hack and leak attacks by MBS, Al Qahtani, and Al-Asaker." Opp'n 40 (citing Am. Compl. ¶¶ 30, 70, 72, 146). None of the paragraphs cited by Plaintiff allege actions taken by Mr. Al-Asaker in the purported previous "hack and leak attacks." Moreover, the allegations regarding the *Abouammo* case are not relevant to this case. *Supra* § I.A.1. In the same vein, Plaintiff relies on the "preexisting relationship" between Mr. Al-Asaker and the Crown Prince as supporting the CFAA claim. Opp'n 40 (citing Am. Compl. ¶¶ 85–88). This "relationship" is based on Mr. Al-Asaker's employment as the head of the Private Office of the Crown Prince. That position—which is not alleged to have anything to do with hacking, computer technology, or software engineering—does not provide the facts necessary to plead the CFAA claim.

   C.   **The IIED Claim Is Based On Conclusory Allegations.**

   In support of her IIED claim, Plaintiff rehashes her conclusory allegations that Mr. Al-Asaker was involved in the hacking of her phone. *See* Opp'n 45–46. Mr. Al-Asaker has shown why those allegations are deficient. *See* Mot. 8–9, *supra* §§ I.A; III.B. Mr. Al-Asaker also adopts and incorporates by reference the MiSK Foundation's arguments that Plaintiff's allegations about her injury do not meet the high bar for severe emotional distress. MiSK Reply Br. § III.A.

   D.   **The Intrusion Claim Is Based On Conclusory Allegations.**

   Plaintiff contends that the overt acts for her conspiracy claim also plead an intrusion claim, Opp'n 49. Once again, Plaintiff relies on allegations or arguments that have nothing to do with Mr. Al-Asaker. The "overt acts" she points to contain no factual allegations of any acts taken by Mr. Al-Asaker. *See id.* at 55–56. Instead, the Opposition improperly groups him together with Al-Qahtani in an effort to muddy the waters. *Id.* at 55. As a result, Plaintiff cites several allegations in support of her claim against Mr. Al-Asaker—such as the procurement of hacking tools—that do not mention him at all. *See* Am. Compl. ¶¶ 144, 160, 164, 167–68, 191–92, 194, 233–34, 237.

   The few allegations that include Mr. Al-Asaker lack any facts about his involvement in the hacking or dissemination. *See supra* § III.B. For example, the Opposition relies on allegations regarding the @Uncareer1 Twitter account. Opp'n 55. But the only allegation concerning Mr. Al-Asaker is a conclusory one: that the account's "conduct was carried out at the behest of Defendant MBS with assistance from Defendants Al Qahtani and Al-Asaker." Am. Compl. ¶ 189. There are no factual allegations supporting this theory and the Court should dismiss the intrusion claim.

   E.   **The Civil Conspiracy Claim Is Based On Conclusory Allegations.**

   Finally, the Court should dismiss the civil conspiracy claim. Plaintiff effectively concedes

that she has not identified the terms of the alleged agreement, when it was created, or other specifics of the conspiracy. *See* Opp'n 57. In addition, none of the three purported "overt acts" by Mr. Al-Asaker (i.e., gaining access to Plaintiff's phone and creating and using the Uncareer social media accounts), *id.* at 55, are supported by factual allegations. *See supra* § III.B, D. While Plaintiff also purports to rely on "circumstantial evidence" (Opp'n 58), that evidence is the same as the conclusory allegations argued elsewhere. *See* Mot. 5–11; *supra* § III.B, D.

The Opposition therefore resorts to a "peculiar power of coercion" theory. *See* Opp'n 56. This doctrine provides an exception to the requirement that a civil conspiracy include an underlying tort if instead the defendants are "possessed of some peculiar power of coercion . . . by virtue of their combination, which power an individual would not possess." *Martin v. Marlin*, 529 So. 2d 1174, 1179 (Fla. Dist. Ct. App. 1988) (citation omitted).

The Amended Complaint does not state a claim for "peculiar power of coercion." The only specific reference to this theory is the allegation, buried in the seven-page conspiracy count, that "through Defendants Zeinab, Al-Owerde, Al Menaia, Al-Owerde [sic], Van Rider, Jundi, Smith and Schey, [the defendants] possessed a significant power of coercion to sway the narrative on Twitter." Am. Compl. ¶ 304.h. The allegation does not mention Mr. Al-Asaker, and in any case there are no facts alleging Mr. Al-Asaker's involvement in a conspiracy, *see supra*. Moreover, "sway[ing] the narrative on Twitter" is not a colorable "peculiar power of coercion" theory. *See Espana Informatica, S.A. v. Top Cargo, Inc.*, 2008 WL 11331683, at *11–12 (S.D. Fla. Apr. 28, 2008) (explaining that "peculiar power of coercion" theory is a "narrow one"). This doctrine is invoked in cases of economic boycott, such as where "the conduct of a combination of employers, maliciously conceived and executed, amounts to a 'black listing' of employees so as to permanently deprive them of the means of earning a livelihood." *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 551 (Fla. 1977). It has no applicability here. *See Grayson v. No Labels, Inc.*, 2021 WL 2869870, at *8 (M.D. Fla. Jan. 26, 2021) (rejecting peculiar power of coercion theory where "[o]ne person with internet access can destroy an individual's reputation alone—multiple people with Internet access, acting in concert, simply increases the volume of defamatory online content, not its effect"). Accordingly, the Court should dismiss Plaintiff's conspiracy claim.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the claims against Mr. Al-Asaker.

Dated: October 14, 2021            Respectfully submitted,

/s/ *Justin R. Cochran*
Justin R. Cochran, Esq.
Fla. Bar No. 110342
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard
Suite 1200
Tampa, FL 33602
Tel: (813)-221-1010
Fax: (813)-223-7961
jcochran@zuckerman.com

William W. Taylor, III, Esq. (pro hac vice)
Ivano M. Ventresca, Esq. (pro hac vice)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Tel: (202)-778-1800
Fax: (202)-822-8106
wtaylor@zuckerman.com
iventresca@zuckerman.com

*Attorneys for Defendant Bader Al-Asaker*