IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GHADA OUEISS,<br>    Plaintiff<br><br>  v.<br><br>MOHAMMED BIN SALMAN BIN<br>ABDULAZIZ AL SAUD, *et al.*,<br>    Defendants. | Civil Action No. 20-25022 (KMM) |

**SAUD AL QAHTANI'S REPLY TO PLAINTIFF'S OPPOSITION
TO HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii
BACKGROUND ................................................................................................................................. 1
ARGUMENT ....................................................................................................................................... 2
    I.    Mr. Al Qahtani is immune from suit. ........................................................................... 2
    II.   The Court lacks personal jurisdiction over Mr. Al Qahtani................................... 3
        A.    Alleged hack of Ms. Oueiss' phone ............................................................... 3
        B.    Alleged Co-Conspirators in Florida................................................................ 3
        C.    Other, unspecified U.S.-based defendants .................................................... 4
        D.    Alleged targeting of Florida ............................................................................. 5
            1.    *The Recruiting Defendants* ................................................................... 5
            2.    *@KateStewart22* ..................................................................................... 6
    III.  The Amended Complaint should nonetheless be dismissed because it also fails plausibly to allege that Mr. Al Qahtani is responsible for the conduct on which all of the causes of action are based. ............................................................................................................. 7
        A.    *The Computer Fraud and Abuse claim* ........................................................... 7
        B.    *Alien Tort Statute claim* ..................................................................................... 8
        C.    *The intentional infliction of emotional distress claim* ................................... 8
        D.    *The intrusion claim* .............................................................................................. 8
        E.    *The civil conspiracy claim* ................................................................................. 9
CONCLUSION ................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987) .................................................................................................................. 6

*Doe v. Buratai*,
    18 F. Supp. 3d 218 (D.D.C. 2018) ............................................................................................ 2

*Grider v. Cook*,
    590 F. App'x 876 (11th Cir. 2014) ........................................................................................... 5

*Sargeant v. Maroil Trading Inc.*,
    No. 17-81070-CIV, 2018 U.S. Dist. LEXIS 90949 (S.D. Fla. May 30, 2018) ...................... 4

*Tavakoli v. Doronin*,
    No. 18-21592-CIV, 2019 U.S. Dist. LEXIS 43188 (S.D. Fla. Mar. 18, 2019) ..................... 4

**Statutes**

18 U.S.C. § 951 .............................................................................................................................. 3

Foreign Agents Registration Act, 22 U.S.C. § 611 et seq. ............................................................ 3

**Other Authorities**

https://www.timesofisrael.com/israel-okayed-sale-of-pegasus-phone-spying-tool-to-
    saudi-arabia-report/ ................................................................................................................... 7

Reading her response in opposition to the defendants' motion to dismiss the amended complaint (ECF 172, "the Response" or "Resp."), one would think that the subject of Ghada Oueiss' lawsuit is an intrusion into Jeff Bezos' mobile phone, a hack of *Al-Jazeera*, and/or Mr. Khashoggi's death. Indeed, Ms. Oueiss admonishes the defendants for mentioning Mr. Khashoggi "just once" in their "186 pages of briefing." Resp. at 34. Yet, each of the claims asserted in the Amended Complaint relates to a supposed hack and leak operation to access Ms. Oueiss' personal mobile phone, leak information from it, or otherwise malign her reputation; she does not even purport make a claim that she has standing to assert claims based on these other unrelated allegations, or has suffered any damages as a result of them. In any event, the plaintiff's salacious references to these matters, and her efforts to tie Mr. Al Qahtani to them, do nothing to address the fundamental and fatal problems with the claims actually asserted in the Amended Complaint: the Court's lack of personal jurisdiction over Mr. Al Qahtani, Mr. Al Qahtani's conduct-based immunity, and the Amended Complaint's failure to state a claim. The Amended Complaint must be dismissed.

## BACKGROUND

Mr. Al Qahtani set forth the background related to the claims asserted in the Amended Complaint in his Motion to Dismiss (ECF No. 164) and will not repeat that background here or address the myriad of assertions made in the Response that are unrelated to the alleged scheme on which the claims asserted in Amended Complaint are based. However, a couple factual assertions in the Response merit discussion because they simply mischaracterize the Amended Complaint as it pertains to its allegations of a scheme to hack Ms. Oueiss phone, leak material from it, or otherwise falsely impugn her reputation.

