UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

No. 1:20-cv-25022-MOORE/LOUIS

GHADA OUEISS,

                            Plaintiff,

vs.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al.*,
                            Defendants.

_____/

**MIDDLE EAST NEWS FZ-LLC'S
REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT………………………………………………………………… 1

ARGUMENT……………………………………………………………………………………….. 2

I. PLAINTIFF HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER MIDDLE EAST NEWS.................................................................................................. 2

   A. PLAINTIFF DOES NOT DISPUTE THAT RULE 4(K)(2) CANNOT PROVIDE PERSONAL JURISDICTION OVER MIDDLE EAST NEWS ................................................................ 2

   B. PLAINTIFF DOES NOT DISPUTE THAT THIS COURT LACKS GENERAL JURISDICTION OVER MIDDLE EAST NEWS................................................................................... 2

   C. PLAINTIFF HAS FAILED TO ADEQUATELY ESTABLISH PERSONAL JURISDICTION OVER MIDDLE EAST NEWS BASED ON THE FINANCIAL PHOTO TWEET................................ 2

   D. CONCLUSORY ALLEGATIONS OF A CONSPIRACY OR AGENCY RELATIONSHIP WITH OTHER DEFENDANTS ARE INSUFFICIENT TO RENDER SPECIFIC PERSONAL JURISDICTION OVER MIDDLE EAST NEWS ......................................................... 4

      1. Middle East News Is Not Alleged To Have Participated In Hacking, Recruiting, Or Defamatory Leaking ................................................................ 4

      2. The Lack Of Connection Between Middle East News And Other Defendants Is Fatal.................................................................................................. 5

II. IF THE AMENDED COMPLAINT'S ALLEGATIONS ARE ASSUMED TO BE TRUE, MIDDLE EAST NEWS IS ENTITLED TO SOVEREIGN IMMUNITY .................. 6

   A. MIDDLE EAST NEWS WOULD BE ENTITLED TO COMMON LAW CONDUCT-BASED IMMUNITY.................................................................................................. 6

   B. MIDDLE EAST NEWS WOULD BE ENTITLED TO DERIVATIVE IMMUNITY ........................... 7

III. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER FLORIDA LAW....................... 7

   A. PLAINTIFF DOES NOT DISPUTE THAT HER CLAIMS AGAINST MIDDLE EAST NEWS DO NOT APPLY TO THE EXTRATERRITORIAL CONDUCT ALLEGED..................................... 7

   B. PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE IIED, LIBEL AND CIVIL CONSPIRACY .................................................................................................. 8

CONCLUSION……………………………………………………………………………………. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Joseph*,
   938 F. Supp. 2d 1265 (S.D. Fla. 2013) ...............................................................................9

*Bickel v. City of Coral Springs*,
   No. 17-cv-60606, 2017 WL 3336722 (S.D. Fla. Aug. 4, 2017) .............................................9

*Butters v. Vance Int'l, Inc.*,
   225 F.3d 462 (4th Cir. 2000) ................................................................................................7

*Catalyst Pharms. Inc. v. Fullerton*,
   748 F. App'x 944 (11th Cir. 2018) .......................................................................................3

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*,
   792 F. Supp. 2d 1301 (S.D. Fla. 2011) ................................................................................8

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)...........................................................................................................3

*Frias v. Demings*,
   823 F. Supp. 2d 1279 (M.D. Fla. 2011) ...............................................................................9

*Fridovich v. Fridovich*,
   598 So. 2d 65 (Fla. 1992).....................................................................................................8

*In re Friedman's, Inc. Derivative Litig.*,
   386 F. Supp. 2d 1355 (N.D. Ga. 2005) ................................................................................5

*Internet Sols. Corp. v. Marshall*,
   39 So. 3d 1201 (Fla. 2010)...................................................................................................3

*Estate of Jackson v. Gen. Elec. Cap. Corp. (In re Fundamental Long Term Care)*,
   507 B.R. 359 (Bankr. M.D. Fla. 2014) ................................................................................5

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)..............................................................................................................4

*Mar. Exec., LLC v. Larson Elecs., LLC*,
   No. 17-cv-60323, 2018 WL 2938376 (S.D. Fla. June 11, 2018)..........................................3