First, Ms. Oueiss asserts that "the Kingdom of Saudi Arabia has categorically disclaimed responsibility for the class of conduct at issue…" Resp. at 23 (citing Amended Complaint ("AC") at ¶75). The Amended Complaint, however, makes no plausible factual allegation in this regard. Paragraph 75 states, in part, "…official Saudi regime media outlets, including Defendant MBS himself, have denied that any of these operations were carried out in any official government capacity. For instance, in a "60 Minutes" interview, Defendant MBS stated that he "absolutely" did not order the murder of Jamal Khashoggi." The Amended Complaint, however, does not specifically allege, or cite any source alleging, that Saudi media outlets or the Crown Prince, much less the Kingdom of Saudi Arabia itself, has disclaimed any conduct related to Ghada Oueiss. *See* Crown Prince Rep. Br. at 6.

Second, in the Response, Ms. Oueiss asserts, "Further analysis revealed thousands of files were accessed during hours when Ms. Oueiss was sleeping, confirming the hack by the Defendants." Resp. at 8 (citing AC ¶172). In fact, paragraph 172 makes no factual allegation that confirms a hack "by the Defendants." AC ¶172. Instead, it alleges the number and timing of files that were accessed (allegedly confirming a hack), and states only that this "*may have been* activity by one or more *threat actors* with remote access to the device seeking additional content for their campaign…" *Id.* (emphasis added); *see also* Crown Prince Rep. Br. at 7.

## ARGUMENT

**I.    Mr. Al Qahtani is immune from suit**.

As Mr. Al Qahtani explained in his Motion to Dismiss, the allegations against him are for acts that he allegedly took as an agent of a foreign state acting in his official capacity. *See* ECF no. 164 at 6-10. The Response merely recites legal standards and in one line argues generally, that "Ms. Oueiss alleges conduct 'to further personal vendettas' and 'attack any of the Crown Prince's critics.'" Resp. at 23 (citing AC ¶ 3). However, other than repeating the word "personal" and its variations in the Amended Complaint and again in the Response, Ms. Oueiss offers no counter to the Amended Complaint's own allegations showing that Mr. Al Qahtani's alleged *conduct* was in his official capacity as an agent of a foreign state. *See e.g.* ¶82 ("Al Qahtani has continued to play an important *role in the kingdom* as an informal advisor to [Defendant MBS].") (internal quotations omitted) (emphasis added); ¶80 ("Investigative journalists have noted Defendant Al Qahtani's supervisory role in "social media and surveillance operations *for the Royal Court*…..") (emphasis added); ¶144 ("Specifically, *through the Saudi Royal Guard, Saudi Arabia acquired* NSO Group's Pegasus spyware as early as November 2017.")(emphasis added); ¶160 (noting that the "Indicator of Compromise" was "associated with a ... server operating at the behest of *the Kingdom of Saudi Arabia*."). Adding the word personal does not transform an otherwise immune defendant into a potentially liable one. *See Doe v. Buratai*, 18 F. Supp. 3d 218, 231 (D.D.C. 2018) ("although the plaintiffs take great pains to emphasize that they are suing the defendants in the defendants' personal or 'individual capacities alone,' the allegations show otherwise.") (internal citations omitted).[1]

---

[1] As the Crown Prince explains, Ms. Oueiss' allegations of motive are not only conclusory, but also irrelevant to the immunity analysis. *See* Crown Prince Rep. Br. at 6. Mr. Al Qahtani adopts and incorporates by reference the Crown Prince's Reply on conduct-based immunity, §II(B). Mr. Al Qahtani also adopts and incorporates the argument that he is entitled to derivative immunity as an alleged agent of the Crown Prince discussed Al Menaia Reply brief, §IV.