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
   No. 15-24363-CIV, 2016 WL 11501768 (S.D. Fla. Sept. 14, 2016)........................................6

*Negron v. CitiMortgage Inc.*,
  No. 16-CIV-61776, 2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) ..........................................9

*Samantar v. Yousuf*,
  560 U.S. 305 (2010)................................................................................................................6

*Sonic Momentum B, LP v. Motorcars of Distinction, Inc.*,
  No. 11-80591-CIV, 2011 WL 4738190 (S.D. Fla. Oct. 7, 2011) .............................................6

*Stern v. O'Quinn*,
  No. 07-60534-CIV, 2008 WL 11401794 (S.D. Fla. Aug. 8, 2008) ..........................................9

*Thompson v. Carnival Corp.*,
  174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (Moore, J.) .............................................10

*United States v. Fid. Cap. Corp.*,
  920 F.2d 827 (11th Cir. 1991) ................................................................................................5

*United States v. Massey*,
  89 F.3d 1433 (11th Cir. 1996) ................................................................................................6

*Weiner v. Podesto*,
  No. 19-60859-CIV, 2019 WL 7708494 (S.D. Fla. Aug. 2, 2019) ............................................3

*White Wave Int'l Labs, Inc. v. Lohan*,
  No. 8:09-cv-1260-T-33MAP, 2011 WL 2669658 (M.D. Fla. July 7, 2011) ............................3

*Wilcox v. Stout*,
  637 So. 2d 335 (Fla. Dist. Ct. App. 1994) ..........................................................................5, 6

*Yousuf v. Samantar*,
  699 F.3d 763 (4th Cir. 2012) ..................................................................................................6

**PRELIMINARY STATEMENT**

Plaintiff's Omnibus Response in Opposition to Defendants' Motions to Dismiss Amended Complaint, ECF No. 172 (the "Opposition" or "Opp."),[1] attempts to group together all "Foreign Defendants" to obscure the fact that Defendant Middle East News itself is not alleged to have engaged in any malfeasance. Instead, *other* defendants are alleged to have: (1) hacked Plaintiff's phone and stolen her private photographs and videos; (2) recruited, via Twitter, a "Network" of "American Nodes"; and (3) leaked stolen and sometimes altered material that Plaintiff alleges to be insulting, defamatory, or private. Plaintiff spends the majority of the Opposition arguing that she is the subject of a conspiracy to hack, leak, and defame, yet there are no allegations that Middle East News was involved in, or even knew of, the alleged hacking, recruiting, or leaking of stolen information.

The claims against Middle East News must be dismissed for lack of personal jurisdiction. Apart from implausible and conclusory allegations of Middle East News joining a conspiracy, Plaintiff's Opposition fails to identify any contact between Middle East News and the relevant jurisdiction, Florida. There are no allegations that Middle East News undertook any action in Florida or had any interaction with, or even knew, any of the Florida defendants. The Amended Complaint seeks to draw Middle East News into this litigation based on a single post on its Arabic-language Twitter account that mentioned Plaintiff, a Lebanese journalist who works in Qatar. Middle East News' Motion to Dismiss pointed out that this "Financial Photo Tweet" is not alleged to have been viewed by any social media user in Florida and did not reference any individual located in Florida. Plaintiff's Opposition does not dispute this lack of contact between Middle East News and Florida.

However, if Plaintiff's allegations of conspiracy and agency were credited, the doctrines of conduct-based and derivative immunity would shield Middle East News from Plaintiff's claims. The Opposition cites no compelling authority to the contrary.

Lastly, Plaintiff's Opposition fails to rebut compelling authority requiring the dismissal of Plaintiff's Florida common law claims against Middle East News because they do not apply to the extraterritorial conduct alleged here.

---

[1] Terms not defined herein are to be given the meaning used in Middle East News' Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 169 (the "Motion" or "MEN Mot."), and the Amended Complaint, ECF No. 135 (the "Amended Complaint" or "Am. Compl.").