2

Contrary to Ms. Oueiss's arguments in her Response (at 24, n.5), the allegations she makes in the Amended Complaint regarding the Foreign Agents Registration Act, 22 U.S.C. § 611 et seq., support Mr. Al Qahtani's entitlement to immunity. The allegations in the Amended Complaint that discuss FARA explicitly discuss the defendants' conduct in terms of the defendants being agents of a foreign state. *See* Mot. to Dismiss at 7-8. For example, when alleging that the "operator" of @KateStewart22 (the Amended Complaint elsewhere alleges Mr. Al Qahtani created and manages @KateStewart22 (AC ¶. ¶¶ 84, 233) violated FARA, the Amended Complaint states: "The purpose of FARA disclosures is to give the American people the ability to fully evaluate political communications that are *sponsored by a foreign state* and to prevent *foreign states* from concealing their attempts to influence U.S. government policy." ¶246 (emphasis added). Thus, implicit in the Amended Complaint's allegation that Mr. Al Qahtani violated FARA is its allegation that he was engaging in undisclosed political, *state-sponsored* communications. *See also* AC ¶ 248 ("These acts and omissions by the American Nodes were committed in violation of 18 U.S.C. § 951, which requires those *acting as agents of a foreign government* to notify the U.S. Attorney General.") (emphasis added). As explained in Mr. Al Qahtani's Motion to Dismiss, this just one example of the many instances throughout the Amended Complaint in which Mr. Al Qahtani is alleged to have been an agent of a foreign state acting in his official capacity. *See* Mot. to Dismiss at 6-10.

## II. The Court lacks personal jurisdiction over Mr. Al Qahtani.[2]

### A. Alleged hack of Ms. Oueiss' phone

The assertion that Mr. Al Qahtani "has been instrumental in facilitating and overseeing hack and leak campaigns at the behest of" the Crown Prince (Resp. at 29, citing AC¶78) is a pure conclusion, which cannot be relied upon for personal jurisdiction, *see* Mot. to Dismiss at 14, and is also not relevant to Ms. Oueiss' claim. Ms. Oueiss claims a hack of her phone from one foreign country to another foreign county with no connection to the United States. Therefore, the hacking allegations cannot confer personal jurisdiction over Mr. Al Qahtani.

### B. Alleged Co-Conspirators in Florida

The Response asserts that the Court has personal jurisdiction over Mr. Al Qahtani – a Saudi national and resident accused of conducting a hack and leak operation abroad – because he has "co-

---

[2] Mr. Al Qahtani adopts and incorporates by reference the Crown Prince's Reply, §I that the Court lacks personal jurisdiction.

conspirators" in Florida. *See* Resp. at 31.[3] As an initial matter, "conspiracy jurisdiction" itself is a faulty concept. *See* Al Qahtani Mot. to Dismiss at 16. Further, the Amended Complaint, in its effort to establish conspiracy jurisdiction, relies almost exclusively on the Amended Complaint's legal conclusion that the defendants were engaged in a conspiracy. *See*, *e.g.*, AC ¶¶38, 94, 122, 123, 126, 129, 138, 195, 208, 242, 254. The Court may not rely on these allegations. *See Sargeant v. Maroil Trading Inc.*, No. 17-81070-CIV, 2018 U.S. Dist. LEXIS 90949, at *13 (S.D. Fla. May 30, 2018) ("a legal conclusion… [is] not entitled to the assumption of truth.")(internal quotations omitted). The extent of the non-conclusory allegations on which a conspiracy jurisdiction argument could be based are the allegations that Mr. Al Qahtani "personally interacted" with two defendants (Van Rider and Jundi) who are located in Florida. *See* Resp. at 29 (citing AC ¶¶ 42, 51) (alleging that each of these defendants interacted with @KateStewart22 on Twitter). Even if the Court could accept the conclusion, without supporting factual allegations, that Mr. Al Qahtani is responsible for communications from @KateStewart22, that two people communicated by Twitter, of course, does not establish that they were in a conspiracy. *See Tavakoli v. Doronin*, No. 18-21592-CIV, 2019 U.S. Dist. LEXIS 43188, at *21 (S.D. Fla. Mar. 18, 2019)(reciting the elements of conspiracy). The Amended Complaint does not make factual allegations that, if true, would plausibly establish that Mr. Al Qahtani reached any agreement with any defendant in the United States much less an agreement to do an unlawful act, or that an overt act was undertaken in furtherance of this purported agreement. Nor does the Response contend otherwise.

    C.  <u>Other, unspecified U.S.-based defendants</u>

The Response declares that "Ms. Oueiss alleges many particularized facts that directly tie the Foreign Defendants to illegal conduct in Florida and in the United States," Resp. at 35-36, but then does not cite to the Amended Complaint or identify any such facts. As explained in his Motion to Dismiss, p. 15, the Amended Complaint does not allege when, where, or how Mr. Al Qahtani supposedly recruited the unspecified U.S. Defendants. Likewise, it does not allege when, where, or how, he personally directed or agreed with anyone in the United States to do anything or when, where,