# ARGUMENT

I. **PLAINTIFF HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER MIDDLE EAST NEWS**

   A. **PLAINTIFF DOES NOT DISPUTE THAT RULE 4(K)(2) CANNOT PROVIDE PERSONAL JURISDICTION OVER MIDDLE EAST NEWS**

As explained in Middle East News' Motion to Dismiss, Rule 4(k)(2) cannot confer jurisdiction over a party absent a federal claim against that party. MEN Mot. at 4-5 (collecting cases). Because the Amended Complaint dropped all federal claims against Middle East News, Rule 4(k)(2) is inapplicable, and only Middle East News' contacts with Florida, and not the United States as a whole, may be considered when evaluating personal jurisdiction. MEN Mot. at 5. Plaintiff does not dispute any of these conclusions.

   B. **PLAINTIFF DOES NOT DISPUTE THAT THIS COURT LACKS GENERAL JURISDICTION OVER MIDDLE EAST NEWS**

The Opposition similarly fails to dispute that there are no alleged contacts between Middle East News and Florida that could support general jurisdiction. While the Opposition repeats that Middle East News "owns and operates news network Al Arabiya, which has offices in Saudi Arabia and the U.S.," Opp. at 8, because Plaintiff has dropped her federal claims against Middle East News, the only forum at issue for the contacts analysis is Florida. As such, allegations of offices elsewhere in the United States are irrelevant to the question of personal jurisdiction.

   C. **PLAINTIFF HAS FAILED TO ADEQUATELY ESTABLISH PERSONAL JURISDICTION OVER MIDDLE EAST NEWS BASED ON THE FINANCIAL PHOTO TWEET**

As previously stated, the only alleged misconduct by Middle East News was posting the Financial Photo Tweet.[2] Am. Compl. ¶¶ 179-82. But Middle East News' alleged posting of that single tweet is insufficient to establish personal jurisdiction under Florida's long-arm statute or constitutional due process. MEN Mot. at 9. As Middle East News' Motion pointed out, the Amended Complaint contains no allegations that anyone in Florida retweeted or even viewed the Financial Photo Tweet. *Id.* at 12. Seemingly recognizing this fatal deficiency in the allegations, Plaintiff attempts to tie the Financial Photo Tweet to Florida Defendants Van Rider and Jundi by claiming, for the first time in her Opposition, that the Financial Photo Tweet "'led to a significant

---

[2] The Amended Complaint broadly asserts that Middle East News was involved in "repeated harassment and intimidation of Ms. Oueiss[,]" Am. Compl. ¶ 270, but fails to allege any details in support of that conclusory allegation.

spike in negative Twitter activity aimed at Ms. Oueiss' in which Van Rider and Jundi participated and incited." Opp. at 29 (citing Am. Compl. ¶ 182). Notably, this claim is not supported by any of the allegations in the Amended Complaint. There is no allegation that Van Rider and Jundi accessed the Financial Photo Tweet and no explanation for how the Financial Photo Tweet bares any causal connection to their alleged activities in Florida.

   The lack of allegations that *anyone* in Florida accessed the Financial Photo Tweet is fatal to personal jurisdiction. *See Catalyst Pharms. Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) ("While these allegations may establish that [the internet] statements were accessible in Florida, they do not point to any facts showing the statements were *accessed* in Florida." (emphasis added)); *Weiner v. Podesto*, No. 19-60859-CIV, 2019 WL 7708494, at *4 (S.D. Fla. Aug. 2, 2019) (dismissing for lack of personal jurisdiction libel claims where plaintiff failed to allege access by a third party in Florida); *Mar. Exec., LLC v. Larson Elecs., LLC*, No. 17-cv-60323, 2018 WL 2938376, at *4 (S.D. Fla. June 11, 2018) ("[W]hile the alleged defamatory statements were arguably accessible in Florida, [Plaintiff] has not established that the allegedly defamatory statements were . . . accessed by a third-party in Florida."); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010) ("A nonresident defendant commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute . . . provided that the website posts containing the statements are accessible in Florida and accessed in Florida."). Nor does Plaintiff allege that the Financial Photo Tweet was directed at a Florida resident, corporation, or property, or that her harm was felt exclusively or primarily in Florida. *See White Wave Int'l Labs, Inc. v. Lohan*, No. 8:09-cv-1260-T-33MAP, 2011 WL 2669658, at *3 (M.D. Fla. July 7, 2011) ("[T]he cases in which the Eleventh Circuit has applied [Florida's long-arm statute] to foreign torts causing injury within Florida, the conduct was directed at Florida residents, corporations, or property, and the harm was felt exclusively or primarily in Florida."). As such, Florida's long-arm statute is clearly not satisfied here.