---

[3] Ms. Oueiss' Response also asserts that Mr. Al Qahtani's "actions in furtherance of the Conspiracy were 'through his position as a board member of the MiSK Foundation.'" Resp. at 29 (citing AC ¶ 83). As explained in his Motion to Dismiss, (at 5), this conclusory statement fails to allege any facts as to what, where, when, or how Mr. Al Qahtani supposedly used his position as a board member of the MiSK Foundation to recruit anyone to commit a tort against Ms. Oueiss. Mr. Al Qahtani further adopts and incorporates the arguments in the MiSK Foundation Reply brief that this allegation is implausible and conclusory, §I(B).

or how, he directed foreign individuals to recruit anyone in the United States to do anything, much less to commit a tort against Ms. Oueiss. *See Grider v. Cook*, 590 F. App'x 876, 881 (11th Cir. 2014) ("general conclusory allegations," which "never identified—even generally—a date, time, or location when the [defendants] allegedly communicated with those municipal entities or the nature of any alleged communications" were "threadbare recitals of the agreement element of conspiracy" and did not state a claim for conspiracy). Therefore, none of the U.S.-based defendants' conduct can establish personal jurisdiction over Mr. Al Qahtani, a foreign national residing abroad.

### D. Alleged targeting of Florida

#### 1. *The Recruiting Defendants*

The Response contends that Mr. Al Qahtani "targeted" Florida, stating "Defendants MBS, Al Qahtani [and] Al-Asaker . . . intended to recruit members to the Network who were from major U.S. cities, such as Miami, Florida to disseminate disinformation."; *see also* Resp. at 32. ("Foreign Defendants are alleged to have targeted Florida co-conspirators as well as Florida readers."). Not only is this "targeting" notion entirely conclusory, and therefore cannot be relied upon by this Court, *see Grider v. Cook*, 590 F. App'x at 881, but it is also inconsistent with the Amended Complaint's own allegations.[4]

The Amended Complaint speculates in vague and conclusory terms that the "Recruiting Defendants" (not Mr. Al Qahtani), acting abroad, somehow recruited the United States-based defendants. *See* Resp. at 13. The Amended Complaint asserts that the "recruits" of the "Recruiting Defendants" included "recruits" in Florida, but it does not allege that the "Recruiting Defendants" targeted Florida in its recruiting, much less that Mr. Al Qahtani directed the "Recruiting Defendants" to recruit in Florida in particular. Thus, there is no "direct causal relationship," as the Response asserts (at 31), between Florida and Mr. Al Qahtani. Mr. Al Qahtani cannot be said to have directed – knowingly or otherwise – any activity to the State of Florida or the United States.

---

[4] Ms. Oueiss also argues that "*her* Twitter handle's inclusion of Miami's area code put the Foreign Defendants on notice. *Id.* at 31 (citing AC ¶ 208)(emphasis added). There is no allegation in the Amended Complaint that Ms. Oueiss' Twitter handle contained a Miami area code; rather, the allegation is that Van Rider's Twitter handle included the number 305. AC ¶ 208. As explained in more detail in this section, there are no facts alleged to support an assertion that Mr. Al Qahtani recruited Van Rider, that he knew Van Rider's Twitter handle, or that he knew that the inclusion of the number 305 meant Van Rider was based in Florida. In any event, even if such facts were alleged, these facts would not establish that the alleged tortious conduct was targeted at Florida.

5

> 2. *@KateStewart22*

The @KateStewart22 handle is not alleged to have hacked Ms. Oueiss' phone, it is not alleged to have retweeted any of the unlawfully obtained material, it is not alleged to have provided any direction or formed any agreement with any of the named defendants, and neither the @KateStewart22 tweets nor Mr. Al Qahtani himself are part of Ms. Oueiss' libel claim. In any event, The Response largely ignores the persuasive and substantial caselaw that rejects the idea that posting on the Internet can establish personal jurisdiction in every jurisdiction in which the post may be read. Rather, the plaintiff must adequately plead that the tortious conduct targeted the jurisdiction where suit is brought. *See* Def.'s Mot. to Dismiss at 13-14. The conduct alleged in the Amended Complaint can hardly be characterized as targeting Florida given that a mere 85 of @KateStewart22's total 24,400 Twitter followers self-report their location as Florida. *See* Mot. to Dismiss at 4. In the Response, Ms. Oueiss says, "Defendants [] argue that because Ms. Oueiss suffered so much abuse from people outside of Florida, contacts within Florida are insufficient to establish personal jurisdiction." Resp. at 32. This is, of course, a mischaracterization of Mr. Al Qahtani's argument. Noting that, in fact, only 0.3% of @KateStewart22's total Twitter followers are in Florida undermines any claim @KateStewart22's twitter feed was targeting Florida, or anyone in Florida. Thus, even if Mr. Al Qahtani controlled @KateStewart22 and it had some connection to the alleged tortious conduct against Ms. Oueiss, @KateStewart22 cannot be said to have targeted Florida.