   Moreover, despite Plaintiff's arguments to the contrary, the exercise of personal jurisdiction over Middle East News would plainly "offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-317 (1945)). Middle East News is "at home" in the United Arab Emirates and would bear a substantial burden defending these claims in Florida. Plaintiff neither resides in Florida, nor has she set forth any particular interest that Florida

has with respect to her claims against Middle East News.

Plaintiff relies on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773, 780-81 (1984), for the proposition that even a small portion of harm, here 0.14% of the total tweets allegedly harassing Ouiess, is sufficient to provide Florida with a particular interest in resolving her claims. Opp. at 32-33. The Supreme Court in *Keeton* held, however, that a state within which only "a small proportion" of harm occurred may be a proper forum so long as "the defendant has 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Keeton*, 465 U.S. at 773, 780-81 (cleaned up). In *Keeton*, the bulk of the harm alleged occurred outside of New Hampshire, but the Respondent "continuously and deliberately exploited the New Hampshire market." *Id*. at 781. Here, Middle East News has no contacts with Florida and has not done anything to exploit the Florida market. As such, the minimal harm alleged to have occurred in Florida is, by itself, insufficient to support jurisdiction.

> D. **CONCLUSORY ALLEGATIONS OF A CONSPIRACY OR AGENCY RELATIONSHIP WITH OTHER DEFENDANTS ARE INSUFFICIENT TO RENDER SPECIFIC PERSONAL JURISDICTION OVER MIDDLE EAST NEWS**
>
>> 1. **Middle East News Is Not Alleged To Have Participated In Hacking, Recruiting, Or Defamatory Leaking**

Plaintiff spends the majority of the Opposition arguing that she is the subject of a conspiracy to hack, leak, and defame, yet she has repeatedly failed to explain how Middle East News was involved in, or even knew of, the alleged hacking, recruiting, or leaking of defamatory stolen information. The Financial Photo Tweet that Plaintiff complains of is not alleged to be in any way related to any photos or data stolen from Plaintiff's phone during the purported conspiracy. In her Opposition, Plaintiff recites what she refers to as "strong circumstantial evidence of the Conspiracy," but missing from her recitation is any reference to Middle East News. Opp. at 58 (identifying only the actions of other defendants).

It cannot be that any information critical of Plaintiff posted by any entity establishes a conspiracy with defendants located in Florida. Despite already having the opportunity to amend her complaint, Plaintiff has failed to allege how the Financial Photo Tweet was connected to an alleged conspiracy to hack and leak, or with any Florida defendants.

### 2. The Lack Of Connection Between Middle East News And Other Defendants Is Fatal

Plaintiff argues that Middle East News was a so-called "critical actor[]" in what she characterizes as "the dissemination and amplification phase" of the alleged conspiracy between defendants. Opp. at 8. But the only allegations of any connection between Middle East News and any other defendant are that the Crown Prince allegedly "directs and controls the commercial activities and employees" of Middle East News, *id*. at 8-9, and that that Middle East News "is a mere instrumentality of, and is dominated and controlled by, Defendant MBS." Am. Compl. ¶ 134.

Plaintiff asserts that Middle East News acted in concert with the Crown Prince to tweet an allegedly doctored financial photo in an effort to "harm her journalistic integrity." Opp. at 9. But the only fact alleged in support of this conclusion is that MBS is the majority owner of Middle East News. Am. Compl. ¶ 134. That sole factual allegation of majority ownership, even if credited, is insufficient as a matter of law to support allegations of control and domination. *See, e.g.*, *United States v. Fid. Cap. Corp.*, 920 F.2d 827, 837 (11th Cir. 1991) ("The mere fact that a person owns and controls a corporation will not justify a finding of abuse of the corporate entity [for purposes of an alter ego theory], even though that person may have used the corporation to promote his own ends."); *In re Friedman's, Inc. Derivative Litig.*, 386 F. Supp. 2d 1355, 1362-63 (N.D. Ga. 2005) ("[E]ven proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation. There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person." (cleaned up)); *Estate of Jackson v. Gen. Elec. Cap. Corp. (In re Fundamental Long Term Care)*, 507 B.R. 359, 374 (Bankr. M.D. Fla. 2014) ("[A]ny one of facts alleged in the complaint (i.e., an 83% ownership interest, majority control of the board, day-to-day control over business operations, etc.), taken by itself, would not plausibly give rise to domination or control[.]"). Plaintiff cites no authority to the contrary. As such, Plaintiff has failed to allege that Middle East News is the alter ego of MBS, or that MBS controlled and dominated Middle East News.