*     *     *     *     *

Finally, as Mr. Al Qahtani is a Saudi national and resident with no ties to the United States, the Response simply fails to address the "unique burdens placed upon [Mr. Al Qahtani] who must defend oneself in a foreign legal system," which the Supreme Court has dictated "should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *See* Mot. to Dismiss at 18 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987)). Ms. Oueiss fails to explain how the United States or the Southern District of Florida has any particular interest in adjudicating this claim between a foreign plaintiff and a foreign defendant for conduct Ms. Oueiss alleges defendant entirely undertook abroad. *See id.*[5]

---

[5] Mr. Al Qahtani adopts and incorporates by reference arguments in the MiSK Foundation Reply brief that the Court should deny the Plaintiff's renewed request for jurisdictional discovery, §IV.

**III.     The Amended Complaint should nonetheless be dismissed because it also fails plausibly to allege that Mr. Al Qahtani is responsible for the conduct on which all of the causes of action are based.**

A.     *The Computer Fraud and Abuse claim*

With respect to the Computer Fraud and Abuse claim, the Response states, "Forensic evidence obtained from Ms. Oueiss's mobile device reveals that the Defendants were responsible for the hacking." Resp. at 40 (citing AC ¶¶ 29, 158). Yet the Amended Complaint does not make any factual allegation that there is any "forensic evidence" from Ms. Oueiss' phone that establishes "the Defendants were responsible for the hacking." *Id.* The purported forensic evidence may show that Ms. Oueiss' phone was hacked and that data access occurred. *See* AC ¶¶164, 168-70, 172-74. However, the remainder of the allegation – that Mr. Al Qahtani "orchestrated" or "directed" this attack – are purely conclusions drawn from nothing more than speculative and unrelated assertions, not "forensic evidence." *See also* Resp. at 41 (citing AC ¶¶ 77–83, 85–88). "Ms. Oueiss further asserts that the preexisting relationships between Al Qahtani and Al-Asaker with MBS are evidence of their loyalty to MBS and consistent willingness to act at his behest and orchestrate hacking operations such as the one against her." *Id.* The conclusions of the Plaintiff based solely on her speculation, are wholly insufficient to establish a claim that Mr. Al Qahtani is somehow responsible for the fact that her phone was allegedly hacked.

As to the "procurement of hacking tools," setting aside that this is a purely conclusory allegation, it would not be an act related to this purported conspiracy. The supposed procurement of "hacking tools" was allegedly as early as November 2017, *see* AC ¶144,[6] well before this alleged plan was "hatched." *See id.* ¶¶6, 293 (claiming that the Crown Prince "hatched a scheme" to pursue Plaintiff "*[a]fter* [she] began reporting on" the death of Jamal Khashoggi, which occurred in *October 2018*) (emphasis added). Thus, any "hacking tools" acquired in 2017 would not have been related to Ms. Oueiss or her mobile phone.

The alleged "attempts to gain unauthorized access to the contents of Ms. Oueiss's mobile device," by a "threat actor group in Saudi Arabia." (AC ¶¶ 158–65, 167-68, 259-64) that Mr. Al Qahtani "oversaw," "directed," or "orchestrated," (AC ¶¶153, 159-161), are conclusory, thread-bare labels with no under lying plausible facts alleged.

---

[6] Citing https://www.timesofisrael.com/israel-okayed-sale-of-pegasus-phone-spying-tool-to-saudi-arabia-report/ (citing "news reports and other sources claiming that NSO Group sold Saudi Arabia the technology in 2017").

B.  *Alien Tort Statute claim*

Ms. Oueiss' Alien Tort Statute claim fails for these same reasons, for the reasons detailed in Mr. Al Qahtani's Motion to Dismiss at §§III, IV, and for the reasons detailed in the Crown Prince's Reply, §III(B).