Plaintiff cites *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994) for the proposition that Florida's long-arm statute confers personal jurisdiction if allegations of a conspiracy are well-pled and a member of the conspiracy committed a tort in the state. Opp. at 27. But Plaintiff's assertion that Middle East News is a member of the alleged conspiracy, however,

is not well-pled. *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2016 WL 11501768, at *4-5 (S.D. Fla. Sept. 14, 2016) (rejecting conspiracy-based personal jurisdiction and distinguishing from *Wilcox* on the basis that "[i]n this case, there are no facts supporting URB's involvement in a conspiracy with Pliteq. To allege a civil conspiracy, Marjam must cite facts allowing for the reasonable inference" of a conspiracy). As detailed in the Motion to Dismiss, there are no allegations that Middle East News had any role in hacking or leaking, and no allegations that Middle East News had any interactions with co-defendants (apart from the conclusory allegations of control by the Crown Prince addressed above).

Plaintiff's reliance on *Sonic Momentum B, LP v. Motorcars of Distinction, Inc.*, No. 11-80591-CIV, 2011 WL 4738190 (S.D. Fla. Oct. 7, 2011) and *United States v. Massey*, 89 F.3d 1433 (11th Cir. 1996) to argue that she does not need to allege details to establish a conspiracy is misplaced. *Massey* holds that a criminal conviction for bribery may be sustained on the basis of circumstantial evidence elicited at trial—a principle that is inapplicable to whether Plaintiff has adequately pled that Middle East News joined a conspiracy to hack and leak. 89 F.3d at 1439 (upholding bribery conviction where circumstantial evidence of a criminal agreement was presented at trial). While *Sonic Momentum* recognizes that that the exact "terms of the [conspiratorial] agreement, when it was entered, . . . or other particularities" need not be alleged, it recognizes that the plaintiff still must "plead . . . facts which raise a reasonable expectation that discovery will reveal evidence of" a conspiracy. 2011 WL 4738190, at *5. Plaintiff has not done so here with respect to Middle East News.

## II. IF THE AMENDED COMPLAINT'S ALLEGATIONS ARE ASSUMED TO BE TRUE, THEN MIDDLE EAST NEWS IS ENTITLED TO SOVEREIGN IMMUNITY

### A. MIDDLE EAST NEWS WOULD BE ENTITLED TO COMMON LAW CONDUCT-BASED IMMUNITY

Common law conduct-based immunity is based on a defendant's conduct irrespective of that defendant's official status. *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012). Plaintiff concedes that the Court may find sovereign immunity even if the Department of State does not issue a Suggestion of Immunity. Opp. at 18-19. In such an instance, courts look to whether the State Department's policy for granting immunity is satisfied. *Samantar v. Yousuf*, 560 U.S. 305, 311-12 (2010).

Middle East News adopts and incorporates by reference the arguments of the Crown Prince concerning conduct-based immunity, including that any actions taken by the Crown Prince

as part of the alleged "hack and leak operation" would have been an exercise of his official powers and *not* an act in his personal capacity. Crown Prince Mot., ECF 161, at 16-20; Crown Prince Reply, ECF No. 175, at 4-7.

Middle East News is alleged to have acted as an agent of the Crown Prince. According to the Amended Complaint, Middle East News acted "at the behest of [the Crown Prince]"; was "controlled" by the Crown Prince; was his "instrumentality"; and did not exist or act independently of the Crown Prince. Am. Compl. ¶¶ 89, 304(e). The Amended Complaint also alleges that all defendants were "agents" of the Crown Prince and should have registered under the Foreign Agent Registration Act as agents of the foreign state. *See id*. ¶¶ 195, 246-47.