C.  *The intentional infliction of emotional distress claim*

With respect to her intentional infliction of emotional distress claim, the Response merely states that the Amended Complaint "extensively chronicles MBS, Al Qahtani, Al-Asaker, and DarkMatter's roles in unlawfully hacking Ms. Oueiss's mobile device, and MBS, Al Qahtani, and Al-Asaker's efforts to recruit other Defendants." Resp. at 45 (citing Plaintiff's Statement of Facts, Section II.B of Response). These, "chronicles" however, are a stacking of one speculative and conclusory claim upon another into an unsubstantiated (and fictitious) conspiracy theory, not a plausible claim. *See, e.g.* AC ¶ 270 ("Defendants' actions described in this Amended Complaint, including but not limited to, Defendants MBS's, Al Qahtani's, Al-Asaker's, and DarkMatter's intentional access of Ms. Oueiss' mobile device to obtain personal data and files therefrom was intentional or reckless."; but, as noted above, the Amended Complaint makes no plausible non-conclusory factual allegation that Mr. Al Qahtani was responsible for accessing Ms. Oueiss' phone); ¶272 ("The Conspiracy was intended to consistently intimidate and harass Ms. Oueiss on a widespread basis to frighten her and prevent her from carrying out her journalistic duties."; but, as noted above, and in Mr. Al Qahtani's Motion to Dismiss (Background, and §§II and III), the Amended Complaint makes no plausible non-conclusory factual allegation that Mr. Al Qahtani entered into a conspiracy.)[7]

D.  *The intrusion claim*

While Ms. Oueiss contends that she adequately alleged that Mr. Al Qahtani "personally hacked" Ms. Oueiss' mobile phone (Resp. at 49 (citing Resp. Argument, Section IV.D.1)), she fails to cite anything in the Amended Complaint to support this assertion. She cannot because the Amended Complaint makes no such allegation. Instead, it claims that Mr. Al Qahtani "coordinated," "orchestrated," "oversaw," or "directed" the purported cyber intrusion, AC ¶¶153, 159-161, but that it was actually "was carried out by a threat actor group in Saudi Arabia." ¶¶161-63, 259-64. In fact, the Amended Complaint alleges this no fewer than five times throughout the Amended Complaint.

---

[7] Mr. Al Qahtani adopts and incorporates the arguments in the reply briefs of the MiSK Foundation and Al Menaia  that, even if it was not speculative and conclusory, the conduct alleged was not outrageous and Ms. Oueiss has failed adequately to allege severe emotional distress. *See* MiSK Br. §III(A); Al Menaia Br. §VI.

8

*See id.* The Amended Complaint is therefore unambiguous in alleging that Mr. Al Qahtani did not personally access her phone.

With respect to secondary liability, Ms. Oueiss' claim fails for the reasons described *supra* §II and in Mr. Al Qahtani's Motion to Dismiss. The Response does not cite anything in the Amended Complaint that alleges what assistance Mr. Al Qahtani supposedly provided or what direction he gave to others. It does not allege any communication in which Mr. Al Qahtani supposedly formed an unlawful agreement with any of the alleged hackers or social media users identified in the Amended Complaint, or when or how they assented to accept his direction.

E.   *The civil conspiracy claim*

Ms. Oueiss contends that she has met her burden in pleading "strong circumstantial evidence" of a conspiratorial agreement. Resp. at 58. Her examples of circumstantial evidence, however, are the same strained and speculative assertions, some of which are not even alleged in the Amended Complaint. Specifically, Ms. Oueiss alleges evidence of a conspiratorial agreement based on "Details regarding the hack of Ms. Oueiss's phone which demonstrate it follows the same pattern and tactics used in other documented hack and leak attacks by Defendants, AC ¶¶ 159–74. …[and] Al Qahtani and Al-Asaker's prior similar hack and leak campaigns. *Id.* ¶¶ 81, 88, 164–65." *Id.* As explained, *supra*, such statements about Mr. Al Qahtani's "similar" campaigns are pure speculation, and should not even be considered as support for the allegation that he participated in a purportedly similar campaign, much less as a basis to infer from the speculative assertion of a similar campaign that Mr. Al Qahtani conspired with respect to the scheme on which the Amended Complaint's claims are based. Moreover, none of the paragraphs of the Amended Complaint cited by Ms. Oueiss allege actions taken by Mr. Al Qahtani in the purported previous "hack and leak attacks." *Id.*

Ms. Oueiss also asserts that the circumstantial evidence of a purported conspiratorial agreement is "Forensic evidence connecting the hack to Defendants." *Id.* (citing AC ¶¶ 15, 29). As explained *supra* §III(i), there may be an allegation in the Amended Complaint that there is forensic evidence that Ms. Oueiss' phone was hacked, but there is *no* allegation in the Amended Complaint that there is forensic evidence "connecting the hack to the Defendants." *Id.* Therefore, this cannot be viewed as any circumstantial evidence of an unlawful agreement.