As an alleged agent of the Crown Prince, Middle East News would be protected by conduct-based sovereign immunity. Middle East News adopts and incorporates by reference the arguments of Masharea Wa Enjazat IT Corporation LLC that the application of sovereign-immunity to agents of a foreign state—including corporate entities—is well established. Masharea Reply, ECF No. 182, at 7-8. Plaintiff has failed to point to any statute or court decision supporting her assertion that only natural persons, and not corporate entities, are entitled to conduct-based immunity.

### B.  MIDDLE EAST NEWS WOULD BE ENTITLED TO DERIVATIVE IMMUNITY

As an alleged agent of the Crown Prince, Middle East News would also be entitled to derivative immunity. Middle East News adopts and incorporates by reference the arguments of Masharea Wa Enjazat IT Corporation LLC that the concept of derivative immunity, as was applied by the Fourth Circuit in *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000), remains good law. Masharea Reply, ECF No. 182, at 8-9. Contrary to Plaintiff's assertions, Middle East News is not aware of the Eleventh Circuit ever having considered, let alone rejected, the application of derivative foreign common law immunity. This Court should apply derivative foreign immunity here.

### III.  PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER FLORIDA LAW

### A.  PLAINTIFF DOES NOT DISPUTE THAT HER CLAIMS AGAINST MIDDLE EAST NEWS DO NOT APPLY TO THE EXTRATERRITORIAL CONDUCT ALLEGED

Plaintiff's claims against Middle East News, all of which are brought under Florida common law, should be dismissed because they do not apply to the extraterritorial conduct alleged. As described in Middle East News' Motion, state common law will not apply to extraterritorial

conduct unless such conduct "has or is intended to have substantial effect within [Florida's] territory" or the conduct at issue is "recognized by the community of nations as of universal concern." MEN Mot. at 14-15 (citing *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1355 (S.D. Fla. 2011), *rev'd in part on other grounds*, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014)).

As discussed in Section I above, there is no plausible allegation that Middle East News' extraterritorial Twitter post of the Financial Photo had, or was intended to have, any effect within Florida, much less a substantial effect. Moreover, like *Chiquita*, the common law claims against Middle East News—IIED, libel, and civil conspiracy to commit the preceding—are "ordinary torts" and not matters of universal concern among nations. 792 F. Supp. 2d at 1355 (dismissing state-law claims with no substantial effect in Florida because "ordinary tort claims" such as IIED are not "matters of universal concern recognized by the community of nations."). Plaintiff's Opposition entirely fails to address this dispositive extraterritoriality issue, much less rebut it.

**B. PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE IIED, LIBEL AND CIVIL CONSPIRACY**

In the Amended Complaint, Plaintiff's claim for IIED is *not* based on the Financial Photo Tweet. The inquiry should end there as to IIED against Middle East News. Moreover, even if Plaintiff argued that the Financial Photo Tweet gave rise to her claim of IIED, the claim must still fail because Plaintiff's IIED claim would be predicated on the same allegations as her libel claim. *See, e.g.*, *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) ("[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'"). Recognizing these errors in her allegations, Plaintiff's Opposition now attempts to broaden her IIED claim by arguing that Middle East News was employed by the Crown Prince "to execute schemes in the United States," including by attacking Plaintiff. Opp. at 46. Plaintiff, however, fails to support this new argument by providing any example of these alleged schemes or attacks by Middle East News.

Plaintiff also fails to adequately plead her common law claims. First, none of the examples of allegedly "outrageous conduct" cited by Plaintiff in support of her IIED claim were allegedly conducted by Middle East News. *See* Opp. at 46-47. Middle East News is not alleged to have hacked Plaintiff's mobile device, leaked any private photographs, nor attacked or threatened Plaintiff via social media. All Middle East News is alleged to have done is post the Financial Photo

Tweet—a tweet that stated that "'hundreds of thousands in bonuses' were paid by the Emir of Qatar to certain journalists at *Al Jazeera*." Am. Compl. ¶ 180.