Finally, Ms. Oueiss alleges circumstantial evidence of a conspiratorial agreement because "MBS, Al Qahtani, and Al-Asaker's acquisition of the hacking spyware, Pegasus, and documented examples of its use by Defendants." *Id.* (citing AC ¶¶ 167–68). As explained *supra* §III(A) this purported acquisition occurred at least a year prior before this plan was allegedly "hatched." What the

9

Response characterizes as "documented examples" of use of this "hacking software" by the defendants is simply Ms. Oueiss' conclusion without any basis in fact, or even any alleged actions in the Amended Complaint to which she cites. In any event, these purported other uses of the "hacking spyware" are factually unrelated to Ms. Oueiss.

The only basis for the Response's assertion that these claimed prior uses of "hacking software" are relevant to her claims is the Amended Complaint's naked conclusion: "In or around September 2019, Defendants MBS, Al Qahtani and Al-Asaker, in direct response to Ms. Oueiss' coverage of Defendant MBS's involvement in the hacking of Mr. Bezos's mobile device and his involvement in the murder of Mr. Khashoggi, hatched a plan to hack Ms. Oueiss' personal mobile device with the goal of obtaining confidential information regarding Ms. Oueiss." *Id.* at ¶158. Rather than meeting her pleading burden to allege facts that, if true, would plausibly establish that the conspiratorial agreement alleged in the Amended Complaint actually existed, Ms. Oueiss merely offers only that the existence of the conspiracy she alleges can be inferred based on unsubstantiated third-hand accounts of prior use of "hacking spyware" (actions not alleged in her Amended Complaint) combined with her own bald assertion that this supposed prior use motivated the conduct alleged in the Amended Complaint. This is plainly insufficient. The conspiracy claim must be dismissed.[8]

## CONCLUSION

Ms. Oueiss' Response is as rife with deficiencies as her Amended Complaint. Indeed, the Response often mischaracterizes the Amended Complaint in an effort to obfuscate its deficiencies. Repeated sensational allegations cannot overcome Mr. Al Qahtani's immunity, this Court's lack of personal jurisdiction over him, and the multiple legal flaws that result in the Amended Complaint's failure to state a claim. For these reasons, and for those detailed in Mr. Al Qahtani's motion to dismiss, the Amended Complaint against Mr. Al Qahtani must be dismissed.

---

[8] Mr. Al Qahtani additionally adopts and incorporates by reference Bader Al-Asaker's argument that the power of coercion theory asserted by Ms. Oueiss in her Response fails to state a claim and lacks applicability in this case. *See* Al-Asaker Reply Br. §III(E). Finally, with respect to all her common-law claims, Ms. Oueiss fails to plead multiple elements. *See* Crown Prince Reply Br. §IV (citing MiSK Reply Br. 8-9 (§III.A) (fails to allege "severe emotional distress," as necessary for IIED claim); DarkMatter Reply Br. 8-9 (§III.C) (fails to plead severe emotional distress, extreme and outrageous conduct, or actual malice for intrusion claim); *id.* at 10 (§III.D) (fails to plead intrusion into a "private quarter" or "place," as necessary for intrusion claim); U.S. Defendants' Reply Br. 9-10 (fails to plead civil conspiracy)) (all of which Mr. Al Qahtani adopts and incorporates by reference).

                                                                                                       Respectfully submitted,
                                                                                                       SAUD AL QAHTANI

| /s/ | /s/ |
|---|---|
| David Oscar Markus (Fla. Bar #119318) | Barry J. Pollack (DC Bar #434513) |
| MARKUS/MOSS, PLLC | Law Offices of Barry J. Pollack, LLC |
| 40 N.W. Third Street, Penthouse One | 1629 K Street, N.W., Suite 300 |
| Miami, Florida 33128 | Washington, DC 20006 |
| Telephone: (305) 379 6667 | 202-230-9647 |
| dmarkus@markuslaw.com | barryjpollack@gmail.com |
| *Counsel for Defendant* | *Counsel for Defendant* |