Second, Plaintiff's argument that she has made sufficient "specific allegations concerning mental suffering" is unavailing. The standard for "severe emotional distress" is not just whether Plaintiff "made specific allegations concerning mental suffering," but whether the degree of that mental suffering "is so severe that no reasonable [person] [] could be expected to endure it." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011); *see also Bickel v. City of Coral Springs*, No. 17-cv-60606, 2017 WL 3336722, at *2 (S.D. Fla. Aug. 4, 2017) (quoting same). Plaintiff asserts in the Amended Complaint that she is "scared" to visit Florida, Am. Compl. ¶ 245, but such allegations of general fear are insufficient. Here, far short of the allegations in the *Bickel* case cited in her Opposition, Plaintiff has merely alleged "mental anguish as a result of Defendants' ongoing conduct" in that she experiences anxiety and is hesitant to visit an undisclosed relative in Florida due to the presence of two defendants in a state of over 21 million people. Am. Compl. ¶¶ 245, 255, 310. These allegations are insufficient to constitute severe mental suffering under Florida law. *See Negron v. CitiMortgage Inc.*, No. 16-CIV-61776, 2016 WL 10953267, at *12 (S.D. Fla. Oct. 19, 2016) ("[T]he 'emotional distress' alleged in the Complaint merely 'includes sleeplessness, irritability, [Plaintiff's] fear of losing his house and anxiety.' Though far from trivial, the Court does not find that these allegations sufficiently plead that Plaintiff suffered severe mental suffering." (internal citation omitted)).

With regard to her claim for libel, Plaintiff has failed to plead actual malice. Plaintiff argues that she has sufficiently alleged actual malice against the USA Defendants and the Recruiting Defendants for their allegedly defamatory and harassing statements, and that Middle East News is liable for those acts as a co-conspirator. Opp. at 48, 53-54. But, as already briefed in extensive detail, Plaintiff does not allege plausible facts establishing a conspiratorial or agency relationship between Middle East News and these other defendants.[3] *See supra* Section 1.C.; MEN Mot. at 6-9. For the same reason, Plaintiff has failed to plausibly allege Middle East News was

---

[3] Plaintiff cites *Stern v. O'Quinn*, No. 07-60534-CIV, 2008 WL 11401794 (S.D. Fla. Aug. 8, 2008) to argue that inquiry into actual malice is inappropriate on a motion to dismiss. Opp. at 54. But this Court has held that a plaintiff cannot "plead actual malice without alleging facts *substantiating* defendant's knowledge of the falsity of the challenged statements or defendant's reckless disregard for the truth[.]" *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (emphasis added).

involved in a conspiracy under Florida law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all claims against Middle East News. Additionally, Plaintiff's renewed request for jurisdictional discovery in her Opposition brief should be denied. First, Plaintiff's method of request "is procedurally improper." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (Moore, J.); *see also* MiSK Reply, ECF No. 179, at 10. Second, as this Court previously held, Supreme Court and Eleventh Circuit precedent instructs that immunity defenses should be resolved prior to discovery so that immune defendants are not unnecessarily burdened with litigation requirements. *See* Order Granting Motions to Stay, ECF No. 130; Order on Plaintiff's Motion for Jurisdictional Discovery, ECF No. 131.

Dated:    October 14, 2021

| | |
|---|---|
| */s/ Adam Fee* | */s/ Evelyn Baltodano-Sheehan* |
| Adam Fee (*pro hac vice*) | Evelyn Baltodano-Sheehan (Florida Bar No. 944351) |
| **MILBANK LLP** | Daria Pustilnik (Florida Bar No. 92514) |
| 55 Hudson Yards | **KOBRE & KIM LLP** |
| New York, New York | 201 South Biscayne Boulevard |
| Telephone: (212) 530-5000 | Suite 1900 |
| AFee@milbank.com | Miami, Florida |
| | Telephone: (305) 967-6100 |
| John Lu (*pro hac vice*) | Evelyn.Sheehan@kobrekim.com |
| **MILBANK LLP** | Daria.Pustilnik@kobrekim.com |
| 2029 Century Park East | |
| Los Angeles, California | |
| Telephone: (424) 386-4000 | |
| JLu@milbank.com | |

*Counsel for Middle East News FZ-LLC*